FILED

2005 MAR -9 A 10: 54

UNITED STATES DISTRICT COURT

DISTRICT OF DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA GUIGLIANO, as<br>Administratrix of the Estate<br>of MICHAEL GUIGLIANO, Deceased<br>and LAURA GUIGLIANO,<br>Individually<br><br>Plaintiffs,<br><br>vs<br><br>DANBURY HOSPITAL, ET AL<br><br>Defendants. | CIVIL ACTION NO. 3:02 CV00718 (RNC)<br><br><br>MARCH 6, 2005 |

### MEMORANDUM REGARDING MOTION FOR SUMMARY JUDGMENT FILED BY JAMES DEPUY, M.D., SCOTT GRAY, M.D. AND DEANNA WOLFF, P.A.

The undersigned Defendant, John Borruso, M.D. has no objection to the Motion for Summary Judgment as it relates to the plaintiff's claims against the moving defendants for economic damages. The defendant Borruso does however object to any summary resolution of his right as a co-defendant to claim an apportionment of liability as to these defendants pursuant to Connecticut General Statutes section 52-572H.

In support of his objection to the summary resolution of his claim of apportionment the defendant Borruso submits that discovery as to experts is not yet complete. Plaintiff's experts

have not yet been deposed and defense experts neither disclosed nor deposed. On that basis alone, a summary judgment which resolves his claim of apportionment is premature.

Furthermore, plaintiff counsel has implied in his questioning of some witnesses, including Dr. Borruso, that he may claim negligence in this matter in that the patient's Iodized Calcium was not properly monitored. The defendant Borruso has testified under oath in deposition that under standard medical protocol, the management of Iodized Calcium is the responsibility of the physician of record which here was the admitting service, orthopedics including the defendants Drs. Depuy and Gray. A copy of this deposition testimony is attached hereto as Attachment A. This sworn testimony raises at least a question of fact as to whether any claimed failure to monitor and manage Iodized Calcium is properly is the responsibility of the orthopedics, including the moving defendants Drs. Depuy and Gray, as physicians of record. To the extent that the plaintiff asserts that the alleged failure to manage the patient's Iodized Calcium constitutes an act of negligence for which a recovery should be given, Dr. Borruso reserves the right to claim that such negligence is attributable as a matter of medical protocol not to Dr. Borruso but to the defendants Drs. Depuy and Gray, as physicians of record. Dr. Borruso will further assert that whatever liability might ultimately be attributed to him in this matter should exclude any portion of the total liability that the alleged failure to manage the patient's

iodized calcium represents. Accordingly while Dr. Borruso does not object to a judgment which constitutes a finding in favor of the moving defendants and against the plaintiff as to the allegations of negligence, he must and does object to any judgment which would preclude him from asserting that the moving defendants were negligent for the purposes of apportionment of liability.

THEREFORE, the defendant Borruso does not oppose the granting of a summary judgment as to plaintiff's claims against the moving defendants but does object to any summary resolution of his right to claim apportionment of liability against these defendants on the basis that such resolution is premature and on the basis that there is a question of material fact as to whether the management the patient's Iodized Calcium was the responsibility of the moving defendants.

THE DEFENDANT,
JOHN BORRUSO, M.D.

By: _____
Kevin M. Tepas, Esq., (CT 05552)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT  06905
Phone No. 203-357-9200

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2005, a copy of the above was mailed to the following counsel and pro se parties of record:

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C.
138 Chatsworth Avenue
Suites 6-8
Larchmont, NY 10538
Attorney for Plaintiffs, Laura Guigliano, as Guardian Ad Litem for Michael Guigliano, a Person Adjudged to be

Scott F. Morgan, Esq.
Weiner, Millo & Morgan, LLC
220 Fifth Avenue
New York, NY 10001
Attorney for Plaintiffs, Laura Guigliano, as Guardian Ad Litem for Michael Guigliano, a Person Adjudged to be

Richard O'Connor, Esq.
Sachner & O'Connor
The Crossroads West
765 Straits Turnpike
Building 2, Suite 1001
P.O. Box 1323
Middlebury, CT 06762-1323
Attorney for Defendants, James Depuy, M.D.; F. Scott Gray, M.D. and Deanna Wolffe, P.A.

