UNITED STATES DISTRICT COURT

DISTRICT OF DISTRICT

| | |
|---|---|
| LAURA GUIGLIANO, as<br>Administratrix of the Estate<br>of MICHAEL GUIGLIANO, Deceased<br>and LAURA GUIGLIANO,<br>Individually<br><br>Plaintiffs,<br><br>vs<br><br>DANBURY HOSPITAL, ET AL<br><br>Defendants. | CIVIL ACTION NO. 3:02 CV00718 (RNC)<br><br><br><br>JUNE 7, 2005 |

### MOTION TO DISMISS FOR NON-JOINDER

The defendants, John Borruso, M.D. and Danbury Surgical Associates. P.C. represent to this court as follows:

1. This is a claim for medical malpractice based on an incident occurring on February 17, 2001 during which plaintiff's decedent experienced a respiratory and/or cardiac event which caused him injury.

2. Plaintiff claims jurisdiction on the basis of diversity of citizenship among the parties, as plaintiffs are citizens of the State of New York and the defendants are citizens of the

State of Connecticut with their principal and actual places of business in that state. (See paragraph 80 of plaintiff's 2nd Amended Complaint).

3. During plaintiff's decedent's hospitalization he received general medical care from his primary care providers, Dr Frank Kessler who practices with the Brewster Medical Group. Upon information recently received by the defendants' and their belief Dr. Kessler lives and works in the state of New York.

4. Plaintiff's experts have authored written reports which assert that the failure to manage the patient's ionized calcium constituted medical negligence which caused or contributed to plaintiff's decedent's injury.

5. More specifically, plaintiffs' expert, Dr. Batista states in his report dated 11/8/04 as follows:

*"The patient's cardiac function was further stressed by a progressive decrease in serum electrolytes below normal levels The potassium and ionized calcium levels decreased from normal levels to below normal levels from admission to February 17, (Potassium and ionized calcium were 31 and 098 on February 17). The abnormally low potassium made the myocardium irritable and increased this patient's susceptibility to an arrhythmia provoked by hypoxemia andor hypoventilation."* (page 2 of the report)

> "Second, <u>the treating surgeons failed to properly treat the patient's electrolyte imbalances</u> The patient did not receive massive electrolyte resuscitation (potassium and ionized calcium) until he was brought to the ICU afterthe cardiopulmonary arrest on February 17 Repletion.of the electrolytes was the responsibililty of surgery since the record indicates that the surgery personnel were following the lab values and also the patient's attending physicians"
> (page 3 of the report - underlining added)

And, plaintiffs' expert, Dr Kaufman states in his report dated 11/7/04 as follows:

> "A review of the laboratory results up to February 17 demonstrates several items of significance. There had been mildly low ionized calcium, potassium and Hgb / Hct values throughout the previous ten day period" (page 4 of the report)

> "Because the patient's potassium and ionized calcium became low in the week prior to the cardiopulmonary arrest, this condition made the patient more susceptible to a cardiac arrhythmia secondary to hypoxemic insult and may have contributed to the cardiopulmonary arrest The patient's Hgb / Hct were also markedly low and this reduced the oxygen carrying capacity of the patient's bloodstream. The patient's severe anemia probably contributed to development of tissue hypoxemia and may have made the patient more susceptible to respiratory and cardiac arrest" (pages 8-9 of the report)

5. It is the assertion of the undersigned defendants that the assessment and management of a patient's ionized calcium is the responsibility either of the patient's general medicine provider (here Dr. Frank Kessler) or of the service which admitted the patient to the hospital (here the orthopedic surgeons).

6. The undersigned defendants reserve the right to refute the claims of the plaintiffs' experts as to the significance and impact of the patient's ionized calcium levels as well as disputing that the surgeons were responsible for managing the patient's ionized calcium and other electrolytes. Even so the undersigned defendants have a right under Connecticut General Statutes section 52-102b to join as apportionment defendants any non-party who is or may be liable for a proportionate share of plaintiff's damages.

7. Accordingly the undersigned defendants seek to assert an apportionment complaint against Dr Kessler to the extent that the finder of fact may accept the argument of plaintiff's experts and assign damages for any failure to manage plaintiff's decedent's ionized calcium[1].

8. The joinder of Dr Kessler is a matter of significant importance to the defendants since the defendants have limited protection against any verdict that might result in this matter and any reduction of the defendants' potential liability under Connecticut's

---

[1] The defendants need not assert a separate apportionment complaint against the orthopedists as admitting service since those parties were original defendants to this action (cf CGS 52-102b(c))

-4-

scheme of apportionment of liability may be great personal and profession consequence.

9. The joinder of Dr Kessler is not permitted under FRCP Rule 19 (a) however because to do so would destroy diversity and deprive this court of jurisdiction. The defendants' only recourse is to move to dismiss the present action under FRCP 19(b)

10. The plaintiffs will not be deprived of an adequate remedy by such dismissal since they are free to pursue their claims in Connecticut state courts.

11. Denial of the defendants' right to add Dr. Kessler as an apportionment defendant will deprive the defendants of their right to an apportionment of liability under Connecticut law.

WHEREFORE the defendants, Joseph J. Borruso, M.D. and Danbury Surgical Associates move this court to dismiss plaintiff's action under FRCP 19 (b) on that basis that it is the defendants right under applicable state law to assert an apportionment claim against Dr. Frank Kessler yet the defendants are unable to join Dr Kessler as an apportionment defendant under FRCP 19(a)

THE DEFENDANTS,
JOHN BORRUSO, M.D. and
DANBURY SURGICAL ASSOCIATES, P.C.

By /s/
Kevin M. Tepas, Esq., (CT 05552)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT  06905
Phone No. 203-357-9200

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2005, a copy of the above was mailed to the following counsel and pro se parties of record:

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C.
138 Chatsworth Avenue
Suites 6-8
Larchmont, NY 10538
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Laura Guigliano Individually

Scott F. Morgan, Esq.
Weiner, Millo & Morgan, LLC
220 Fifth Avenue
New York, NY 10001
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Individually

Michael Neubert, Esq.
and Eric Stockman, Esq
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Attorneys for Danbury Hospital, Oelberg, Yuan, Kotch, Circiumara, Kouznetsov, Tudorica, Burness, Brown, Hoffman, Does 1,2,3

Regina Duchin Kraus, Esq.
Tyler, Cooper & Alcorn, LLC
205 Church Street
P.O. Box 1936
New Haven, CT 06509
Attorney for Scott B. Berger, M.D.

Richard C. Tynan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103-4303
Attorney for Joseph J. Catania, M.D.

_____
Kevin M. Tepas, Esq.

I:\Procases\290.117\Pld -Motion to Dismiss.wpd