UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAURA  GUIGLIANO, as Administrator | : | |
| of the Estate of MICHAEL GUIGLIANO, | : | CIVIL ACTION NO. |
| Deceased, and LAURA GUIGLIANO, | : | 3:02 CV 718 (RNC) (DFM) |
| Individually | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| DANBURY HOSPITAL, ET AL. | : | JUNE 30, 2005 |
| | : | |
| Defendants. | : | |

## MOTION TO DISMISS FOR NON-JOINDER

The defendant Joseph J. Catania, M.D. respectfully joins in the June 7, 2005 Motion to Dismiss for Non-Joinder, which was filed by the defendants John Borruso, M.D and Danbury Surgical Associates. P.C.  In addition, the undersigned defendant represents to this court as follows:

1.      This is a claim for medical malpractice based on an incident occurring on February 17, 2001, during which the plaintiff-decedent, Michael Guigliano, experienced a respiratory and/or cardiac event, which caused him injury.

2.      The plaintiffs claim jurisdiction on the basis of diversity of citizenship among the parties, as the plaintiffs are citizens of the State of New York, and the defendants are citizens of the State of Connecticut, with their principal and actual places of business in that state.  (See ¶ 19 of the Plaintiffs' Third Amended Complaint).

10858.0123

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

3.     During the plaintiff-decedent's hospitalization, he received general medical care from his primary care provider, Dr. Frank Kessler, who practices with the Brewster Medical Group.  Upon information recently received by the undersigned defendant, it is his belief that Dr. Kessler lives and works in the State of New York,

4.     The plaintiffs' experts have authored written reports, which assert that a failure to manage the plaintiff-decedent's ionized calcium constituted medical negligence, which caused or contributed to the plaintiff-decedent's injury.

5.     More specifically, plaintiffs' expert Dr. Batista states in his report dated November 8, 2004 as follows:

> The patient's cardiac function was further stressed by a progressive decrease in serum electrolytes below normal levels.  The potassium and ionized calcium levels decreased from normal levels to below levels from admission to February 17.  (Potassium and ionized calcium were 3.1 and 0.98, respectively, on February 17).  The abnormally low potassium made the myocardium irritable and increased this patient's susceptibility to an arrhythmia provoked by hypoxemia and/or hypoventilation.

(p. 2 of the report).

> Second, the treating surgeons failed to properly treat the patient's electrolyte imbalances.  The patient did not receive massive electrolyte resuscitation, (potassium and ionized calcium) until he was brought to the ICU after the cardio pulmonary arrest on February 17.  Repletion of the electrolytes was the responsibility of surgery, since the record indicates that the surgery personnel were following the lab guy, and also the patient's attending physicians.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(p. 3 of the report, underlining added).

Also, plaintiffs' expert Dr. Kaufman states in his report dated November 7, 2004 as follows:  "A review of the laboratory results up to February 17 demonstrates several items of significance.  There had been mildly low ionized calcium, potassium and hemoglobin and hematocrit values throughout the previous ten-day period."  (p. 4 of the report).

> Because the patient's potassium and ionized calcium became low in the week prior to the cardio pulmonary arrest, this condition made the patient more susceptible to a cardiac arrhythmia secondary to hypoxemic insult and may have contributed to the cardiac pulmonary arrest.  The patient's hemoglobin and hematocrit were also markedly low, and this reduced the oxygen-carrying capacity of the patient's bloodstream.  The patient's severe anemia probably contributed to the development of tissue hypoxemia and may have made the patient more susceptible to respiratory and cardiac arrest.

(pp. 8 & 9 of the report).

6.     It is the assertion of the undersigned defendant that the assessment and management of the plaintiff-decedent's ionized calcium was the responsibility either of the plaintiff-decedent's general medicine provider, Dr. Frank Kessler, or the service, which admitted the plaintiff-decedent to the hospital, the orthopedic surgeons.

7.     The undersigned defendant reserves the right to refute the claims of the plaintiffs' experts as to the significance and impact of the plaintiff-decedent's ionized

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

calcium and potassium levels, as well as disputing that the surgeons were responsible

for managing the plaintiff-decedent's ionized calcium, potassium and other electrolytes.

