UNITED STATES DISTRICT COURT
DISTRICT COURT OF CONNECTICUT
------------------------------------------------------------X
LAURA GUIGLIANO, as Administratrix of
the Estate of MICHAEL GUIGLIANO, Deceased
and LAURA GUIGLIANO, Individually

        Plaintiff,

                 Case No. 3:02 CV 718
vs.                (RCN)(DFM)

DANBURY HOSPITAL, ET AL,

        Defendants.       June 30, 2005
------------------------------------------------------------X

**DEFENDANTS' JOHN BARRUSSO, M.D. & DANBURY SURGICAL
ASSOCIATES, P.C.'S REPLY MEMORANDUM REGARDING F.R.C.P. 19(b)
MOTION TO DISMISS PLAINTIFF'S ACTION FOR NON-JOINDER**

The defendants, John Borusso, M.D. & Danbury Surgical Associates, P.C., reply to plaintiff's memorandum of law dated June 22, 2005 in opposition to defendants' motion to dismiss plaintiffs' action for non-joinder as follows.

Plaintiffs' reliance on *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 117 S. Ct. 467, 136 L.Ed 2d 437 (1996) is inappropriate on a number of grounds. In *Caterpillar,* plaintiff Lewis sued Caterpillar, Inc. and Whayne Supply Company for personal injuries in Kentucky state court. At time suit was commenced no diversity between the parties for federal jurisdictional purposes existed because Lewis and Whayne were co-residents of Kentucky. After Lewis filed the action in state court, his employer's worker's compensation carrier, Liberty Mutual, intervened to assert a subrogation claim against the defendants Caterpillar and Whayne for worker's compensation benefits it paid to Lewis. When Lewis discontinued

his case against co-resident Whayne, Caterpillar removed the case to federal court on the basis of diversity of citizenship. Intervener, Liberty Mutual, however, had not resolved its subrogation case against Whayne at that time and accordingly co-resident Whayne remained in the case as a defendant in Liberty's subrogation claim. Notwithstanding this, the District Court denied Lewis's motion for remand back to the state court. Prior to trial Liberty Mutual also discontinued its case against Whayne, terminating Whayne's involvement as a defendant. Thus at the time of trial, complete diversity did exist between Lewis and Caterpillar.

In *Caterpillar* the Supreme Court held that the District Court did, in fact, err in failing to remand the case on the basis that diversity of jurisdiction was not complete when the matter was removed, but that the court's error in so doing was not fatal to the final adjudication of the matter since federal jurisdiction requirements were met at the time judgment was entered at trial.

*Caterpillar* is inapposite to the present matter in that the "overwhelming" and "overriding considerations" on which the court based its decision are not present in the case at bar. The court in *Caterpillar* specifically noted that Lewis's arguments that the court erred in failing to remand the case back to State Court were "hardly meritless, but…[ran] up against an overriding consideration. Once a diversity case <u>has been tried</u> in Federal Court…considerations of finality, efficiency and economy become overwhelming (underlining added)." In the present matter plaintiffs' case has not yet been tried so the considerations of finality, efficiency and economy do not come into play.

In addition, in *Caterpillar* the court relied heavily on the fact that complete diversity jurisdiction did, in fact, exist between Lewis and Caterpillar at the time the judgment was entered. That is not the case here. Diversity of jurisdiction in *Caterpillar* was achieved when Liberty Mutual discontinued its action against Whayne. In the present action Dr. Borusso and Danbury Surgical Associates, P.C. seek to assert their right to claim an apportionment of liability with respect to Dr. Kessler. Under Connecticut law this right to apportionment is intrinsic to the defendants' claimed liability to the plaintiffs and to their defense of plaintiffs' allegations of negligence and causation. The fundamental nature of this right to seek apportionment is demonstrated in *Barry vs. Quality Steel Products, Inc.*, 263 Conn. 424, 446 (2003) in which the Connecticut Supreme Court abandoned superceding negligence as a separate legal doctrine specifically on the premise that the doctrine is already inherent in Connecticut's scheme of apportionment of liability. Accordingly the specific issue of Dr. Kessler's involvement in the medical care administered to plaintiff's decedent will necessarily be applicable at the very time any verdict is entered in this case. Therefore, unlike *Caterpillar* where diversity existed at the time judgment entered, in the present case no diversity will exist at the time any judgment enters unless the defendants were to discontinue their apportionment claim with respect to Dr. Kessler, which, obviously, they do not intend to do.

Finally, in Caterpillar the court, in a footnote, peripherally alluded to Caterpillar's third party action against Lewis's employer, Gene Wilson Enterprises (GWE), also a resident of Kentucky, under R.R.P.C. rule 14. The court noted that the co-residency of

3

Lewis and GWE did not destroy diversity because, in effect, there was no direct action between the co-residents. Lewis's action was solely against Caterpillar and Caterpillar's third party action, the gravamen of which was not identified, was solely against third party defendant GWE. The defendants submit that while the two actions presumably revolved around Lewis's injuries and damages, they were separate and distinct causes of action, involving different theories of liability. The defendants further submit that the two causes of action were severable and could have been tried separately, if the court so desired. In the present matter the defendants do not assert a separate cause of action against Dr. Kessler but rather assert that their responsibility to the plaintiffs, if any, requires an assessment of the conduct of Dr. Kessler. Defendant do not claim that Dr Kessler owes them any money but that Dr. Kessler's presence as a defendant is essential in determining what damages if any they owe the plaintiffs

