UNITED STATES DISTRICT COURT
DISTRICT COURT OF CONNECTICUT

-----------------------------------------------------------X
LAURA GUIGLIANO, as Administratrix of
the Estate of MICHAEL GUIGLIANO, Deceased
and LAURA GUIGLIANO, Individually

  Plaintiff,

vs.
DANBURY HOSPITAL, ET AL

  Defendants.
-----------------------------------------------------------X

John Borruso, M.D. and Danbury Surgical
Associates, P.C.

  Defendants / Apportionment Plaintiffs

Vs.

Frank Kessler, M.D.

  Apportionment Defendant

-----------------------------------------------------------X

FILED

2005 JUL -1 P 3: 11

DISTRICT COURT
HARTFORD, CT.

APPORTIONMENT COMPLAINT

Case No. 3:02 CV 718
(RCN)(DFM)

June 30, 2005

UNITED STATES DISTRICT COURT
DISTRICT COURT OF CONNECTICUT

-----------------------------------------------------------------X
LAURA GUIGLIANO, as Administratrix of
the Estate of MICHAEL GUIGLIANO, Deceased
and LAURA GUIGLIANO, Individually

    APPORTIONMENT COMPLAINT

    Plaintiff,

    Case No. 3:02 CV 718
    (RCN)(DFM)

vs.
DANBURY HOSPITAL, ET AL

    Defendants.                            June 30, 2005
-----------------------------------------------------------------X

       By pleadings dated March 9, 2005, the plaintiff, Laura Guigliano, individually and as fiduciary of the Estate of Michael Guigliano, commenced a medical malpractice action against the defendants John Borruso, M.D. and Danbury Surgical Associates, P.C., among others. A copy of that pleading is attached hereto as Attachment "A." The defendants/apportionment plaintiffs, John Borruso, M.D. and Danbury Surgical Associates, P.C., now assert this apportionment complaint pursuant to Connecticut General Statutes § 52-102b as to non-party Frank Kessler, M.D. as follows:

       1. At all times pertinent to this matter, the defendant/apportionment plaintiff, John Borruso, M.D., was a physician licensed to practice medicine in the state of Connecticut and was a resdient of Connecticut.

2. At all times pertinent to this matter, the defendant/apportionment plaintiff, Danbury Surgical Associates was a Corporation, incorporated and with its principle place of business in the state of Connecticut and was a resdient of Connecticut..

3. At all times pertinent to this matter, the apportionment defendant, Frank Kessler, M.D., was an internal medicine physician, licensed to practice medicine in the state of Connecticut. Upon information and belief Frank Kessler, M.D. is a resident of New York.

4. On or about March 9, 2005, the plaintiffs filed a Second Amended Complaint, in which they allege, *inter alia*, that from on or about February 7, 2001 to April 17, 2001, plaintiff's decedent Michael Guigliano came under the care of the defendant, J. Borrusso, M.D. and other physicians who were acting at the time as agents, servents or employees of the defendant Danbury Surgical Associates, P.C.

5.    Additionally, plaintiff alleges that:

"the care and treatment rendered by the [defendant, J. Borruso, M.D.]...to Michael Guigliano at various times during the period of February 7, 2001 – February 17, 2001 failed to adhere to good and accepted...surgical practice and medical practice in that [Dr. Borruso]...failed to properly and timely diagnose and treat fat emboli syndrome; failed to properly and timely diagnose and treat embolization of the pulmonary arteries; failed to properly and timely take prophylactic measures against respiratory distress, respiratory failure, hypoxemia and respiratory arrest; failed to avoid and prevent the onset of ARDS, respiratory failure, hypoxemia and respiratory arrest; failed to properly anticoagulate the patient; failed to properly heed and appreciate the results of diagnostic imaging and diagnostic laboratory studies; failed to properly monitor, observe, supervise and attend to the patient; failed to timely diagnose, recognize and become alert to a respiratory arrest; failed to timely diagnose, recognize and become alert to a cardiorespiratory arrest; failed to provide adequate ventilatory and respiratory support and treatment; failed to provide and maintain appropriate, necessary and accessible equipment for cardiopulmonary resuscitations; failed to have adequate procedures and policies for responding to calls for cardiopulmonary resuscitation;

> failed to properly follow and adhere to procedures and policies for responding to calls for cardiopulmonary resuscitation and "Code 99" calls; failed to place the patient in an ICU setting; failed to heed and appreciate the significance of the clinical evidence; failed to properly perform cardiopulmonary resuscitation; and failed to timely perform cardiopulmonary resuscitation.

*See* Attachment A, ¶ 31.

