# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
========================================X
LAURA GUIGLIANO, as Administrator of the Estate
of MICHAEL GUIGLIANO, Deceased, and LAURA
GUIGLIANO, Individually,

                    Plaintiff(s)

              -against-

DANBURY HOSPITAL, JAMES DEPUY, M.D.,
F. SCOTT GRAY, M.D., GEORGIANA KNOWLES,
P.A., DEANNA WOLFFE, P.A., DAVID OELBERG,
M.D., DAVID YUAN, M.D., J. BORRUSSO, M.D.,
JOSEPH J. CATANIA, M.D., SCOTT B. BERGER, M.D.,
DANBURY SURGICAL ASSOCIATES, P.C.,
ARTHUR KOTCH, M.D., IULIA CIRCIUMARA,
M.D., ANDREI KOUZNETSOV, M.D., MIHAELA
TUDORICA, M.D., MAUREEN BENNETT, R.N.,
JOANN BROWN, R.N., BETH ANN HOFFMAN, R.N.,
VANESSA SAIPHER, JOE ROTH and "JANE DOE
NO. 1" *(full identity unknown, being identified as a
DANBURY HOSPITAL employee who was assigned to
monitor, supervise and attend to patient MICHAEL
GUIGLIANO prior to and during a CT Scan procedure
on 2/17/01)*,

                    Defendants.
========================================X

**SECOND
AMENDED
COMPLAINT**

*3:02 CV 718
(RNC)(DFM)*

        Plaintiffs LAURA GUIGLIANO, as Administrator of the Estate of MICHAEL

GUIGLIANO, Deceased, and LAURA GUIGLIANO, Individually, by her attorneys,

THE LAW FIRM OF JOSEPH LANNI, P.C., complaining of the defendants, respectfully

shows to this Court and alleges, upon information and belief, as follows:


                          PARTIES

1.      That at all times hereinafter mentioned, the plaintiff, LAURA GUIGLIANO, was

        and is a resident of the County of Putnam, State of New York.

1

2.    That at all times hereinafter mentioned, plaintiff's decedent MICHAEL GUIGLIANO, was a resident of the County of Putnam, State of New York.

3.    On the date of August 22, 2003, plaintiff LAURA GUIGLIANO was appointed administrator of the Estate of MICHAEL GUIGLIANO, Deceased, and she was issued Letters of Administration, dated August 29, 2003, for the Estate of MICHAEL GUIGLIANO by order of the Surrogate's Court of the State of New York, County of Putnam, Hon. Robert E. Miller presiding.

4.    That at all times hereinafter mentioned, defendant DANBURY HOSPITAL was a corporation with business activities and operations, including a hospital, located in the State of Connecticut.

5.    That at all times hereinafter mentioned, defendant DANBURY HOSPITAL was a corporation organized and existing pursuant to the laws of the State of Connecticut.

6.    That at all times hereinafter mentioned, defendant DANBURY HOSPITAL held itself out to the public as a hospital in which members of the public, including MICHAEL GUIGLIANO, could receive care and treatment in a competent, safe manner and in accordance with standards of accepted medical, orthopedic, surgical, nursing and hospital practice.

2

7.  That at all times hereinafter mentioned, defendant DANBURY HOSPITAL provided personnel, including physicians, surgeons, nursing staff, technicians, physicians' assistants, residents, interns and others for the work-up, care and treatment of patients to whom this hospital facility was made available, including MICHAEL GUIGLIANO.

8.  That at all times hereinafter mentioned, defendant JAMES DEPUY, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

9.  That at all times hereinafter mentioned, defendant JAMES DEPUY, M.D, was a physician practicing medicine in the State of Connecticut.

10. That at all times hereinafter mentioned, defendant JAMES DEPUY, M.D., was a physician specializing in the field of orthopedics, who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical and orthopedic care and practice.

11. That at all times hereinafter mentioned, defendant JAMES DEPUY, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

12.   That at all times hereinafter mentioned, defendant F. SCOTT GRAY, M.D., was a
      physician duly licensed to practice medicine in the State of Connecticut.

13.   That at all times hereinafter mentioned, defendant F. SCOTT GRAY, M.D., was a
      physician practicing medicine in the State of Connecticut.

14.   That at all times hereinafter mentioned, defendant F. SCOTT GRAY, M.D., was a
      physician specializing in the field of orthopedics, who held himself out to the
      general public as being competent in the diagnosis, care and treatment of patients,
      and as being able to treat patients in general, and MICHAEL GUIGLIANO in
      particular, in accordance with standards of accepted medical and orthopedic care
      and practice.

15.   That at all times hereinafter mentioned, defendant F. SCOTT GRAY, M.D., was
      affiliated with defendant DANBURY HOSPITAL and was authorized to provide
      care and treatment to patients at defendant DANBURY HOSPITAL.

