UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

===============================================X

LAURA GUIGLIANO, as Administrator of the Estate
of MICHAEL GUIGLIANO, Deceased, and LAURA
GUIGLIANO, Individually,

                Plaintiff(s)

        -against-

DANBURY HOSPITAL, J. BORRUSSO, M.D.,
JOSEPH J. CATANIA, M.D., and
DANBURY SURGICAL ASSOCIATES, P.C.,

                Defendants.

===============================================X

J. BORRUSSO, M.D., JOSEPH J. CATANIA, M.D.,
and DANBURY SURGICAL ASSOCIATES, P.C.,

         Third Party Apportionment Plaintiffs,

        -against-

FRANK KESSLER, M.D.,

        Third Party Apportionment Defendant.

===============================================X

*3:02 CV 718*
*(RNC)(DFM)*

# PLAINTIFF'S REQUESTED JURY INSTRUCTIONS

Dated: August 21, 2006

1

Guigliano v. Danbury Hospital, et al.
3:02 CV 718 (RNC)(DFM)

## PLAINTIFF'S REQUESTED JURY INSTRUCTIONS

1-20: Role of Judge/Role of Jury

Ladies and gentlemen of the jury, you have listened to the evidence and to the arguments of counsel, and it is now time to listen to me as I charge you on the law that applies to this dispute.

You as the jury and I as the judge have two separate functions. It is your function to find what the facts are in this case, with respect to the facts, you and you alone are charged with that responsibility. My function is to instruct you as to the law to be applied to the facts that you find in order to decide this case. With respect to the law, what I say to you is binding upon you and you must follow my instructions.

I do not have any preference as to the outcome of this case. I have not meant to convey by facial expression or tone of voice or in any other way at any time during the trial any preference or inclination as to how you should decide the facts, and you should not make any such interpretations. If, in my instructions to you, I refer to one party more than the other, or do anything that in your mind suggests a preference for one side or the other, it is not done on purpose. My task has been to apply the rules of evidence and to instruct you as to the law. It is for you alone to decide on the outcome of this case.

1-21: Duty to Follow the Law

It is your duty to follow my instructions and conscientiously apply the law as I give it to you to the facts as you find them in order to arrive at your ultimate verdict. If

2

you should have a different idea of what the law is or even what you feel it ought to be, you must disregard your own notions and apply the law as I give it to you. The parties are counting on having their claims decided according to particular legal standards that are the same for everyone, and those are the standards I will give you and that you must follow. If what counsel said about the law differs from what I tell you, you will dismiss from your minds what they may have said to you. You must decide this case based only on the law that I furnish to you and on the basis of all of the law as I give it to you regardless of the order of my instructions. You must not single out any particular instruction or give it more or less emphasis than any other, but rather must apply all of my instructions on the law that apply to the facts as you find them.

I-22: Duty to Decide on the Evidence

You are to determine what the facts are by careful consideration of all the evidence presented and based solely upon the evidence, giving to each part of the evidence the weight you consider it deserves in reaching your ultimate conclusion. When I say evidence, I include the following:

-testimony by witnesses in court, including what you may have observed in any demonstrations they presented during their testimony

-testimony by witnesses by way of the reading of transcripts or the showing of videotapes

-exhibits that have been received into evidence as full exhibits, including any pictures or documents that are full exhibits

-your observations at the viewing of the scene

-facts that the parties have stipulated to

-facts that I have told you are to be taken as true by judicial notice

-facts admitted as true in pleadings

-facts admitted in response to requests to admit

The testimonial evidence includes both what was said on direct examination and what was said on cross examination, without regard to which party called the witness.

There are a number of things that may have been seen or heard during the trial which are not evidence and which you cannot rely on as evidence in deciding whether a party has proven a claim or a defense.   For example, [use as applicable]:

-the statements made by lawyers, including statements made both in their opening statements and in their closing arguments are not evidence

-a question is not evidence: it is the answer, not the question or the assumption made in the question, that is evidence

-the fact that a party has filed a claim or a defense in the court is not evidence that proves the claim or the defense is true

-testimony or exhibits that were offered but refused or stricken by me or that I told you to disregard must not be relied upon as evidence in resolving the case

-testimony or exhibits that I told you were to be used only for a particular purpose are not evidence for any other issue

-exhibits marked for identification that were not received in evidence as full exhibits are not evidence

Your duty is to decide the case based on what has been admitted into evidence in this courtroom only, and not on any information about the issues that was not presented into evidence in this courtroom.

