IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA GUIGLIANO, as Administrator ) <br> Of the Estate of MICHAEL GUIGLIANO, ) <br> Deceased, and LAURA GUIGLIANO, ) <br> Individually ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DANBURY HOSPITAL, J. BORRUSSO, M.D., ) <br> JOSEPH CATANIA, M.D. and ) <br> DANBURY SURGICAL ASSOCIATES, P.C. ) <br> ) <br> Defendants ) | Civil No.: 302CV718 (RNC) <br><br><br><br><br><br><br><br><br><br><br><br> AUGUST 24, 2006 |

**MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERT PATHOLOGIST, GERARD A. CATANESE, M.D.**

Pursuant to Rule 702 of the Federal Rules of Evidence, the defendant, Danbury Hospital (the "Hospital"), respectfully moves to preclude certain testimony of the plaintiff's expert witness, Gerard A. Catanese, M.D., on the grounds that the opinions expressed by Dr. Catanese are speculative, have no sound scientific basis, and are beyond the scope of his designated area of expertise as a pathologist. Specifically, plaintiff should not be permitted to elicit any testimony from this witness regarding whether the plaintiff's decedent experienced conscious pain and suffering while he was in a comatose or semi-comatose state since these opinions are not sufficiently reliable to assist the factfinder. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

I.    **FACTUAL BACKGROUND**

This wrongful death case was brought by Laura Guigliano on behalf of the Estate of her husband Michael, who was treated at Danbury Hospital following a fall from February 7 to April 17, 2001. The plaintiff alleges that Mr. Guigliano suffered brain damage as a result of a cardiopulmonary arrest on February 17, 2001. Thereafter, he remained in a comatose or semi-comatose state until his death on July 14, 2003.

The plaintiff has disclosed Gerard A. Catanese, M.D., a forensic pathologist, who is expected to testify as to the cause of Mr. Guigliano's death. See Plaintiffs' Fourth Fed. R. Civ. P. 26(a)(2) Expert Disclosures, dated November 17, 2004 ("Catanese Disclosure") (**Exhibit A**), at 6. Dr. Catanese has also been disclosed to testify that "Mr. Guigliano experienced, at least to some extent, conscious pain and suffering during the two and half year period" until his death. Catanese Disclosure, at 6.

Dr. Catanese was deposed on October 24, 2005. During his deposition, Dr. Catanese testified that, for the last twelve years, he has worked as a forensic pathologist, which he defined as one who specializes in certifying the cause and manner of any individual's death. Deposition of Gerard A. Catanese, M.D. ("Catanese Depo."), at 20 (excerpts attached as **Exhibit B**). Following his formal medical training, all of his professional experience has been in the field of pathology. Catanese Depo., at 22. As a medical examiner, Dr. Catanese does not have occasion to provide care and treatment to any live patients, including those who are in a comatose state.

2

Catanese Depo., at 28. Similarly, as part of his job, he does not comment upon the conscious level of pain and suffering a patient may be experiencing. Catanese Depo., at 38.

Dr. Catanese opined that Mr. Guigliano experienced some level of conscious pain and suffering, but he could not quantify that level. Catanese Depo., at 37. He explained that his opinion that Mr. Guigliano experienced conscious pain and suffering was derived strictly from his reading of the medical records. Catanese Depo., at 28, 31-34, 71-73, 77-78, 90. In reaching his conclusions, Dr. Catanese relied only on the observations of Mr. Guigliano's providers documented in the patient's chart. Catanese Depo., at 28, 31-34, 71-73, 77-78, 90. Dr. Catanese explained that he is "really just quoting" from the medical record and relaying the opinions of Mr. Guigliano's caregivers that the patient was experiencing some level of distress or discomfort. Catanese Depo., at 33-34. For example, Dr. Catanese quoted a nursing note that described Mr. Guigliano's "grimac[ing] face to noxious stimuli." Catanese Depo. at 42-43. While Dr. Catanese did not know whether this reaction necessarily signified pain and whether it was a voluntary versus involuntary movement, he testified that the patient's reaction signifies that he was "feeling something." Catanese Depo., at 44, 60-61.

Dr. Catanese testified that health care professionals might subject a patient to noxious stimuli to determine whether a patient is feeling pain, but he acknowledged that he is not such a health care professional and is not a neurologist. In his professional practice, Dr. Catanese never subjects patients to noxious stimuli, as he does not provide care and treatment to live patients. Catanese Depo., at 30, 44. When asked whether there is a measurable scientific method to assess

3

brain function, Dr. Catanese responded that there are many tests that may be performed, but, in his specialty, he would not perform these tests. Catanese Depo., at 55-56.

