IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA GUIGLIANO, as Administrator )<br>Of the Estate of MICHAEL GUIGLIANO, )<br>Deceased, and LAURA GUIGLIANO, )<br>Individually ) | Civil No.: 302CV718 (RNC) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DANBURY HOSPITAL, J. BORRUSSO, M.D., )<br>JOSEPH CATANIA, M.D. and )<br>DANBURY SURGICAL ASSOCIATES, P.C. ) | |
| ) | |
| Defendants ) | AUGUST 24, 2006 |

## MOTION IN LIMINE TO THE LIMIT TESTIMONY OF PLAINTIFF'S EXPERT, HARRIET ZELLNER, Ph.D.

The defendant, Danbury Hospital, respectfully joins the Motions in Limine filed by co-defendants Joseph J. Catania, M.D., John Borrusso, M.D. and Danbury Surgical Associates to limit the trial testimony of the plaintiff's expert Harriet Zellner, Ph.D. and preclude her from testifying about the economic value of household services. Defendant Danbury Hospital further submits that any references to household services or calculations based on or including household services in any expert report should be redacted and calculations adjusted or redacted. Co-defendants' Motions and exhibits are incorporated.

In the course of life, everyone performs household chores for their own benefit, and with no compensation. As part of their economist's report, plaintiffs intend to submit evidence of the economic value of such household services, apparently on the basis that the loss of these services constitutes damages to Mr. Guigliano's estate. This evidence is inadmissible because the loss of household services is not compensable as an element of economic damages under the Connecticut wrongful death statute, and the non-economic value of such services is not a proper subject of expert testimony. Dr. Zellner should, therefore, be precluded from testifying about the economic value of household services.

## I. FACTS

The plaintiffs intend to submit evidence of the economic value of such household services, apparently on the basis that the loss of these services constitutes damages to Mr. Guigliano's estate. (See Exhibit A to codefendant's motion - An Estimate of the Economic Loss Sustained by Michael Guigliano's Family on Account of His Accident and Subsequent Death, prepared by Harriet Zellner, PhD.). Plaintiffs have disclosed Dr. Harriet Zellner, an economist, as an expert to testify as to the economic loss sustained by Michael Guigliano's estate as a result of his death. In her report, Dr. Zellner estimates the value of the household services Michael Guigliano allegedly would have rendered on his own behalf during his life. Dr. Zellners' report, values household services based on the going market wage rate in the relevant service industry, in essence

measuring the cost of obtaining substitute services. The Court should preclude Dr. Zellner from testifying regarding the value of household services because the loss of household services is not an element of economic damages under the Connecticut wrongful death statute and is not a proper subject of expert testimony. Defendant further submits that to the extent that her report refers to household services or includes calculations based on household services the same should be deleted.

## II. LEGAL ARGUMENT

### A. Loss Of Household Services Is Not An Element Of Economic Damages Under The Connecticut Wrongful Death Statute.

Under the Connecticut wrongful death statute, Conn. Gen. Stat. § 52-555, damages for wrongful death "are assessed on the basis of the loss to the <u>decedent</u> had he lived." <u>Floyd v. Fruit Industries, Inc.</u>, 144 Conn. 659, 671 (1957) (emphasis added). The Connecticut Supreme Court has consistently held that a plaintiff in a wrongful death action may recover "special damages for medical and funeral costs, and three elements of general damages: (1) compensation for conscious pain and suffering; (2) lost earning capacity less deductions for necessary living expenses, discounted for present cash value; and (3) compensation for the destruction of life's enjoyment." <u>Kiniry v. Danbury</u> Hosp., 183 Conn. 448, 460 (1981); see also <u>Katsetos v. Nolan,</u> 170 Conn. 637, 657 (1976) (same); <u>Floyd,</u> 144 Conn. at 669–70 (same); <u>Chase v. Fitzgerald,</u> 132 Conn. 461, 469 (1946) (same). Thus, a plaintiff may recover under our wrongful death statute for economic loss

resulting from medical costs, funeral costs, and lost earning capacity, and may also recover for non-economic loss in the form of conscious pain and suffering, and the destruction of life's activities.