Eric Stockman
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Attorney for Danbury Hospital, Oelberg, Yuan, Kotch, Circiumara Kouznetsov, Tudorica, Burness, Brown, Hoffman Does 1,2,3

Garie Mulcahey
Bai, Pollock, Blueweiss & Mulcahey
One Corporate Drive, 5th Floor
Shelton, CT 06484
Attorney for the defendant Georgiana Knowles

_____
Kevin M. Tepas, Esq.

I:\Procases\290.117\Pld- Memo re Sum Judg.doc

```
                                                                      Page 1
 1
 2   IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF CONNECTICUT
 3
     - - - - - - - - - - - - - - - - - -x
 4

     LAURA GUIGLIANO, as Administrator    :
 5   of the Estate of Michael Guigliano,
     Deceased, and LAURA GUIGLIANO,       :
 6   individually,
                                          :
 7                   Plaintiffs,
                                          : Case No.
 8           vs.
                                          : 3:02 CV 718
 9   DANBURY HOSPITAL, JAMES DEPUY,         (RNC) (DFM)
     M.D., F. SCOTT GRAY, M.D.,           :
10   GEORGIANA KNOWLES, P.A., DEANNA
     WOLFFE, P.A., DAVID OELBERG, M.D.,   :
11   DAVID YUAN, M.D., J. BORRUSSO,
     M.D., ARTHUR KOTCH, M.D., JULIA      :
12   CIRCIUMARA, M.D., ANDRE KOUZNETSOV,
     M.D., MIHAELA TUDORICA, M.D.,        :
13   MAUREEN BENNETT, R.N., JOANN BROWN,
     R.N., BETH ANN HOFFMAN, R.N.,        :
14   VANESSA SAIPHER, JOE ROTH and "JANE
     DOE NO. 1" (full identity unknown,   :
15   being identified as a Danbury
     Hospital employee who was assigned   :
16   To monitor, supervise and attend to
     Patient Michael Guigliano prior to   :
17   and during a CT scan procedure on
     2/17/01),                            :
18
                     Defendants.          :
19
     - - - - - - - - - - - - - - - - - -x
20
21
            DEPOSITION OF JOHN J. BORRUSO, M.D.
22
                    September 20, 2004
23
24
25
```

1    Q.    I'd like an answer.

2    A.    The physician of record.

3    Q.    Who would that be?

4        MR. O'CONNOR: Same objection.

5        MS. MEEHAN: Objection.

6    A.    I believe up until the 17th the patient was
7 still on the orthopedic service. So the physician of
8 record is the physician in the orthopedic service.

9        After the 17th, the physician of record, I
10 believe, is the -- when the patient is in the intensive
11 care unit, for all intents and purposes, the
12 intensivist takes care of him.

13    Q.    Do you know who, if anyone, was responsible
14 for following the patient's potassium level during his
15 admission to Danbury Hospital up until February 17th?

16        MR. TEPAS: Objection to form.

17        MR. O'CONNOR: Objection to form.

18        MS. MEEHAN: Objection to form.

19    A.    Again, it's -- generally the physician of
20 record is in charge overall.

21    Q.    And, again, that would be --

22    A.    The patient is on the orthopedic service.

23    Q.    -- the orthopedist?

24    A.    Yes.

25        MR. LANNI: I have no further questions.

1    A.    Yes.
2    Q.    Does that, hypocalcemia, have any
3 relationship to bowel function?
4    A.    It can cause intestinal cramping, but no
5 significant effect.
6    Q.    Do you know if hypocalcemia has any effect on
7 cardiac function?
8            MR. O'CONNOR:  Objection to form.
9    A.    Yes.
10   Q.    What effect does it have on cardiac function?
11   A.    Can change the EKG; change the
12 electromechanical conduction of the heart.
13   Q.    Can it lead to an arrhythmia?
14           MR. TEPAS:  Objection to form.
15   A.    Yes.
16   Q.    Can it lead to a dysrhythmia?
17   A.    Yes.
18        In my training, dysrhythmia and arrhythmia
19 are the same.
20   Q.    Do you know who, if anyone, was responsible
21 for following the patient's ionized calcium level
22 during his admission?
23           MR. O'CONNOR:  Objection to form.
24           MR. TEPAS:  Objection to form.
25           MS. MEEHAN:  Objection to form.