8.      The plaintiffs' expert Nancy Muré, R.N., B.S., M.A. states in her report

dated November 4, 2004 as follows:  "Based on the medical records, it appears that the

patient was transferred from his hospital room to the Radiology Department for an

abdominal CT Scan on February 17, 2001, without the supervision of a CPR-trained

nurse or a multispecialist, without a portable cardiac monitor and without pulse oximetry

monitoring."  (p. 3 of the report).

> Mr. Guigliano was a patient who required close, one-
> to-one monitoring by qualified members of the nursing
> staff when he was transferred for his CT Scan on
> February 17.  The model for the proper nursing
> supervision can be seen in the notes concerning the
> patient's transfer for diagnostic testing on February 10,
> 2001.  On that date, he was taken for a VQ Scan and
> was constantly accompanied by a registered nurse
> referred to as a 'multispecialist.'

(p. 2 of the report)

9.      Attorney Joseph Lanni took the deposition of Mary Anne Elizabeth

Milleville, the floor nurse assigned to care for the plaintiff-decedent, Mike Guigliano, on

the morning of February 17, 2001, on October 18, 2004.

10.      Nurse Milleville testified at her deposition that she was aware that Dr.

Catania had been in at the change of shift that morning to order a CT Scan for Mr.

Guigliano.  "I know that she said that the general surgeon was in, Dr. Catania, right

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

around shift change and that he was going to order CT Scan, because he was

complaining about his belly bothering him."  (p. 13, Depo. Tr. of Milleville).

Nurse Milleville testified that subsequent to Dr. Catania, Dr. Kessler was in

to evaluate the patient and that he was aware of the order for the CT Scan.  (p. 19, Id.)

> Q. Did you see Dr. Kessler on the unit that day?
> A. Yes.
> Q. Where did you see him?
> A. At the nursing station.
> Q. Did you speak to him about the patient?
>
> A. Yes.
> Q. Do you recall what, if anything, he said about the patient?
> A. Well, we both talked a little.  I know with him – and he said it looks like Michael, you know, I want you – I know he has the CT Scan coming.  But I did ask him – I said, you know, he seems to get respirations increase a little – you know – positioning in bed.

(pp. 19 & 20, Id.)

Further, Nurse Milleville testified that Dr. Kessler told her that plaintiff-

decedent, Michael Guigliano, could go to CT Scan off the cardiac monitor.

> I did tell him he is on the monitor.  Showed him the monitor.  I said he is running a little tachy, 100-110.  We talked about the test that was coming, okay.  He said, <u>he took him off to go downstairs</u>.
>
> Q. Now, you talked about the test that was coming?
> A. CT Scan.
> Q. And that was the CT Scan of the patient's abdomen and pelvis that was scheduled for that day; correct?
> A. Correct.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> Q. And you say, Dr. Kessler said he could come off
> for the test?
> A. He was on a telemetry monitor.  They don't work in
> the halls.  I said, he needs to go down to the test.
> He said he could come off to go down.

(p. 20 of report)

11.     It is the assertion of the undersigned defendant that the assessment of the

plaintiff-decedent's acuity level, hence stability, as well as decision making as to the

appropriate level of cardiac monitoring, was primarily the responsibility of the plaintiff-

decedent's general medicine provider, Dr. Frank Kessler.

12.     The undersigned defendant has a right under Connecticut General

Statutes, Section 52-102b to join as an apportionment-defendant, any non-party who is

or may be liable for a proportionate share of the plaintiffs' damages.

13.     Accordingly, the undersigned defendant seeks to assert an apportionment

complaint against Dr. Kessler, to the extent that the finder of fact may accept the

argument of the plaintiffs' experts and assign damages for any failure to manage

plaintiff-decedent's ionized calcium.[1]/  Further, the undersigned defendant seeks to

assert an apportionment complaint against Dr. Kessler, to the extent that the finder of

fact may accept the argument of the plaintiffs' experts to assign damages for failure to

appreciate plaintiff-decedent's level of acuity and failure to assure proper cardiac

monitoring during transport from the medical floor to the CT Scan suite.