Assuming that a "cause of action" for tort purposes means a claim for money damages in compensation for injuries and losses caused by a defendant's breach of a plaintiff's legally protected right, a claim for apportionment is not a cause of action because it does not seek money damages and because it is not premised on the apportionment defendant's breach of apportioning defendant's rights. In *Lostritto v. Community Action Agency of New Have, Inc.*, 269 Conn. 10, 36 - 38 (2004) the Connecticut Supreme Court held that because an apportionment claim is not a claim for money damages a certificate of good faith under Connecticut General Statutes § 52-190a. Similarly, in *Bloom v. Gershon*, 271 Conn. 96, 110 (2004) the court noted that "apportionment claims are claims for the

apportionment of liability and are, therefore, separate and distinct from claims for monetary damages". In the present matter then, the defendants' right of apportionment as to Dr, Kessler is not a separate and distinct cause of action which might be severed from plaintiff's claim against the defendant and tried independently; it is a fundamental part of the defendants' defense to the plaintiff's direct claims against them. Under Connecticut's scheme of apportionment of liability Dr. Kessler is not a third party defendant as to whom defendants claim an independent and severable right of action. Rather Dr. Kessler will be considered by the jury as if he were an original defendant who had been sued directly by the plaintiff. The only difference is that, unless plaintiffs adopt the apportionment claim, it will be the defendants who bear the burden of proving the allegations of negligence and causation against him. Thus the right of apportionment which the defendants assert in the present matter is readily distinguishable from the separate and severable causes of action referred to in footnote 1 of *Caterpillar*.

The defendants further point out however that the footnote in question also cites *Wichita Railroad & Light Co. v. Public Util. Comm'n of Kan.*, 260 U. S. 48, 54 (1922) for the proposition that federal jurisdiction, once acquired on the ground of complete diversity of citizenship is unaffected by the subsequent intervention of a party <u>whose presence is not essential to a decision of the controversy between the original parties</u>" (underlining added). As has been demonstrated, Dr. Kessler's presence as an apportionment defendant is essential to the resolution of the controversy and is an integral part of defendants' response to the plaintiffs' claims against them.

Plaintiffs' assertion that Dr. Kessler is not an indispensable party is simply wrong and is inconsistent with the opinion of their own experts. Rule 19(a) provides that the absent party is "necessary" where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a); *See, Viacom International, Inc. v. Kearney*, 212 F. 3d 721, 724 (2000); *See also, Westchester Disabled On the Move, Inc. v. County of Westchester*, 345 F. Supp. 2d 473, 478-79 (S.D. N.Y. 2004).

In the present matter, Dr. Kessler, the decedent's internist and primary care physician, is a necessary party because, in his absence, complete relief cannot be accorded among those already parties. More specifically, without Dr. Kessler as a defendant, the defendants will be denied their statutory right to be relieved of that portion of any verdict which corresponds to the percentage of negligence attributed to Dr. Kessler. In this regard the evidence will show that Dr. Kessler examined the patient during his hospitalization between 2/7/02 and 2/17/02 and was continually made aware of the patient's lab data and progress by other examining physicians and consultants. The defendant submits that it was Dr. Kessler, as the patient's internist, who was primarily responsible for monitoring the patient's ionized calcium and potassium levels. Additionally, Dr. Kessler owed plaintiff a duty of care in monitoring his hemoglobin/hematocrit levels. As plaintiffs well know, Dr.

Borusso has testified at deposition that management of ionized calcium is the medical responsibility of the admitting service, here the orthopedics and the orthopedics have testified that they handed over the responsibility for general medicine to Dr. Kessler. Accordingly any failure to act on the decreased ionized calcium and potassium levels, and/or the decreased Hct/Hgb levels, as cited by plaintiff's own experts as a cause of the alleged incident on February 17, 2002, is due, in part, to Dr. Kessler's action and inactions in treating the decedent.

The defendants are entitled under state law to ask the jury to apportion some or all of the claimed negligence to Dr Kessler. His role in the trial of this matter is an essential part of the defendants' response to plaintiff's claims directly against them and his absence will adversely affect defendants' right to avoid responsibility for whatever portion of the total negligence might be attributed to Dr. Kessler. For these reasons Dr. Kessler's involvement as an apportionment defendant is essential. Furthermore, because his direct involvement in the medical care given to Mr. Guigliano Dr. Kessler must be considered by the jury as if he were an original defendant. For this reason the "cause of action" to which he must respond as a defendant is not separate and severable from the plaintiffs' claim against the defendants; it is in fact part and parcel of that claim. Dr. Kessler's presence as a defendant who is co-resident of the plaintiffs would destroy diversity. Accordingly this court should dismiss the present matter and leave plaintiffs to seek their recovery in the state court system.

The defendants' motion to dismiss for non-joinder should be granted.

          THE DEFENDANTS,
J. BORRUSO, M.D. AND DANBURY
SURGICAL ASSOCIATES, P.C.

By: /s/ _____
Kevin M. Tepas, Esq. (CT 05552)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT   06905
Phone No. 203-357-9200

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2005, a copy of the above was mailed to the following counsel and pro se parties of record:

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C.
138 Chatsworth Ave, Suites 6-8
Larchmont, NY 10538
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Laura Guigliano Individually

Scott F. Morgan, Esq.
c/o J. Lanni, Esq. as above
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Individually

Michael Neubert, Esq.
and Eric Stockman, Esq
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Attorneys for Danbury Hospital

Regina Duchin Kraus, Esq.
Tyler, Cooper & Alcorn, LLC
205 Church Street
P.O. Box 1936
New Haven, CT 06509
Attorney for Scott B. Berger, M.D.

Richard C. Tynan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103-4303
Attorney for Joseph J. Catania, M.D.

Kevin M. Tepas, Esq.

I:\Procases\290 117\Pld Mem FRCP 19b.doc