6. Plaintiff claims that as a result of the alleged negligence and medical malpractice of the defendant, John Borruso, M.D., and other agents servents and employees of Danbury Surgical Associates, P.C. Michael Guigliano sustained "permanent, severe, and disabling injuries, including conscious pain and suffering, hypoxemia, ARDS, respiratory failure, respiratory arrest, cardiopulmonary arrest, anoxic encephelopathy, brain damage, permanent vegetative state, permanent semicomatose state, physical disability, mental anguish and emotional distress, during the period of time immediately prior to and leading up to his death and was compelled to undergo further medical, surgical, nursing and therapeutic care and treatment prior to his death," as well as, death. *See* Attachment A, ¶ 50, 51.

7. To the extent that the original plaintiffs may be entitled to recover damages in the original action, the apportionment defendant, Frank Kessler, M.D., is or may be liable for a proportionate share of said damages pursuant to Connecticut General Statutes § 52-572h, due to his negligence and/or careless in one or more of the following respects:

    a. Failing to order telemetry monitoring to remain on Michael Guigliano while he was transported between his hospital room on February 17, 2001 and the CT scan department on February 17, 2001, despite having notice that the patient had

        experienced an episode of shortness of breath when Michael Guigliano underwent a VQ scan on February 10, 2001;

b. Failing to order telemetry monitoring to remain on Michael Guigliano while he was undergoing a CT scan on February 17, 2001, despite having notice that the patient had experienced an episode of shortness of breath when Michael Guigliano underwent a VQ scan on February 10, 2001;

c. Advising Maryann Elizabeth Milleville, R.N. that Michael Guigliano could come off of telemetry monitoring on February 17, 2001, when the patient was transported to the CT scan department;

d. Advising Maryann Elizabeth Milleville, R.N. that Michael Guigliano could remain off of telemetry monitoring while he was undergoing CT scanning on February 17, 2001;

e. Failing to timely recognize and properly treat the patient's electrolyte imbalances, specifically including his potassium and ionized calcium levels, prior to Michael Guigliano sustaining cardiopulmonary arrest on February 17, 2001, despite being aware of Michael Guigliano's lab test data between February 7, 1002 and February 17, 2001, which indicated that Michael Guigliano's potassium and ionized calcium levels had decreased from normal levels to below normal levels ;

f. Failing to order electrolyte resuscitation/repletion (potassium and ionized calcium) for the patient prior to Michael Guigliano sustaining cardiopulmonary arrest on February 17, 2001, despite being aware of Michael Guigliano's lab test

    data between February 7, 1002 and February 17, 2001, which indicated that Michael Guigliano's potassium and ionized calcium levels had decreased from normal levels to below normal levels;

g. Failing to timely recognize and properly treat the patient's relatively low hematocrit and hemoglobin levels prior to Michael Guigliano sustaining cardiopulmonary arrest on February 17, 2001, despite being aware of those lab values between February 7, 1002 and February 17, 2001;

e. Failing to order a blood transfusion for the patient despite his low hematocrit and hemoglobin levels prior to the patient sustaining cardiopulmonary arrest on February 17, 2001.

WHEREFORE, the defendants/apportionment plaintiffs, John Borruso, M.D. and Danbury Surgical Associates, P.C., seek an apportionment of liability against Frank Kessler, M.D., in accordance with Conn. Gen. Stats. §52-572h.

                THE DEFENDANTS,
                J. BORRUSO, M.D. AND DANBURY
                SURGICAL ASSOCIATES, P.C.

                By:_____
                Kevin M. Tepas, Esq. (CT 05552)
                Ryan, Ryan, Johnson & Deluca, LLP
                80 Fourth Street, P.O. Box 3057
                Stamford, CT  06905
                Phone No. 203-357-9200

## CERTIFICATE OF SERVICE

I hereby certify that on ~~July 1~~ June 30, 2005, a copy of the above was mailed to the following counsel and pro se parties of record:

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C.
138 Chatsworth Ave, Suites 6-8
Larchmont, NY 10538
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Laura Guigliano Individually

Michael Neubert, Esq.
and Eric Stockman, Esq
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Attorneys for Danbury Hospital

Richard C. Tynan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103-4303
Attorney for Joseph J. Catania, M.D.

Scott F. Morgan, Esq.
c/o J. Lanni, Esq. as above
Attorney for Plaintiffs, Laura Guigliano, as Administrator of the Estate of Michael Guigliano, and Individually

Regina Duchin Kraus, Esq.
Tyler, Cooper & Alcorn, LLC
205 Church Street
P.O. Box 1936
New Haven, CT 06509
Attorney for Scott B. Berger, M.D.

I:\Procases\290.117\Pld- answer to 3nd amended complaint.wpd

_____
Kevin M. Tepas, Esq.