16.   That at all times hereinafter mentioned, defendant GEORGIANA KNOWLES,
      P.A., was a physicians' assistant duly licensed to practice in the State of
      Connecticut.

17. That at all times hereinafter mentioned, defendant GEORGIANA KNOWLES, P.A., was practicing as a physicians' assistant in the State of Connecticut.

18. That at all times hereinafter mentioned, defendant GEORGIANA KNOWLES, P.A., was a physicians' assistant specializing in the field of orthopedics, who held herself out to the general public as being competent in the care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical and orthopedic care and practice.

19. That at all times hereinafter mentioned, defendant GEORGIANA KNOWLES, P.A., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

20. That at all times hereinafter mentioned, defendant DEANNA WOLFFE, P.A., was a physicians' assistant duly licensed to practice in the State of Connecticut.

21. That at all times hereinafter mentioned, defendant DEANNA WOLFFE, P.A., was practicing as a physicians' assistant in the State of Connecticut.

22. That at all times hereinafter mentioned, defendant DEANNA WOLFFE, P.A., was a physicians' assistant specializing in the field of orthopedics, who held herself out to the general public as being competent in the care and treatment of

5

patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical and orthopedic care and practice.

23.    That at all times hereinafter mentioned, defendant DEANNA WOLFFE, P.A., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

24.    That at all times hereinafter mentioned, defendant DAVID OELBERG, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

25.    That at all times hereinafter mentioned, defendant DAVID OELBERG, M.D., was a physician practicing medicine in the State of Connecticut.

26.    That at all times hereinafter mentioned, defendant DAVID OELBERG, M.D., was a physician who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

27.    That at all times hereinafter mentioned, defendant DAVID OELBERG, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

6

28.   That at all times hereinafter mentioned, defendant DAVID YUAN, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

29.   That at all times hereinafter mentioned, defendant DAVID YUAN, M.D., was a physician practicing medicine in the State of Connecticut.

30.   That at all times hereinafter mentioned, defendant DAVID YUAN, M.D., was a physician who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

31.   That at all times hereinafter mentioned, defendant DAVID YUAN, M.D., was affiliated with defendant DANBURY HOSPITAL,and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

32.   That at all times hereinafter mentioned, defendant J. BORRUSSO, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

33.   That at all times hereinafter mentioned, defendant J. BORRUSSSO, M.D., was a physician practicing medicine in the State of Connecticut.

34.   That at all times hereinafter mentioned, defendant J. BORRUSSO, M.D., was a physician specializing in the field of surgery who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical and surgical care and practice.

35.   That at all times hereinafter mentioned, defendant J. BORRUSSO, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

36.   That at all times hereinafter mentioned, defendant JOSEPH J. CATANIA, M.D., was a physician practicing medicine in the State of Connecticut.

37.   That at all times hereinafter mentioned, defendant JOSEPH J. CATANIA, M.D., was a physician specializing in the field of surgery who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical and surgical care and practice.

38.   That at all times hereinafter mentioned, defendant JOSEPH J. CATANIA, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

39.   That at all times hereinafter mentioned, defendant SCOTT B. BERGER, M.D., was a physician practicing medicine in the State of Connecticut.

40.   That at all times hereinafter mentioned, defendant SCOTT B. BERGER, M.D., was a physician who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with standards of accepted medical care and practice.

41.   That at all times hereinafter mentioned, defendant SCOTT B. BERGER, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

42.   That at all times hereinafter mentioned, defendant DANBURY SURGICAL ASSOCIATES, P.C., was a corporation with business activities and operations, including a medical practice, located in the State of Connecticut.

43.   That at all times hereinafter mentioned, defendant DANBURY SURGICAL ASSOCIATES, P.C., was a corporation organized and existing pursuant to the laws of the State of Connecticut.

44.   That at all times hereinafter mentioned, defendant DANBURY SURGICAL ASSOCIATES, P.C., held itself out to the public as a medical and surgical

9

practice in which members of the public, including MICHAEL GUIGLIANO, could receive care and treatment in a competent, safe manner and in accordance with standards of accepted medical and surgical practice.

45.   That at all times hereinafter mentioned, defendant DANBURY SURGICAL ASSOCIATES, P.C., employed and provided personnel, including defendants J. BORRUSSO, M.D., and JOSEPH J. CATANIA, M.D., and other physicians and surgeons, for the work-up, care and treatment of patients to whom this hospital facility was made available, including MICHAEL GUIGLIANO.

46.   That at all times hereinafter mentioned, ARTHUR KOTCH, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

47.   That at all times hereinafter mentioned, defendant ARTHUR KOTCH, M.D., was a physician practicing medicine in the State of Connecticut.