It's my right to make comments to you on the evidence, but where I do that, such comments are merely to suggest to you what point of law or what controversy I am speaking about. If I refer to certain facts or certain evidence in the case, do not assume that I mean to emphasize those facts or that evidence and do not limit your consideration to the things that I may have mentioned. Likewise, you should attach no importance to it if I should mention one party more than the other. If I should overlook any evidence in the case, you'll supply it from your own recollection; if I incorrectly state anything about the evidence in relation to what you remember, you should apply your own recollection and correct my error. In the same way, what any of the lawyers may have said in their respective summaries to you as to the facts or evidence in the case should have weight with you only if their recollection agrees with your own; otherwise, it's your own recollection of the facts and evidence which should have weight in your deliberations.

## 1-23:Direct and Circumstantial Evidence

There are, generally speaking, two types of evidence from which a jury can properly find the truth as to the facts of the case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the inferences which may be drawn reasonably and logically from the proven facts. Let me give you an example of what I mean by direct evidence and circumstantial evidence. If you're looking out a third floor window and you see smoke rising outside the window,

that's direct evidence that there is smoke outside. It is also circumstantial evidence that there is a fire of some sort below the window.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of *all* the evidence in the case, both direct and circumstantial. Thus, both direct and circumstantial evidence are permissible evidence and each type should be treated equally. In your consideration of the evidence, you are not limited to the bald statements of the witness, that is, the exact words that they use. On the contrary, you are permitted to draw from facts which you find to have been proven such reasonable inferences as seem justified in the light of your experience.

While you may make inferences and rely on circumstantial evidence, you should be careful not to resort to guesswork or speculation or conjecture to determine the facts in the case.

1-24: Stipulations/Undisputed Facts

Any facts to which the parties have stipulated, either in writing or orally during the course of the trial, you will treat as proven. Similarly, if you have been told in open court that a party has agreed not to dispute certain evidence presented by the other, you will treat that evidence as proven as well. It is still up to you to decide what weight or importance those facts or evidence have, if any, in deciding the issues in the case. *Berchtold v. Maggi*, 191 Conn. 266, 272 (1983); *Beizer v. Goepfert*, 28 Conn. App. 693, 706, cert. denied, 224 Conn. 901, 507 U.S. 937 (1992).

1-34: Burden of Proof - Claims

The party making a claim has the burden of proof with respect to that claim. Thus, the plaintiff has the burden of proving each essential element of the cause of action upon which the plaintiff relies. I will review those elements with you in one moment. The defendant does not have to present evidence to disprove the plaintiff's claim. *Galyez v. Stop & Shop Companies, Inc.*, 29 Conn. App. 519, 523, cert. denied, 224 Conn. 923 (1992). Similarly, the defendants/third party apportionment plaintiffs have the burden of proving the claims against the third party apportionment defendant by a fair preponderance of the evidence.

1-36: Standard of Proof

In order to meet his or her burden of proof, a party must satisfy you that his or her claims on an issue are more probable than not. You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence. In civil cases such as this one, a different standard of proof applies. The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that, more probably than not, the assertion is true. In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important; one piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence. The weight to be accorded each piece of evidence is for you to decide.

As an example of what I mean, imagine in your mind the scales of justice. Put all the credible evidence on the scales regardless of which party offered it, separating the evidence favoring each side. If the scales remain even, or if they tip against the party making the claim, then that party has failed to establish that assertion. Only if the scales incline, even slightly, in favor of the assertion may you find the assertion has been proved by a fair preponderance of the evidence. *Tianti v. William Raveis Real Estate, Inc.*, 231 Conn. 690, 702 (1995); *Holmes v. Holmes*, 32 Conn. App. 317, 318, cert. denied, 228 Conn. 902 (1993).