## II. ARGUMENT

Rule 702 of the Federal Rules of Evidence states, in relevant part, that "a witness qualified as an expert by knowledge, skill, experience, training or education" may provide expert testimony if his testimony will "assist the trier of fact" and if the following three conditions are met: if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court enunciated a non-exclusive five-factor test to assist trial courts in their gatekeeper function of excluding unreliable expert testimony, as follows:

> (1) whether the expert's technique can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Plaintiff should be precluded from eliciting any testimony from Dr. Catanese regarding whether the decedent experienced conscious pain and suffering while he was in a comatose or semi-comatose state. These opinions are beyond the scope of his designated area of expertise as

4

a forensic pathologist, and his proposed statements are not sufficiently reliable to meet the Daubert standards.

Designation as an expert witness does not enable a witness to testify as to any scientific or specialized matter that is beyond his area of expertise. Eagleston v. Guido, 41 F.3d 865 (2d Cir. 1994). Dr. Catanese does not have the requisite knowledge, training or experience that would lead him to have any specialized understanding of the subject of conscious pain and suffering. Fed. R. Evid. 702. During his deposition, this expert acknowledged that all of his professional experience has been in the field of pathology and that, as a medical examiner, he does not treat live patients. Catanese Depo., at 22, 28. He further acknowledged that, in his specialty, he does not have occasion to assess whether a patient is experiencing conscious pain and suffering. Catanese Depo., at 28, 38. Dr. Catanese explained that tests can be performed in order to evaluate whether a patient is feeling pain and to assess brain function. Catanese Depo., at 30, 44, 55-56. Since Dr. Catanese is not a neurologist, he does not perform these tests as part of his practice. Catanese Depo., at 55-56. Dr. Catanese, by his own admission, has no specialized knowledge, training or experience that would assist the fact-finder in assessing whether Mr. Guigliano experienced any pain and suffering. Since this area of testimony does not meet the requirements of Rule 702, Dr. Catanese should not be permitted to express any opinions regarding whether Mr. Guigliano suffered any conscious pain and suffering.

Moreover, Dr. Catanese's opinion that Mr. Guigliano experienced conscious pain and suffering does not satisfy the Daubert criteria for reliability, and this Court, in exercising its gate-keeping function, should preclude this testimony. Dr. Catanese concluded that Mr. Guigliano

5

experienced some level of conscious pain and suffering based only on references contained in Mr. Guigliano's medical chart regarding this subject. He relies on no objective criteria or standards in reaching his opinions. Rather, he interprets statements made by Mr. Guigliano's providers. Catanese Depo., at 33-34. Dr. Catanese does not employ any scientific theory, technique or methodology in reaching his opinions. His subjective, conclusory opinion that Mr. Guigliano experienced some level of conscious pain is speculative and is presumptively unreliable under Daubert.

In summary, Dr. Catanese, a forensic pathologist, is not qualified by knowledge, training or experience to provide expert testimony regarding conscious pain and suffering. Moreover, his opinions regarding conscious pain and suffering are unreliable, untested, speculative and wholly subjective. As such, these opinions should be precluded, as they will not assist the jury in understanding the claimed injuries.

WHEREFORE, defendant, Danbury Hospital, requests that this Court grant its motion to preclude plaintiff from eliciting testimony from Dr. Catanese regarding whether Mr. Guigliano experienced conscious pain and suffering. In the alternative, if the Court defers its ruling until the time of trial, the Hospital reserves its right to conduct a Daubert hearing in order to demonstrate that Dr. Catanese has not based his opinions on reliable principles and methods.

DEFENDANT,
DANBURY HOSPITAL


By: /s/ Eric J. Stockman
    Eric J. Stockman
    Neubert, Pepe & Monteith, P.C.
    195 Church Street, 13th Floor
    New Haven, CT 06510
    Fed. Bar No. 14981
    (203) 821-2000

    Paul D. Williams
    Day, Berry & Howard, LLP
    185 Asylum Street
    Hartford, CT 06103-3499
    Fed. Bar No. 05244
    (860) 275-0100

## **CERTIFICATION**

I hereby certify that on August 24, 2006, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C. 138
Chatsworth Avenue, Suites 6-8 Larchmont,
NY 10538

Scott F. Morgan, Esq.
Weiner, Millo & Morgan, LLC 220
Fifth Avenue – 7 th Floor New York,
New York 10001

Kevin Tepas, Esq.
Ryan, Ryan, Johnson & Deluca, LLP 80
Fourth Street, P.O. Box 3057 Stamford, CT
06905

Andrew Neubardt, Esq. Rende,
Ryan & Downs 202 Mamaroneck
Avenue White Plains, NY

Richard C. Tynan, Esq.
Halloran & Sage, LLP One
Goodwin Square Hartford, CT
06103

/s/ Eric J. Stockman
Eric J. Stockman
Neubert, Pepe & Monteith