Household services can fit into one of two categories. If the decedent earned a living performing household services, he would be entitled to recovery for lost earning capacity. If not, he would be entitled to recovery for loss of household services performed for his own benefit as a component of the destruction of life's activities. Because there is nothing in the record suggesting that Michael Guigliano would have earned a living performing household services, plaintiffs' right to recovery for such services falls into the second category, as a component of the destruction of life's activities. By introducing expert testimony on the economic value of household services, plaintiffs seek to recover for Michael Guigliano's alleged loss of household services performed for his own benefit as if such services were an element of lost earning capacity. But the statute does not permit a decedent, even if he did earn a living doing such services, to recover economic damages for loss of these services to himself. Kiniry, 183 Conn. at 460; Katsetos, 170 Conn. at 657; Floyd, 144 Conn. at 669–70; Chase, 132 Conn. at 469 (1946); c.f., Ecker v. Town of W. Hartford, 205 Conn. 219, 233 (1987) ("Since § 52–555 creates liability where none formerly existed, the statute must be strictly construed and we are not at liberty to extend, modify or enlarge its scope through the mechanics of construction.").

**B. Loss Of Household Services Is Not A Proper Subject Of Expert Testimony.**

A claim for loss of household services is necessarily a component of a claim for the

destruction of life's activities, which is not a proper subject of expert testimony. In <u>Ladd v. Douglas Trucking Co.</u>, 203 Conn. 187 (1987) (superseded by statute on other grounds), the Connecticut Supreme Court recognized that the estate may be compensated for the destruction of the decedent's ability "to carry on <u>nonpecuniary</u> activities of life, such as those of a husband, wife or parent." Id. at 197 (emphasis added). Connecticut courts have specifically permitted recovery for the loss of a housewife's services in and around the home in connection with the destruction of her ability to carry on life's activities. <u>Chase,</u> 132 Conn. at 470; see also <u>Maffa v. Perkins Trucking Co.</u>, 200 F. Supp. 183, 189 (D. Conn. 1961) (jury award allowed to be enhanced by the decedent's non-remunerative activities around the home).

Connecticut courts have recognized that loss of life's enjoyment seeks to compensate the decedent's estate for the destruction of the capacity to carry on life's activities, which include hobbies, recreational activities, activities and projects around the home, family connections and the ability to raise one's children. See <u>e.g., Floyd,</u> 144 Conn. at 675; <u>Schleidt v. State,</u> No. 54205, 1991 WL 257273, *4 (Conn. Super. 1991); <u>Cronin v. McArdle,</u> No. CV-9501 27272, 1997 WL 408472, *2 (Conn. Super. 1997); <u>Peters v. Wilson,</u> No. CV-95-0146906, 1996 WL 499888, *3 (Conn. Super. 1996). These cases measure the loss of domestic services as part of the loss of enjoyment gained by pursuing these activities, and not because of any purported economic value that the activities may have. See <u>Feldman v. Allegheny Airlines, Inc.</u>, 524 F.2d 384, 389 (2d Cir. 1975) ("[A]ny award in relation to the portion of the child-raising period during which Mrs. Feldman would not have been

working must be predicated on her 'loss of the enjoyment of life's activities' rather than on the loss of earnings"). The value that Michael Guigliano himself would have placed on his household activities, and the enjoyment he would have taken from these activities, is indisputably a non-economic loss that cannot be measured by an economist.

Indeed, any attempt to convert this uniquely non-economic loss into an economic loss through the use of expert testimony impermissibly invades the province of the finder of fact. Expert testimony is generally admissible if "(1) the witness has a special skill or knowledge directly applicable to the matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues . . . ." Card v. State, 57 Conn. App. 134, 138 (2000). As the matter in issue here—the proper measure of Michael Guigliano's inability to carry on life's activities—is not capable of quantification and objective measurement, an economist has no special skill or knowledge relevant to the subject, and his opinion on the subject is neither necessary nor helpful.

Connecticut courts have recognized that non-economic losses are not properly the subject of expert testimony. See, e.g., Lanier v. Hochman, No. CV 940533324S, 1998 WL 352073, *12 (Conn. Super. Jun. 19, 1998) ("Life's enjoyment may not be the subject of mathematical precision or calculation. It is not bought or sold and is truly incapable of monetary valuation."); Spruill v. Downing, No. CV 93 0068193S, 1995 WL 542121, * 10 (Conn. Super. Sept. 5, 1995) ("Life's enjoyment defies quantification. It is truly priceless.").