---

[1]/     The defendant need not assert a separate apportionment complaint against the
orthopedists as admitting service, since those parties were original defendants to this action (See
C.G.S. § 52-102(c)).

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

14.    The joinder of Dr. Kessler is a matter of significant importance to the defendant, since the defendant have limited protection against any verdict that might result in this matter, and any reduction of the defendants' potential liability under Connecticut scheme of apportionment of liability may be of great personal and professional consequence.

15.    The undersigned defendant believes that the joinder of Dr. Kessler may not be permitted under Federal Rules of Civil Procedure, 19(a) because to do so would destroy diversity and deprive this Court of jurisdiction.  The defendant believes that his only recourse is to move to dismiss the present action under Federal Rules of Civil Procedure, 19(b). But see Kim v. The Covenant of the Sacred Heart, Inc., 1998 WL 241213 (D. Conn.). The holding in Kim, seems to stand for the proposition that the diversity jurisdiction of the Court may not be destroyed by the joining of an apportionment defendant who is not diverse to the original plaintiff.

16.    The plaintiffs will not be deprived of an adequate remedy by such a dismissal, since they are free to pursue their claims in Connecticut state courts.

17.    Denial of the defendant's right to add Dr. Kessler as an apportionment defendant will deprive the defendant of his right of an apportionment of liability under Connecticut law.

WHEREFORE, the defendant Joseph J. Catania, M.D. moves this Court to dismiss the plaintiffs' action under Federal Rules of Civil Procedure 19(b) on the basis that it is the defendant's right under applicable state law to assert an apportionment

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

claim against Dr. Frank Kessler, yet the defendant is unable to join Dr. Kessler as an

apportionment defendant under Federal Rules of Civil Procedure 19(a).

DEFENDANT,
JOSEPH J. CATANIA, M.D.


By_____
        Richard C. Tynan
        HALLORAN & SAGE LLP
        Fed. Bar #ct04235
        One Goodwin Square
        225 Asylum Street
        Hartford, CT 06103
        (860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

CERTIFICATION

This is to certify that on this 30th day of June 2005, I hereby mailed a copy of the foregoing to:

Joseph Lanni, Esq.
138 Chatsworth Avenue, Suites 6-8
Larchmont NY 10538
**For the Plaintiff**

Scott F. Morgan, Esq.
Weiner Millo & Morgan, LLC
220 Fifth Avenue, 7th Floor
New York NY 10001
**For the Plaintiff**

Richard O'Connor, Esq.
Christine Anne Robinson, Esq.
Stephen P. Sachner, Esq.
Sachner & O'Connor
Crossroad West
765 Straits Turnpike
P.O. Box 1323
Middlebury CT 06762-1323
**For the Defendants Depuy**

Kevin Tepas, Esq.
Jane Callahan Hagerty, Esq.
Beverly J. Hunt, Esq.
Jeffrey Charles Nagle, Esq.
Daniel E. Ryan, III, Esq.
Michael T. Ryan, Esq.
Ryan Ryan Johnson & Deluca, LLP
80 Fourth Street
Stamford CT 06905
**For the Defendants Danbury Surgical Associates, P.C. and Borrusso**

Richard L. Grant, Esq.
36 Tamarack Avenue, PMB #213
Danbury, CT 06811
**For the Defendant Borrusso**

Eric J. Stockman, Esq.
Maureen Sullivan Dinnan, Esq.
Nancy A. Meehan, Esq.
Michael D. Neubert, Esq.
Neubert Pepe & Montieth, P.C.
195 Church Street
New Haven CT 06510
**For the Defendants Danbury Hosp., Iulia Circiumara, Roth, Saipher Bennett, Brown, Hoffman, Doe #1, 2 & 3**

Regina Duchin Kraus, Esq.
Tyler, Cooper & Alcorn, LLP
P.O. Box 1936
205 Church Street
New Haven, CT 06509-1910
**For the Defendant Berger**

Gaileen A. Kaufman, Esq.
Bai Pollock Bluewiess & Mulcahey
One Corporate Drive
Shelton CT 06484
**For the Defendant Knowles**

_____
Richard C. Tynan

697317_1.DOC

- 9 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105