48.   That at all times hereinafter mentioned, defendant ARTHUR KOTCH, M.D., was a physician who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

49.    That at all times hereinafter mentioned, defendant ARTHUR KOTCH, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

50.    That at all times hereinafter mentioned, defendant IULIA CIRCIUMARA, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

51.    That at all times hereinafter mentioned, defendant IULIA CIRCIUMARA, M.D., was a physician practicing medicine in the State of Connecticut.

52.    That at all times hereinafter mentioned, defendant IULIA CIRCIUMARA, M.D., was a physician who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

53.    That at all times hereinafter mentioned, defendant IULIA CIRCIUMARA, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

54.    That at all times hereinafter mentioned, defendant ANDRE KOUZNETSOV, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

11

55.   That at all times hereinafter mentioned, defendant ANDRE KOUZNETSOV, M.D., was a physician practicing medicine in the State of Connecticut.

56.   That at all times hereinafter mentioned, defendant ANDRE KOUZNETSOV, M.D., was a physician who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

57.   That at all times hereinafter mentioned, defendant ANDRE KOUZNETSOV, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

58.   That at all times hereinafter mentioned, defendant MIHAELA TUDORICA, M.D., was a physician duly licensed to practice medicine in the State of Connecticut.

59.   That at all times hereinafter mentioned, defendant MIHAELA TUDORICA, M.D., was a physician practicing medicine in the State of Connecticut.

60.   That at all times hereinafter mentioned, defendant MIHAELA TUDORICA, M.D., was a physician who held herself out to the general public as being

competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of medical care and practice.

61.    That at all times hereinafter mentioned, defendant MIHAELA TUDORICA, M.D., was affiliated with defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

62.    That at all times hereinafter mentioned, defendant MAUREEN BENNETT, R.N., was a nurse duly licensed in the State of Connecticut.

63.    That at all times hereinafter mentioned, defendant MAUREEN BENNETT, R.N., was practicing in the State of Connecticut.

64.    That at all times hereinafter mentioned, defendant MAUREEN BENNETT, R.N., was a nurse who held herself out to the general public as being competent in the care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of nursing care and practice.

65.    That at all times hereinafter mentioned, defendant MAUREEN BENNETT, R.N., was employed by defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

66.     That at all times hereinafter mentioned, defendant JOANN BROWN, R.N., was a
        nurse duly licensed to practice in the State of Connecticut.

67.     That at all times hereinafter mentioned, defendant JOANN BROWN, R.N., was
        practicing in the State of Connecticut.

68.     That at all times hereinafter mentioned, defendant JOANN BROWN, R.N., was a
        nurse who held herself out to the general public as being competent in the care
        and treatment of patients, and as being able to treat patients in general, and
        MICHAEL GUIGLIANO in particular, in accordance with accepted standards of
        nursing care and practice.

69.     That at all times hereinafter mentioned, defendant JOANN BROWN, R.N., was
        employed by defendant DANBURY HOSPITAL and was authorized to provide
        care and treatment to patients at defendant DANBURY HOSPITAL.

70.     That at all times hereinafter mentioned, defendant BETH ANN HOFFMAN,
        R.N., was a nurse duly licensed to practice in the State of Connecticut.

71.     That at all times hereinafter mentioned, defendant BETH ANN HOFFMAN,
        R.N., was practicing in the State of Connecticut.

72.    That at all times hereinafter mentioned, defendant BETH ANN HOFFMAN, R.N., was a nurse who held herself out to the general public as being competent in the care and treatment of patients, and as being able to treat patients in general, and MICHAEL GUIGLIANO in particular, in accordance with accepted standards of nursing care and practice.

73.    That at all times hereinafter mentioned, defendant BETH ANN HOFFMAN, R.N., was employed by defendant DANBURY HOSPITAL and was authorized to provide care and treatment to patients at defendant DANBURY HOSPITAL.

74.    That at all times hereinafter mentioned, defendant VANESSA SAIPHER was an employee of defendant DANBURY HOSPITAL.

75.    That at all times hereinafter mentioned, defendant VANESSA SAIPHER provided patient care and services at defendant DANBURY HOSPITAL.

76.    That at all times hereinafter mentioned, defendant JOE ROTH was an employee of defendant DANBURY HOSPITAL.

77.    That at all times hereinafter mentioned, defendant JOE ROTH provided patient care and services at defendant DANBURY HOSPITAL.

78.   That at all times hereinafter mentioned, defendant "JANE DOE NO.1" was an employee of defendant DANBURY HOSPITAL.

79.   That at all times hereinafter mentioned, defendant "JANE DOE NO.1" provided patient care and services at defendant DANBURY HOSPITAL.

## JURISDICTION

80.   That the jurisdiction of this Court is premised upon the diversity of citizenship among the parties, as plaintiffs are citizens of the State of New York and the defendants are citizens of the State of Connecticut with their principal and actual places of business in that state.