1-37: Separation of Liability and Damages

In a general sense, a civil trial such as this has two issues: liability and damages. You will reach the issue of damages only if you find liability in favor of the plaintiff. If you find that liability is established, you will have occasion to apply my instructions concerning damages. If you find that liability has not been established, then you will not consider damages. The fact that I am instructing you on both liability and damages should not be taken by you as any indication as to how the court would decide liability. Rather, my charge includes both liability and damages because I must give you instructions on all the issues in the case.

1-39: Credibility of Witnesses

The credibility of witnesses and the weight to be given to their testimony are matters for you as jurors to determine. However, there are some principles that you should keep in mind. No fact is, of course, to be determined merely by the number of

8

witnesses who testify for or against it; it is the quality and not the quantity of testimony that controls. In weighing the testimony of each witness you should consider the witness' appearance on the stand and whether the witness has an interest of whatever sort in the outcome of the trial. You should consider a witness' opportunity and ability to observe facts correctly and to remember them truly and accurately, and you should test the evidence each witness gives you by your own knowledge of human nature and the motives that influence and control human actions. You may consider the reasonableness of what the witness says and the consistency or inconsistency of his or her testimony. You may consider his or her testimony in relation to facts that you find to have been otherwise proven. You may believe all of what a witness tells you, some of what a witness tells you, or none of what a particular witness tells you. You need not believe any particular number of witnesses and you may reject uncontradicted testimony if you find it reasonable to do so. In short, you are to apply the same considerations and use the same sound judgment and common sense that you use for questions of truth and veracity in your daily life.

1-40: False Testimony

If you believe that a witness testified falsely as to a part of his or her testimony, you may chose to disbelieve other parts of his or her testimony, or the whole of it, but you are not required to do so. You should bear in mind that inconsistencies and contradictions within a witness' testimony or between that testimony and other evidence do not necessarily mean that the witness is lying. Failures of memory may be the reason for some inconsistencies and contradictions; also, it is not uncommon for two honest

people to witness the same event, yet perceive or recall things differently. Yet, if you find that a witness has testified falsely as to an issue, you should of course take that into account in assessing the credibility of the remainder of his or her testimony.

### 1-41: Expert Witnesses

We have had in this case the testimony of expert witnesses. Expert witnesses, such as engineers or doctors, are people who, because of their training, education, and experience, have knowledge beyond that of the ordinary person. Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions. Ordinarily, a witness cannot give an opinion about anything, but rather is limited to testimony as to the facts in that witness' personal knowledge. The experts in this case have given opinions. However, the fact that these witnesses may qualify as experts does not mean that you have to accept their opinions. You can accept their opinions or reject them.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had, and the documents or other physical evidence available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the fact, activity and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result. You should further consider whether the opinions stated by the

10

expert have a rational and reasonable basis in the evidence. Based on all of those things together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept the opinion. You may believe all, some or none of the testimony of an expert witness. In other words, an expert's testimony is subject to your review like that of any other witness.

## 1-42: Hypothetical Question

An expert witness may state an opinion in response to a hypothetical question, and the experts have done so in this case. A hypothetical question is one in which the witness is asked to assume that certain facts are true and to give an opinion based on those assumptions. The value of the opinion given by an expert in response to a hypothetical question depends upon the relevance, validity and completeness of the facts he or she was asked to assume. The weight that you give to the opinion of an expert will depend on whether you find that the facts assumed were proven and whether the facts relied on in reaching the opinion were complete or whether material facts were omitted or not considered. Like all other evidence, an expert's answer to a hypothetical question may be accepted or rejected, in whole or in part, according to your best judgment.

## 1-47: Sympathy/Prejudice

Obviously, your verdict must not be reached on the basis of sympathy for any party or on the basis of prejudice in favor of or against any party. The parties come to court asking simply for a cool, impartial determination of the disputed issues based on the

facts and the law. That is what they are entitled to and that is how you should approach the decision of this case.

2-1: Negligence - Definition

Negligence is the violation of a legal duty which one person owes to another to care for the safety of that person or that person's property. *Sharkey v. Skilton*, 83 Conn. 503, 508 (1910).