Other states have also recognized that the introduction of expert testimony on this subject is improper and constitutes reversible error. See, e.g., Wilt v. Buracker, 191 W.Va. 39, 43 (1993) (reversing jury verdict because trial court had allowed expert economist to testify regarding monetary calculations for the loss of enjoyment of life); Loth v. Truck-A-Way Corp. et al., 60 Cal. App. 4th 757 (1998) (reversing and remanding for new trial because testimony of expert witness regarding loss of enjoyment of life should have been excluded; "a plaintiff's loss of enjoyment of life is not a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact").

While plaintiffs are entitled to "attempt to present an over-all picture of the decedent's activities to enable the jury to make an informed valuation of the total destruction of his capacity to carry on life's activities," Waldron v. Raccio, 166 Conn. 608, 616 (1974) (internal quotations omitted), the very nature of this valuation focuses on the loss to the *individual,* and expert testimony purporting to measure this loss based on an economic analysis of the cost of replacing these services simply is not proper. The finder of fact is more than capable of assessing the value these activities would have had to Michael Guigliano, without the need for complicated mathematical calculations. See Warren v. GMC, 142 N.C. App. 316, 320 (2001) (affirming decision to preclude expert economist, holding "[t]he trial court correctly concluded the jury was capable of rendering a decision on the value of a persons services to himself because such is a matter of common knowledge")

Assessing such damages in a wrongful death case is by nature an inexact task, and one rightfully within the fact finder's province. As the Connecticut Supreme Court remarked nearly half a century ago:

> Suffice it to say that, except for the special expenses allowable under the statute, all these elements [for wrongful death damages] are, of necessity, imponderable and largely speculative. No one can place a definite value upon them, nor can one do more than conjecture as to what the future course of any life, if continued, would have been. At best, the trier must take the evidence and make an intelligent estimate . . . . No one life is like any other, and the damages for the destruction of one furnish no fixed standard for others. The question is one peculiarly within the province of the jury. Juries may differ widely in the conclusions which they reach in apparently similar cases, and, in fact, in any given case one jury might arrive at a result substantially different from that of another jury. This flexibility, though it may lead to uncertainty, is a necessary concomitant of the jury system as it operates in cases of this nature.
>
> Fairbanks v. State, 143 Conn. 653, 661 (1956) (superseded by statute on other grounds).

No one, including an expert economist, can have any peculiar knowledge or experience not shared by the population generally that would aid the finder of fact in determining the value of the enjoyment Michael Guigliano would have taken from life and his activities, and the inexact and speculative nature of calculating such value demonstrates that the finder of fact would not be aided by testimony laying out mathematical formulas purporting to do the job for them. The Court should not permit Dr. Zellner to testify on this element.

### III. CONCLUSION

For the foregoing reasons, this Court should preclude plaintiffs from offering any

testimony or evidence through their expert, Dr. Harriet Zellner, or otherwise regarding the economic value of services Michael Guigliano would have allegedly rendered in the home.

WHEREFORE, the defendant, Danbury Hospital, hereby moves this court to preclude the testimony of Dr. Harriet Zellner, and to issue an order that the plaintiff is not permitted to have him testify, reference his opinions, or seek to have any of his opinions or conclusions admitted in any way during trial.

DANBURY HOSPITAL

By: /s/ Eric J. Stockman
Eric J. Stockman
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
P.O. Box 1940
New Haven, CT 06509-1940
Fed. Bar No. 14981
(203) 821-2000


Paul Williams
Day, Berry & Howard, LLP
185 Asylum Street
Hartford, CT 06103-349
Fed. Bar No. 05244
(860) 275-0223

## CERTIFICATION

I hereby certify that on August 24, 2006, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C. 138 Chatsworth Avenue, Suites 6-8 Larchmont, NY 10538

Scott F. Morgan, Esq.
Weiner, Millo & Morgan, LLC 220 Fifth Avenue – 7 th Floor New York, New York 10001

Kevin Tepas, Esq.
Ryan, Ryan, Johnson & Deluca, LLP 80 Fourth Street, P.O. Box 3057 Stamford, CT 06905

Andrew Neubardt, Esq. Rende, Ryan & Downs 202 Mamaroneck Avenue White Plains, NY

Richard C. Tynan, Esq. Halloran & Sage, LLP One Goodwin Square Hartford, CT 06103

                                                      /s/ Eric J. Stockman
                                                      Eric J. Stockman