81.   That the matter in controversy exceeds, exclusive of interest and costs, the sum specified by *28 U.S.C. §1332* (*i.e.*: $75,000.00).

## VENUE

82.   That the venue of this action is premised upon the fact that the transactions and occurrences that form the basis of the plaintiff's Complaint took place in the City of Danbury, in the State of Connecticut.

## JURY DEMAND

16

83. That plaintiffs demand trial by jury of all issues presented in this action that are triable as of right by a jury pursuant to *Fed. R. Civ. P. 38 (a)*.

## AS AND FOR A FIRST CAUSE OF ACTION

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 73 inclusive with the same force and effect as though fully stated and set forth at length herein.

85. That in or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of defendant DANBURY HOSPITAL in its capacity as a hospital that offered care and treatment to patients from the general public, and to MICHAEL GUIGLIANO in particular, in accordance with accepted standards of orthopedic, surgical, medical, nursing and hospital practice.

86. That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, JAMES DEPUY, M.D., in his capacity as a physician and orthopedist charged with the responsibility of caring for patients in accordance with standards of accepted medical, surgical, and orthopedic practice.

17

87.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, F. SCOTT GRAY, M.D., in his professional

capacity as a physician and orthopedist charged with the responsibility of caring

for patients in accordance with standards of accepted medical, surgical, and

orthopedic practice.

88.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, GEORGIANA KNOWLES, P.A., in her capacity

as a physicians' assistant charged with the responsibility of caring for patients in

accordance with standards of accepted medical and orthopedic practice.

89.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, DEANNA WOLFFE, P.A., in her capacity as a

physicians' assistant charged with the responsibility of caring for patients in

accordance with standards of accepted medical and orthopedic practice.

90.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, DAVID OELBERG, M.D., in his capacity as a

physician charged with the responsibility of caring for patients in accordance with

standards of accepted medical practice.

91.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, DAVID YUAN, M.D., in his capacity as a

physician charged with the responsibility of caring for patients in accordance with

standards of accepted medical practice.

92.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came

under the care of the defendant, J. BORRUSSO, M.D., in his capacity as a

physician and surgeon charged with the responsibility of caring for patients in

accordance with standards of accepted medical and surgical practice.

93.    That on or about the period February 7, 2001 to April 17, 2001, and for some time

prior thereto and subsequent thereto, with regard to certain signs, symptoms and

complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, JOSEPH J. CATANIA, M.D., in his capacity as a physician and surgeon charged with the responsibility of caring for patients in accordance with standards of accepted medical and surgical practice.

94.     That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, SCOTT B. BERGER, M.D., in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical practice.

95.     That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, DANBURY SURGICAL ASSOCIATES, P.C., in its capacity as the employer of defendants J. BORRUSSO, M.D., and JOSEPH J. CATANIA, M.D., and other physicians and surgeons charged with the responsibility of caring for patients in accordance with standards of accepted medical and surgical practice.

96.     That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and

20

complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, ARTHUR KOTCH, M.D., in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical practice.

97.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, IULIA CIRCIUMARA, M.D., in her capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical practice.

98.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, ANDRE KOUZNETSOV, M.D., in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical practice.

99.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, MIHAELA TUDORICA, M.D., in her capacity

as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical practice.

100.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, MAUREEN BENNETT, R.N., in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted nursing practice.

101.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, JOANN BROWN, R.N., in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted nursing practice.

102.    That on or about the period February 7, 2001 to April 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, BETH ANN HOFFMANN, R.N., in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted nursing practice.

103.  That on or about February 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, VANESSA SAIPHER, in her capacity as an employee of defendant DANBURY HOSPITAL charged with the responsibility of caring for patients in accordance with standards of accepted nursing and/or hospital practice.

104.  That on or about February 17, 2001 and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, JOE ROTH, in his capacity as an employee of defendant DANBURY HOSPITAL charged with the responsibility of caring for patients in accordance with standards of accepted nursing and/or hospital practice.

105.  That on or about February 17, 2001, and for some time prior thereto and subsequent thereto, with regard to certain signs, symptoms and complaints relating to his physical condition, MICHAEL GUIGLIANO came under the care of the defendant, "JANE DOE NO. 1", in her/his capacity as an employee of defendant DANBURY HOSPITAL charged with the responsibility of caring for patients in accordance with standards of accepted nursing and/or hospital practice.

23

106.   That at all times hereinafter mentioned, it was the duty of defendant DANBURY

HOSPITAL and/or its agents, servants and employees, to possess such reasonable

degree of skill and learning as is ordinarily possessed by physicians, orthopedists,

surgeons, residents, interns, physicians' assistants, nurses and other hospital

personnel in the community, and to render medical, surgical, orthopedic, nursing

and hospital care and treatment in accordance with standards of good and

accepted practice and to use reasonable care, diligence and judgment in the

exercise of such skill and in the application of such learning, and to employ in the

treatment of patients in general, and of MICHAEL GUIGLIANO in particular,

approved methods of care and treatment in general use in the community, and to

afford to patients in general, and to MICHAEL GUIGLIANO in particular, due,

reasonable and proper skill, diagnosis and treatment, as well as proper orthopedic,

medical, surgical, nursing and hospital care.