2-3: Common Law Negligence Defined

Common law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances. *Hoelter v. Mohawk Services, Inc.*, 170 Conn. 495, 501 (1976).

2-28(a): Medical Malpractice

The plaintiff in this case Laura Guigliano, as the Administrator of the Estate of Michael Guigliano, Deceased, claims that Michael Guigliano was injured and died through the negligence of the defendants Danbury Hospital, Dr. Borrusso, Dr. Catania, and Danbury Surgical Associates, P.C. Defendants/third party apportionment plaintiffs Dr. Borrusso, Dr. Catania, and Danbury Surgical Associates, P.C., have brought claims against third party apportionment defendant Dr. Kessler claiming that his negligence was, in whole or in part, a proximate cause of Michael Guigliano's injuries and subsequent death. Negligence is the violation of a legal duty which one person owes to another to care for the safety of that person.

The legal duty that a health care provider, such as the defendants and third party apportionment defendant, owe to a patient, such as Michael Guigliano, has been established by our legislature.

We have a statute which provides that, "In any civil action to recover damages resulting from personal injury . . . in which it is alleged that such injury resulted from the negligence of a health care provider . . . the claimant shall have the burden of proving by a preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Conn.Gen. Stat. § 52-184c (a).

Because the defendant in this case, Danbury Hospital, employed physicians, nurses, CPR trained personnel and health care personnel to provide postoperative medical treatment to patients, a "similar health care provider" in this case is, according to our statute, one who: is trained as a physician, nurse, CPR trained hospital employee and health care personnel. Conn.Gen. Stat. § 52-184c (c).

Because the defendants and third party apportionment defendant in this case, Dr. Borrusso, Dr. Catania and Dr. Kessler, were trained to provide postoperative medical treatment to patients, a "similar health care provider" in this case is, according to our statute, one who is "trained in the treatment or diagnosis for that condition." Conn.Gen. Stat. § 52-184c (c).

In this case, the prevailing professional standard of care that applies to each defendant is thus the level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent "similar health care providers". This standard applies to both diagnosis and treatment. In order to establish liability, the plaintiff must prove by a fair preponderance of the evidence that each defendant's conduct represented a breach of the prevailing professional standard of care that I have just described. Similarly, the defendants/third party apportionment plaintiffs must prove by a fair preponderance of the evidence that the third party apportionment defendant's conduct represented a breach of the prevailing professional standard of care that I have just described.

The standard of care is the standard prevailing at the time of the treatment in question. The treatment in question occurred in 2001.

The defendants are held to the same prevailing professional standard of care applicable to "similar health care providers" across the nation. For this reason, the particular state in which an expert witness has practiced is unimportant. You should consider the testimony of all experts who have testified in light of their familiarity or lack of familiarity with the standard of care to which I have referred.

A doctor does not guarantee a good medical result. A poor medical result is not, in itself, evidence of any wrongdoing by the doctor. The question on which you must focus is whether each defendant has breached the prevailing professional standard of care.

14

As I have already mentioned, the plaintiff has the burden of proving by a fair preponderance of the evidence that each defendants' conduct represented a breach of the prevailing professional standard of care. Under our law, the plaintiff must prove this by expert testimony. More specifically, she must establish through expert testimony both what the standard of care is and her allegation that each defendants' conduct represented a breach of that standard. Finally, she must establish through expert testimony that the breach of that standard of care was the proximate cause of the injuries that she claims.

The same holds for the defendants/third party apportionment plaintiffs.

Specific Allegations – Danbury Hospital

The plaintiffs allege that Danbury Hospital was negligent in its care of Michael Guigliano in one or more of the following ways:

Defendant Danbury Hospital's nursing staff negligently failed to transport the patient to the radiology department on February 17, 2001, for a CT scan without the supervision of a "multispecialist" nurse, without a pulse oximetry monitor and without a portable cardiac monitor.

Defendant Danbury Hospital's nursing staff negligently failed to follow doctor's orders to use cardiopulmonary monitoring devices on the patient.