107.   That at all times hereinafter mentioned, it was the duty of the defendant physician,

JAMES DEPUY, M.D., to render medical, surgical and orthopedic care and

treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in

accordance with approved methods of care and treatment generally used in the

community and in accordance with standards of good and accepted medical,

surgical and orthopedic practice.

108.   That at all times hereinafter mentioned, it was the duty of the defendant physician,

F. SCOTT GRAY, M.D., to render medical, surgical, and orthopedic care and

treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical, surgical, and orthopedic practice.

109.   That at all times hereinafter mentioned, it was the duty of the defendant physicians' assistant, GEORGIANA KNOWLES, P.A., to render medical and orthopedic care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical and orthopedic practice.

110   That at all times hereinafter mentioned, it was the duty of the defendant physicians' assistant, DEANNA WOLFFE, P.A., to render medical and orthopedic care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical and orthopedic practice.

111.   That at all times hereinafter mentioned, it was the duty of the defendant physician, DAVID OELBERG, M.D., to render medical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with

approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical practice.

112.    That at all times hereinafter mentioned, it was the duty of the defendant physician, DAVID YUAN, M.D., to render medical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical practice.

113.    That at all times hereinafter mentioned, it was the duty of the defendant physician, J. BORRUSSO, M.D., to render medical and surgical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical and surgical practice.

114.    That at all times hereinafter mentioned, it was the duty of the defendant physician, JOSEPH J. CATANIA, M.D., to render medical and surgical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical and surgical practice.

115.   That at all times hereinafter mentioned, it was the duty of the defendant physician,
       SCOTT B. BERGER, M.D., to render medical care and treatment to patients in
       general, and to MICHAEL GUIGLIANO in particular, in accordance with
       approved methods of care and treatment generally used in the community and in
       accordance with standards of good and accepted medical practice.

116.   That at all times hereinafter mentioned, it was the duty of the defendant
       DANBURY SURGICAL ASSOCIATES, P.C., in its capacity as the employer of
       defendants J. BORRUSSO, M.D., and JOSEPH J. CATANIA, M.D., and other
       physicians and surgeons, to render medical and surgical care and treatment to
       patients in general, and to MICHAEL GUIGLIANO in particular, in accordance
       with approved methods of care and treatment generally used in the community
       and in accordance with standards of good and accepted medical and surgical
       practice.

117.   That at all times hereinafter mentioned, it was the duty of the defendant physician,
       ARTHUR KOTCH, M.D., to render medical care and treatment to patients in
       general, and to MICHAEL GUIGLIANO in particular, in accordance with
       approved methods of care and treatment generally used in the community and in
       accordance with standards of good and accepted medical practice.

118.   That at all times hereinafter mentioned, it was the duty of the defendant physician,
       IULIA CIRCIUMARA, M.D., to render medical care and treatment to patients in

27

general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical practice.

119.    That at all times hereinafter mentioned, it was the duty of the defendant physician, ANDRE KOUZNETSOV, M.D., to render medical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical practice.

120.    That at all times hereinafter mentioned, it was the duty of the defendant physician, MIHAELA TUDORICA, M.D., to render medical care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted medical practice.

121.    That at all times hereinafter mentioned, it was the duty of the defendant nurse, MAUREEN BENNETT, R.N., to render nursing care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted nursing practice.

28

122.   That at all times hereinafter mentioned, it was the duty of the defendant nurse, JOANN BROWN, R.N., to render nursing care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted nursing practice.

123.   That at all times hereinafter mentioned, it was the duty of the defendant nurse, BETH ANN HOFFMAN, R.N., to render nursing care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted nursing practice.

124.   That at all times hereinafter mentioned, it was the duty of the defendant DANBURY HOSPITAL employee, VANESSA SAIPHER, to render care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted nursing and/or hospital practice.

125.   That at all times hereinafter mentioned, it was the duty of the defendant DANBURY HOSPITAL employee, JOE ROTH, to render care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community

and in accordance with standards of good and accepted nursing and/or hospital practice.

126.   That at all times hereinafter mentioned, it was the duty of the defendant DANBURY HOSPITAL employee, "JANE DOE NO.1", to render care and treatment to patients in general, and to MICHAEL GUIGLIANO in particular, in accordance with approved methods of care and treatment generally used in the community and in accordance with standards of good and accepted nursing and/or hospital practice.