Defendant Danbury Hospital's staff negligently failed to transport the patient to the radiology department on February 17, 2001, without supplemental oxygen in use or negligently discontinued supplemental oxygen at some point in time during or after transport.

Defendant Danbury Hospital's staff negligently failed to call a "code" in a timely manner when the patient suffered severe respiratory distress in the CT scan room

on February 17, 2001.

Defendant Danbury Hospital's staff negligently directed the "code" to the wrong floor in the hospital when the patient suffered severe respiratory distress in the CT scan room on February 17, 2001.

Defendant Danbury Hospital's staff negligently failed to respond to the "code" and perform CPR in a timely manner.

Defendant Danbury Hospital's staff negligently failed to timely perform chest compressions and proper techniques during CPR.

Defendant Danbury Hospital's staff negligently failed to use an oral airway during CPR.

Specific Allegations – Dr. Borrusso & Danbury Surgical Associates, P.C.

The plaintiffs allege that Dr. Borrusso was negligent in his care and treatment of Michael Guigliano in one or more of the following ways:

Defendant Borrusso negligently removed a nasogastric tube from the patient on February 15, 2001, which was needed to treat abdominal distention.

Defendant Borrusso negligently failed to reinsert a nasogastric tube when they saw the patient on February 16, 2001, after the abdominal distention had worsened.

Defendant Borrusso negligently failed to correct electrolyte abnormalities and low hemoglobin/hematocrit values causing the patient to be more susceptible to a cardiac arrhythmia from a lack of oxygen.

**Specific Allegations – Dr. Catania & Danbury Surgical Associates, P.C.**

The plaintiffs allege that Dr. Catania was negligent in his care and treatment of Michael Guigliano in one or more of the following ways:

Defendant Catania negligently failed to reinsert a nasogastric tube when they saw the patient on February 17, 2001, after the abdominal distention had worsened.

Defendant Catania negligently failed to transport the patient to the radiology department on February 17, 2001, for a CT scan without the supervision of a "multispecialist" nurse, without a pulse oximetry monitor and without a portable cardiac monitor.

**Specific Allegations – Dr. Kessler**

The defendants/third party apportionment plaintiffs Borrusso, Catania and Danbury Surgical Associates allege that Dr. Kessler was negligent in his care and treatment of Michael Guigliano in one or more of the following ways:

Defendant Kessler negligently failed to transport the patient to the radiology department on February 17, 2001, for a CT scan without the supervision of a "multispecialist" nurse, without a pulse oximetry monitor and without a portable cardiac monitor.

Defendant Kessler negligently failed to correct electrolyte abnormalities and low hemoglobin/hematocrit values causing the patient to be more susceptible to a cardiac arrhythmia from a lack of oxygen.

17

Vicarious Liability Of Danbury Hospital

I have just explained to you that one of the defendants is Danbury Hospital. You have heard testimony that members of the nursing staff and all other hospital staff were employees of Danbury Hospital. If you therefore find that the employees of Danbury Hospital were negligent, the law imposes liability on Danbury Hospital for the acts of its employees. Mather v. Griffin Hospital, 207 Conn. 125 (1988); Bria v. St. Joseph's Hospital, 153 Conn. 626 (1966); D. Wright, Connecticut Jury Instructions, § 21, 34 – 35, (2d Ed. 1981).

Vicarious Liability Of Danbury Surgical Associates, P.C.

I have also just explained to you that one of the defendants is Danbury Surgical Associates, P.C. You have heard testimony that defendants/third party apportionment plaintiffs Borusso and Catania were employees of and partners in Danbury Surgical Associates, P.C. If you therefore find that either one or both of these employees of Danbury Surgical Associates, P.C. were negligent, the law imposes liability on Danbury Surgical Associates, P.C. for the acts of its employees. Mather v. Griffin Hospital, 207 Conn. 125 (1988); Bria v. St. Joseph's Hospital, 153 Conn. 626 (1966); D. Wright, Connecticut Jury Instructions, § 21, 34 – 35, (2d Ed. 1981).