127.   That the work-up, diagnosis, care and treatment rendered to MICHAEL GUIGLIANO by the defendants, and/or their agents, servants and/or employees at various times during the period February 7 2001 – February 17, 2001, was rendered in an improper, negligent and careless manner in that the said defendants and/or their agents, servants and/or employees: failed to adhere to accepted standards of medical, orthopedic, surgical, nursing and hospital practice; failed, neglected and omitted to exercise and employ the skill, care, diligence, learning and judgment commonly and ordinarily possessed by and required of physicians; failed to use and employ approved methods of care and treatment generally used in the community; failed to work up, diagnose, care for and treat the plaintiff's decedent in accordance with the standards of medical care and treatment generally accepted in the community; failed to provide medical, orthopedic, surgical,

nursing and hospital care and treatment in accordance with accepted standards of practice; and that the defendants were otherwise negligent and careless in the aforementioned course of treatment.

128.   That at all times hereinafter mentioned, the care and treatment rendered by the defendants and/or their agents, servants and/or employees to MICHAEL GUIGLIANO at various times during the period February 7, 2001- February 17, 2001 failed to adhere to good and accepted orthopedic practice, surgical practice and medical practice in that the said defendants and/or their agents, servants and/or employees: failed to properly and timely diagnose and treat the patient; failed to properly and timely diagnose and treat fat emboli syndrome; failed to properly and timely diagnose and treat embolization of the pulmonary arteries; failed to properly and timely take prophylactic measures against respiratory distress, respiratory failure, hypoxemia and respiratory arrest; failed to avoid and prevent the onset of ARDS, respiratory failure, hypoxemia and respiratory arrest; failed to properly anticoagulate the patient; failed to properly heed and appreciate the results of diagnostic imaging and diagnostic laboratory studies; failed to properly monitor, observe, supervise and attend to the patient; failed to timely diagnose, recognize and become alert to a respiratory arrest; failed to timely diagnose, recognize and become alert to a cardiorespiratory arrest; failed to provide adequate ventilatory and respiratory support and treatment; failed to provide and maintain appropriate, necessary and accessible equipment for cardiopulmonary resuscitation; failed to have adequate procedures and policies

for responding to calls for cardiopulmonary resuscitation; failed to properly follow and adhere to procedures and policies for responding to calls for cardiopulmonary resuscitation and "Code 99" calls; failed to place the patient in an ICU setting; failed to heed and appreciate the significance of the clinical evidence; failed to properly perform cardiopulmonary resuscitation; and failed to timely perform cardiopulmonary resuscitation.

129.    That by reason of the aforesaid negligence and medical malpractice of the defendants, MICHAEL GUIGLIANO was caused to suffer from permanent, severe, disabling injuries, including conscious pain and suffering, hypoxemia, ARDS, respiratory failure, respiratory arrest, cardiopulmonary arrest, anoxic encephalopathy, brain damage, permanent vegetative state and permanent coma.

130.    That the aforesaid injuries and damages were caused solely and wholly by virtue of the negligence and malpractice of the defendants and/or their agents, servants and/or employees and was in no way contributed to by MICHAEL GUIGLIANO.

131.    That by reason of the aforesaid negligence and medical malpractice of the defendants, MICHAEL GUIGLIANO was caused to require complete custodial, nursing and medical care and treatment.

132.    That by reason of the aforesaid negligence and medical malpractice of the defendants, plaintiff's decedent MICHAEL GUIGLIANO was caused to sustain

32

lost earnings, and incurred expenses for the provision of medical, custodial, nursing, hospital and health care as well as costs for medications and supplies.

## AS AND FOR A SECOND CAUSE OF ACTION

133.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 116 inclusive with the same force and effect as though fully stated and set forth at length herein.

134.   That at all times hereinafter mentioned, plaintiff LAURA GUIGLIANO was the lawfully wedded wife of MICHAEL GUIGLIANO and, as such, was entitled to the services, consortium and society of MICHAEL GUIGLIANO.

135.   That by reason of the foregoing negligence and malpractice of the defendants, plaintiff LAURA GUIGLIANO was deprived of the aforesaid services, earnings, support, consortium and society of MICHAEL GUIGLIANO.

136.   That by reason of the aforesaid negligence and malpractice of the defendants, plaintiff LAURA GUIGLIANO was obliged to spend sums of money for medical, custodial and other expenses occasioned by the severe injuries inflicted on MICHAEL GUIGLIANO.

## AS AND FOR A THIRD CAUSE OF ACTION

137.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1
        through 120 inclusive with the same force and effect as though fully stated and set
        forth at length herein.

138.    That at all times hereinafter mentioned, it was the duty of defendant DANBURY
        HOSPITAL and/or its agents, servants and employees, to exercise a reasonable
        degree of care, caution and diligence in the rendering of hospital services to and
        on behalf of patients in general, and to MICHAEL GUIGLIANO in particular,
        and to use reasonable care, caution and diligence in the performance of its
        services and in the operation of its hospital.