2-29: Legal Cause

If you find that the defendant was negligent in any of the ways alleged in the plaintiff's complaint, you must next decide if such negligence was a legal cause of any of

the plaintiff's claimed injuries. To establish liability for negligence, the plaintiff need only prove that a portion of the injuries complained of were legally caused by the defendant's negligence. Legal cause has two components: cause in fact and proximate cause. *Doe v. Manheimer*, 212 Conn. 748, 757 (1989) 2 Restatement (Second), Torts § 430 (1965).

## 2-30: Cause in Fact

A cause in fact is an actual cause. The test for cause in fact is, simply, "Would the injury have occurred were it not for the defendant's negligence?" If your answer to this question is "yes," then the defendant's negligence was not a cause in fact of the plaintiff's injuries.

*Doe v. Manheimer*, 212 Conn. 748, 757 (1989); *Shaughnessy v. Morrison*, 116 Conn. 661, 666 (1933).

## 2-31: Proximate Cause - Definition

Negligence is a proximate cause of an injury if it was a substantial factor in bringing the injury about. *Pilon v. Anderson*, 112 Conn. 300, 301 (1930); *Mahoney v. Beatman*, 110 Conn. 184, 185 (1929); *Mather v. Griffin Hospital*, 207 Conn. 125, 130 (1988).

## 2-32: Proximate Cause - Substantial Factor

Negligence is a substantial factor in bringing about an injury if it contributes materially to the production of the injury. Negligence contributes materially to the

production of an injury if its causative effects remain in active operation until the moment of injury, or at least until the setting in motion of the final active injurious force which immediately produces or precedes the injury. By this definition, negligence which makes only a remote, a trivial or an inconsequential contribution to the production of an injury is not a substantial factor in bringing about the injury, and thus is not a proximate cause of the injury. *Doe v. Manheimer*, 212 Conn. 748, 757-58 (1989); *Ferndale Dairy, Inc. v. Geiger*, 167 Conn. 533, 538 (1975).

## 2-33: Proximate Cause - Multiple Causes

Under the definitions I have given you, negligent conduct can be a proximate cause of an injury if it is not the only cause, or even the most significant cause of the injury, provided it contributes materially to the production of the injury, and thus is a substantial factor in bringing it about. Therefore, when a defendant's negligence combines together with one or more other causes to produce an injury, such negligence is a proximate cause of the injury if its contribution to the production of the injury, in comparison to all other causes, is material or substantial.

When, however, some other cause or causes contribute so powerfully to the production of an injury as to make the defendant's negligent contribution to the injury merely trivial or inconsequential, the defendant's negligence must be rejected as a proximate cause of the injury, for it has not been a substantial factor in bringing the injury about. *Boileau v. Williams*, 121 Conn. 432, 440 (1936). See also 2 Restatement (Second), Torts § 439.

## 2-40 (a): Damages

The rule of damages is as follows. Insofar as money can do it, the plaintiff is to receive fair, just and reasonable compensation for all injuries and losses, past and future, which are proximately caused by the defendant's proven negligence. Under this rule, the purpose of an award of damages is not to punish or penalize a defendant for his or her negligence, but to compensate the plaintiff for his resulting injuries and losses. You must attempt to put the plaintiff in the same position, as far as money can do it, that he would have been in had the defendant not been negligent.

Our laws impose certain rules to govern the award of damages in any case where liability is proven. Just as the plaintiff has the burden of proving liability by a fair preponderance of the evidence, he has the burden of proving his/her entitlement to recover damages by a fair preponderance of the evidence. To that end, the plaintiff must prove both the nature and extent of each particular loss or injury for which he/she seeks to recover damages and that the loss or injury in question was proximately caused by the defendant's negligence. You may not guess or speculate as to the nature or extent of the plaintiff's losses or injuries. Your decision must be based on reasonable probabilities in light of the evidence presented at trial. Injuries and losses for which the plaintiff should be compensated include those he/she has suffered up to and including the present time and those he/she is reasonably likely to suffer in the future as a proximate result of the defendant's negligence. Negligence, as I previously instructed you, is a proximate cause of a loss or injury if it is a substantial factor in bringing that loss or injury about.