139.    That at all times hereinafter mentioned, it was the duty of defendants VANESSA
        SAIPHER, JOE ROTH and "JANE DOE NO. 1", to exercise a reasonable degree
        of care, caution and diligence in the rendering of hospital services to and on
        behalf of patients in general, and to MICHAEL GUIGLIANO in particular, and to
        use reasonable care, caution, and diligence in the performance of their
        employment duties.

140.    That on or about the date of February 17, 2001, defendants DANBURY
        HOSPITAL and/or its agents, servants and employees, VANESSA SAIPHER,
        JOE ROTH and "JANE DOE NO. 1", failed to exercise a reasonable degree of

care, caution and diligence in the rendering of hospital services to and on behalf of MICHAEL GUIGLIANO, failed to use reasonable care, caution and diligence in the performance of their services, in the operation of the hospital and in the performance of employment duties in relation to MICHAEL GUIGLIANO and were otherwise negligent, careless and reckless in the provision of hospital services to or on behalf of MICHAEL GUIGLIANO.

141.    That defendants DANBURY HOSPITAL and/or its agents, servants and employees, VANESSA SAIPHER, JOE ROTH and "JANE DOE NO. 1", failed to exercise a reasonable degree of care, failed to use reasonable care, and were otherwise negligent, careless and reckless in the provision of hospital services, in the operation of the hospital and in the performance of employment duties in relation to MICHAEL GUIGLIANO by not adhering to promulgated policies and procedures for providing and maintaining appropriate, necessary and accessible equipment for cardiopulmonary resuscitation, by not following procedures and policies for responding to calls for cardiopulmonary resuscitation, and by not providing accurate, appropriate and proper information in calling a "Code 99" and/or in calling for personnel to undertake cardiopulmonary resuscitation to timely revive, treat and care for MICHAEL GUIGLIANO.

142.    That by reason of the aforesaid negligence, recklessness and carelessness of the defendants, DANBURY HOSPITAL and/or its agents, servants and employees, VANESSA SAIPHER, JOE ROTH and "JANE DOE NO. 1", MICHAEL

GUIGLIANO was caused to suffer from permanent, severe, disabling injuries, including conscious pain and suffering, hypoxemia, ARDS, respiratory failure, respiratory arrest, cardiopulmonary arrest, anoxic encephalopathy, brain damage, permanent vegetative state and permanent coma.

143.   That by reason of the aforesaid negligence, recklessness and carelessness of the defendants DANBURY HOSPITAL and/or its agents, servants and employees, VANESSA SAIPHER, JOE ROTH and "JANE DOE NO. 1", MICHAEL GUIGLIANO was caused to require complete custodial, nursing and medical care and treatment.

144.   That by reason of the aforesaid negligence, recklessness and carelessness of the defendants DANBURY HOSPITAL and/or its agents, servants and employees, VANESSA SAIPHER, JOE ROTH and "JANE DOE NO. 1", plaintiff's decedent MICHAEL GUIGLIANO were caused to sustain lost earnings, and incurred expenses for the provision of medical, custodial, nursing, hospital and health care as well as costs for medications and supplies.

### AS AND FOR A FOURTH CAUSE OF ACTION

145.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 128 inclusive with the same force and effect as though fully stated and set forth at length herein.

146.    That by reason of the aforestated negligence and medical malpractice of the defendants, plaintiff's decedent MICHAEL GUIGLIANO was caused to suffer from permanent, severe, disabling injuries and illness, including permanent, severe, disabling injuries, including conscious pain and suffering, hypoxemia, ARDS, respiratory failure, respiratory arrest, cardiopulmonary arrest, anoxic encephalopathy, brain damage, permanent vegetative state, permanent semicomatose state, physical disability, mental anguish and emotional distress, during the period of time immediately prior to and leading up to his death and was compelled to undergo further medical, surgical, nursing and therapeutic care and treatment prior to his death.

147.    That the aforementioned acts of negligence and medical malpractice committed by the defendants caused the death of plaintiff's decedent MICHAEL GUIGLIANO on July 14, 2003.

148.    That the aforestated death of plaintiff's decedent MICHAEL GUIGLIANO was caused solely and wholly by virtue of the negligence and medical malpractice of the defendants and their agents, servants and/or their employees, and was in no way contributed to by the decedent herein.

149.    That the plaintiff's decedent MICHAEL GUIGLIANO died leaving distributees, including a wife and two children.

150.   That the aforementioned distributees received financial assistance, monetary support, and services from plaintiff's decedent and were entitled to the continued receipt of the same.