21

Once the plaintiff has proved the nature and extent of his compensable injuries and losses, it becomes your job to determine what is fair, just and reasonable compensation for those injuries and losses. There is often no mathematical formula in making this determination. Instead, you must use human experience and apply sound common sense in determining the amount of your verdict.

In a personal injury action, there are two general types of damages with which you must be concerned: economic and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of the defendant's negligence. They are awarded for such things as the cost of reasonable and necessary medical care, funeral and burial expenses and lost earnings and income. Noneconomic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff has suffered, or is reasonably likely to suffer in the future, as a result of the defendant's negligence. They are awarded for such things as physical pain and suffering, mental and emotional pain and suffering, destruction of the capacity to carry on and enjoy life's activities in a way the decedent would have done had he lived (*Katsetos v. Nolan, 170 Conn. 637, 368 A. 2d 172 (Conn. 1976); Waldron v. Paccio, 166 Conn. 608, 353 A. 2d 770 (Conn. 1974); Kiniry v. Danbury Hospital, 183 Conn. 448, 439 A. 2d 408 (Conn. 1981)),* loss or diminution of the ability to enjoy life's pleasures and the loss of services and consortium of a surviving spouse.

I will now instruct you more particularly on economic damages. In this case, the plaintiff seeks to recover economic damages for each of the following types of monetary

losses or expenses: the cost of reasonable and necessary medical care, funeral and burial expenses and lost earnings and income.

The plaintiff is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of injuries sustained as a result of the defendant's negligence. The plaintiff must prove that the expenses he claims were reasonably necessary and proximately caused by the defendant's negligence.

The plaintiff is entitled to recover the reasonable value of funeral and burial expenses incurred for the treatment of injuries sustained as a result of the defendant's negligence. The plaintiff must prove that the expenses he claims were reasonably necessary and proximately caused by the defendant's negligence.

The plaintiff is also entitled to recover any loss of earnings and income or earning capacity that he proves to have been proximately caused by the defendant's negligence. With respect to lost earnings up to the present time, the plaintiff must prove that the defendant's negligence has prevented him from receiving the earnings for which he seeks compensation. He must do so by establishing a reasonable probability that his injury brought about a loss of earnings. The evidence must establish a basis for a reasonable estimate of that loss.

The plaintiff is also entitled to damages for the loss of future earnings and income based upon the evidence as to what he probably could have earned but for the harm caused by the defendant's negligence.

Let me now turn to noneconomic damages. In this case, the plaintiff seeks to recover noneconomic damages for each of the following type of non-monetary losses or injuries: physical pain and suffering, mental and emotional pain and suffering, destruction of the capacity to carry on and enjoy life's activities in a way the decedent would have done had he lived, loss or diminution of the ability to enjoy life's pleasures and the loss of services and consortium of a surviving spouse.

A plaintiff whose death is caused by the negligence of another is entitled to be compensated for destruction of the capacity to carry on and enjoy life's activities in a way the decedent would have done had he lived and for the death itself. As far as money can compensate the plaintiff for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. *Katsetos v. Nolan, 170 Conn. 637, 368 A. 2d 172 (Conn. 1976); Waldron v. Paccio, 166 Conn. 608, 353 A. 2d 770 (Conn. 1974); Kiniry v. Danbury Hospital, 183 Conn. 448, 439 A. 2d 408 (Conn. 1981).*

A plaintiff who is injured by the negligence of another is entitled to be compensated for all physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function that he proves by a fair preponderance of the evidence to have been proximately caused by the defendant's negligence. As far as money can compensate the plaintiff for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. You should consider the nature and duration of any pain and suffering that you find.

A plaintiff who is injured by the negligence of another is entitled to be compensated for mental suffering caused by the defendant's negligence for the results which proximately flow from it in the same manner as he is entitled to be compensated for physical suffering.

You should consider, as a separate category for awarding damages in this case, the length of time the plaintiff was disabled from engaging in the activities which he enjoyed.

If you find that the plaintiff suffered permanent physical harm, loss of function or disfigurement, the plaintiff is entitled to be compensated for that category of injury. Your award should be in accordance with the nature and extent of such physical impairment, loss of function or disfigurement and the length of time he endured its negative consequences.