151.   That by reason of the foregoing negligence and medical malpractice of the defendants, the aforementioned distributees sustained pecuniary loss and were deprived of the services, monetary support, and financial assistance of the plaintiff's decedent, MICHAEL GUIGLIANO.

152.   That by reason of the foregoing negligence and medical malpractice of the defendants, the aforementioned distributees were further obliged to expend diverse sums of money for medical expenses and funeral and burial expenses occasioned by the final illness and death of MICHAEL GUIGLIANO.

**WHEREFORE,** plaintiff LAURA GUIGLIANO, as Administrator of the Estate of MICHAEL GUIGLIANO, Deceased, and LAURA GUIGLIANO, Individually, by her attorneys, THE LAW FIRM OF JOSEPH LANNI, P.C.,, hereby demands judgment against the defendants in the amount of $25,000,000.00 compensatory damages in the first cause of action, in the amount of $5,000,000.00 compensatory damages in the second cause of action, in the amount of $25,000,000.00 compensatory damages in the third cause of action, and in the amount of $25,000,000.00 compensatory damages in the

fourth cause of action, together with the costs and disbursements of this action and the interest imposed thereon.

Dated: Larchmont, New York
       March 9, 2005

                                    Yours, etc.,

**JOSEPH LANNI**        (CT 23566)
The Law Firm Of
JOSEPH LANNI, P.C.
Attorneys for Plaintiff
LAURA GUIGLIANO
138 Chatsworth Avenue, Suites 6-8
Larchmont, New York 10538
(914) 834-6600
Fax: (914) 834-0152

*L. Civ. R. 2 (c)(1) Local Office*:

        JOSEPH LANNI, ESQ.
        C/o Law Offices Of
        ROBERT W. FINKE, ESQ.   (CT 17308)
        14 Henry Street
        Darien, CT 06820
        (203) 357-0557

*[Defendants and defendants' counsel are requested to direct all communications and to serve all pleadings, documents, correspondence and papers, etc., in this action to the Larchmont, New York office of plaintiffs' counsel.]*

39

TO:    SACHNER & O'CONNOR
Attorneys for Defendants
DEPUY, GRAY & WOLFF
765 Straits Turnpike, Bldg. 2, Ste. 1001
P.O. Box 1323
Middlebury, CT 06762-1323

NEUBERT, PEPE & MONTIETH, P.C.
Attorneys for Defendants DANBURY HOSPITAL,
OELBERG, YUAN, KOTCH, CIRCIUMARA,
KUZNETSOV, TUDORICA, BENNETT,
BROWN, HOFFMAN, SAIPHER, ROTH & "DOE NO. 1"
195 Church Street
New Haven, CT 06510

RYAN, RYAN, JOHNSON
& DELUCA, LLP
Attorneys for Defendant BORRUSO
80 Fourth Street
Stamford, CT 06905

BAI, POLLOCK, BLUEWIESS
& MULCAHEY, P.C.
Attorneys for Defendant KNOWLES
10 Middle Street
Bridgeport, CT 06604

SCOTT F. MORGAN, ESQ.
WEINER, MILLO & MORGAN, LLC
Co-Counsel for Plaintiff
LAURA GUIGLIANO
220 Fifth Avenue, 7th Floor
New York, New York 10001

VANESSA SAIPHER
12 Dorset Drive
New Milford, CT 06776

JOE ROTH
356 Candlewood Lake Road North
New Milford, CT 06776

"JANE DOE NO. 1"
c/o Danbury Hospital
24 Hospital Avenue
Danbury, Connecticut 06810

JOSEPH J.CATANIA, M.D.
C/o Danbury Surgical Associates, P.C.
46 Federal Road
Danbury, CT 06810

SCOTT B. BERGER, M.D.
C/o Danbury Radiological Associates
27 Hospital Avenue
Danbury, CT 06810

DANBURY SURGICAL ASSOCIATES, P.C.
46 Federal Road
Danbury, CT 06810

41

JOSEPH LANNI hereby declares, pursuant to *28 U.S.C. § 1746*, that the foregoing is true and correct:


That prior to the commencement of this action, the undersigned consulted with physicians and other health care professionals whose medical specialties encompass the medical care and treatment and/or medical conditions at issue in this action and which make them knowledgeable about those issues, for the purpose of making a reasonable inquiry, as permitted by the circumstances then and there existing, as to whether there are grounds to believe that the named defendants in this action were negligent in the care and treatment rendered to plaintiff's decedent and that such negligence caused plaintiff's decedent to sustain injuries. On the basis of such consultations, the undersigned has concluded that there is a good faith basis to commence this action against the named defendants. Similar consultations by the undersigned made since the death of plaintiff's decedent have led me to conclude that there is a good faith basis to amend the pleadings to include a wrongful death claim against the named defendants.

Dated: Larchmont, New York
      March 9, 2005

                          JOSEPH LANNI    (CT 23566)