The surviving spouse of a plaintiff who is injured and whose death is caused by the negligence of another is entitled to be compensated for the loss of services and consortium as a result of that death.

Life expectancy tables indicate that in this case Michael Guigliano's life expectancy at the time of his death was 24.9 years. That does not mean, however, that this plaintiff would have lived that length of time, it indicates only the average expectancy. He might have lived longer period of time than his estimated expectancy or he might not have lived a shorter period of time. His expectancy as shown on the mortality tables, however, is one element which you may consider in awarding damages.

J-48: Suggested Amount of Damages

In closing argument, counsel mentioned some formulas or amounts that might figure in your verdict. I caution you that figures suggested by counsel do not constitute evidence. It is up to you to decide what fair, just and reasonable compensation is, whatever you find that figure might be, without regard to amounts that may have been suggested by counsel in argument. Conn. Gen. Stat. § 52-216b.

J-49: Process for Jury's Deliberations

At this time, ladies and gentlemen, I will explain the verdict form(s) to you and then you will be escorted to the jury deliberation room. You should not begin your deliberations until the exhibits and the verdict form(s) are delivered to you by the clerk. This will occur after the lawyers have had an opportunity to check that all the exhibits are present and to tell me if they think that any different or additional instructions to you are necessary. I will recall you to the courtroom if I conclude that further instructions are needed.

When the exhibits are delivered to you, your first task will be to elect a foreperson who will serve as your clerk. After you have received the exhibits and then elected the foreperson, you will begin deliberating. If you have questions during your deliberations, the foreperson should write the jury's question on a sheet of paper, sign and date it, and knock on the door. The sheriff will then bring the question to me, and I will respond in open court. It may take a few minutes to assemble the staff before you are brought to the

courtroom to hear the response. Please try to make any questions very precise. We cannot engage in an informal dialogue, and I will respond only to the question on the paper.

If you need to have any testimony or any part of my instructions [played/read back], follow the same procedure: on a sheet of paper specify what it is that you want to hear as precisely as you can. For example, if you know that you want to hear only the direct examination or only the cross examination of a particular witness, specify that. Otherwise, we will have to repeat the whole testimony.

We will now go over the verdict form(s). [Pass out verdict forms to each juror and explain the circumstances for the use of each form.]

Your verdict must be unanimous. There is no such thing as a majority vote of a jury in Connecticut. Rather, you must all agree on the verdict.

No one will hurry you. If you are not able to reach a verdict today, you will resume your deliberations tomorrow. You may have as much time as you need to reach a verdict.

1-50: Restrictions on Deliberations

You must not discuss the case unless all members of the jury are present. You will take the usual breaks and luncheon recess, but you must not discuss the case in two's or three's during those breaks. You can deliberate only when all six of you are together in the jury deliberation room. This is important. We have had cases that had to be tried all over again because this rule was violated, so please be very careful not to discuss the case with your fellow jurors except when all of you are together deliberating.

1-51: Procedures for Reporting Verdict

When you have reached a verdict, knock on the door and the sheriff will alert me.

When you are told to enter the courtroom, the foreperson should sit in the first seat in the first row. When the jury is asked if it has reached a verdict, the foreperson should respond. The sheriff will then hand the verdict to me and the verdict will be read twice to you. You will each be asked to respond whether it is your verdict, as a check that the verdict is, in fact, unanimous.

You should not at that point expect me to make any comment about your verdict. It has been my task to rule on issues of evidence and to instruct you on the law. It is your task to decide the case, and I will leave that strictly up to you and make no comment on what you decide. It is, of course, merely the division of duties, and not any lack of appreciation of your efforts, that keeps me from commenting on your decision.

Dated: August 21, 2006

Respectfully submitted by:

Plaintiff's Counsel:

Joseph Lanni (CT 23566)
Joseph Lanni, P.C.
138 Chatsworth Ave., Ste. 6 – 8
Larchmont, N.Y. 10538
(914) 834-6600

_____
Scott F. Morgan (CT 23648)
Weiner, Millo & Morgan, LLP
220 Fifth Avenue
New York, N.Y. 10001
Tel.: (212) 213-1220

29