UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA GUIGLIANO, as Administrator : | |
| of the Estate of MICHAEL GUIGLIANO, : | CIVIL ACTION NO. |
| Deceased, and LAURA GUIGLIANO, : | 3:02 CV 718 (RNC) (DFM) |
| Individually : | |
|         Plaintiffs, : | |
| : | |
| V. : | |
| : | |
| : | |
| JOSEPH J. CATANIA, M.D. : | |
| Defendant and Third-Party/ : | |
| Apportionment Plaintiff, : | |
| : | |
| V. : | |
| : | |
| FRANK KESSLER, M.D. : | |
| Third-Party/Apportionment Defendant. : | August 24, 2006 |

## MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT, DR. CATANESE

The defendant, Joseph J. Catania, M.D., hereby respectfully moves this court for

an order, *in limine,* precluding the trial testimony of the plaintiff's expert, Gerard

Catanese, M.D on the basis that his opinions in this case are not properly founded in or

based upon any reliable medical, scientific, or other specialized knowledge. Dr.

Catanese, a forensic pathologist, was disclosed to provide an expert opinion as to

ORAL ARGUMENT NOT REQUESTED

TESTIMONY NOT REQUIRED

10858.0075

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

whether Mr. Guigliano experienced conscious pain and suffering.   In fact, Dr. Catanese

testified at deposition that he believes that Mr. Guigliano experienced conscious pain

and suffering between the times he sustained a cardiopulmonary arrest and his death,

approximately two years later.  However, remarkably, Dr. Catanese testified that his

opinion is based solely on his reading and interpretation of the progress notes from the

medical records of Danbury Hospital, Kingston Hospital and The Northeast Center for

Special Care, an extended care facility where Mr. Guigliano resided for some time after

his cardiopulmonary arrest and subsequent anoxic brain injury.  Dr. Catanese never

examined Mr. Guigliano.  He testified that he did not do any research in formulating his

opinions.  Dr. Catanese did not offer any independent objective evidence in support of

his opinions.   Indeed, he did not base his opinion on any medical authority or any

recognized scientific methodology, Accordingly, Gerard Catanese, M.D. should be

precluded from testifying at the time of trial.

In support of this motion, the defendant states that Dr. Gerard Catanese's

opinions are not based in any scientific method whatsoever.  Dr. Catanese's opinions

are based solely on his own subjective interpretation the progress notes in Michael

Guigliano's medical records, which are, for the most part, the subjective interpretations

of others.  Therefore, Dr. Catanese's testimony does not satisfy the requirements for

admissibility set forth by the United States Supreme Court in Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993), Kuhmo Tire Co., Ltd. v. Carmichael, 526

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

U.S. 137 (1999) or the Connecticut Supreme Court in State v. Porter, 241 Conn. 57 (1997).

The United States Supreme Court has held that there must be appropriate scientific validation of proposed testimony for the expert's testimony to be admissible, and that untested, unsupported theories will be blocked at the gate by a trial judge:

> "[T]here are important differences between the quest for truth in the courtroom and the quest for truth in the laboratory.  Scientific conclusions are subject to perpetual revision.  Law, on the other hand, must resolve disputes finally and quickly.  The scientific project is advanced by broad and wide ranging consideration of a multitude of hypotheses, for those that are incorrect will eventually be shown to be so, and that in itself is an advance.  Conjectures that are probably wrong are of little use, however, in the project of reaching a quick, final, and binding legal judgment – often of great consequence – about a particular set of events in the past.  We recognize that, in practice, a gate keeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations.  That, nevertheless, is the balance that is struck by rules of evidence designed not for exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."

Daubert, 509 U.S. at 596-97.

.    Under Daubert, a trial court has the responsibility to perform a two part inquiry with respect to challenged expert evidence.  The two part inquiry is as follows:

> "... [W]hether the reasoning or methodology underlying the testimony is scientifically valid and...whether that reasoning or methodology properly can be applied to the facts in issue." Daubert at 592-93.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In other words, before it may be admitted, the trial judge
must find that the proffered scientific evidence is both
reliable and relevant.

More specifically, the first requirement for scientific evidence
to be admissible…is that the subject of the testimony must
be scientifically valid, meaning that it is scientific knowledge
rooted in methods and procedures of science; and is more
than subjective belief or unsupported speculation.  This
requirement establishes a standard of evidentiary reliability,
as in a case involving scientific evidence, *evidentiary
reliability* will be based upon *scientific validity*.' " (Emphasis
in original.) State v. Porter, 241 Conn. at 64, citations
omitted.

In Kuhmo Tire Co. Ltd. v. Carmichael, the United States Supreme Court

extended the impact of its decision in Daubert to apply to all expert testimony, including

physicians. "The Daubert 'gate keeping' obligation applies not only to 'scientific'

testimony, but to all expert testimony". Kuhmo Tire Co. Ltd. v. Carmichael, at 138.  The

holding in Kuhmo Tire Co. Ltd., extends the Daubert ruling to apply to other scientific

fields, such as medicine.

In 1997, the Connecticut Supreme Court adopted the threshold standard for the

admissibility of scientific evidence as set forth by the United States Supreme Court in

Daubert as the evidentiary standard applicable in Connecticut State Courts.  *See* State

v. Porter, at 68.

As the Porter court recognized, "the essential holding of the Supreme Court is

the general principal that, as a threshold matter, and subject still to the rules of evidence

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

generally, scientific evidence should be admitted in court only upon some showing of its scientific validity." State v. Porter at 77. "Once the party opposing the evidence objects, the proponent of the evidence bears the burden of demonstrating its admissibility." State v. Porter, at 87 (*quoting* E.I. Dupont De Nemours & Co. v. Robinson, 923 S.W. 2d 549, 557 (Tex. 1995). "Courts should exclude scientific evidence ... when such concerns render the technique, and the resulting evidence, incapable of assisting the fact finder in a sufficiently meaningful way". State v. Porter at 87.

The Connecticut Supreme Court recently applied the holding in Porter to a case involving medical malpractice. In Maher v. Quest Diagnostics, Inc., 269 Conn. 154 (2004), the court determined that a medical expert's testimony is "the type of scientific evidence that requires an individualized *Porter* inquiry as to its underlying scientific validity prior to being admitted into evidence". Maher v. Quest Diagnostics, Inc., 269 Conn at 163. In Maher, the plaintiff's medical expert testified as to the degree of difference between the nature of the plaintiff's cancer in January 1996, when her caner was ultimately diagnosed, and her cancer as it would have been in January 1996, when the plaintiff claimed that her cancer should have been diagnosed. The expert indicated that

> "the entire basis for his knowledge on the issue of doubling
> time was acquired during his prior, noncase specific review
> of the medical literature on the subject while keeping
> informed of various issues related to gynecology.
> Specifically, [he] indicated that: (1) at some point in the past,
> he had seen articles related to cervical cancer doubling time

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

periods but that he was unaware of "good" doubling time statistical analyses on cervical cancer growth; (2) the relevant medical literature did not indicate that there is a quantifiable difference among doubling time periods for cancers located in different organs; (3) his opinion as to the growth rate of the plaintiff's cervical cancer was based on the "more established" statistics regarding breast cancer doubling time; (4) he had not performed any independent analysis as to the reliability of breast cancer doubling t time when applied to cervical cancer growth rate; and (5) all of his knowledge regarding breast cancer doubling time came from his general review of the relevant medical literature over the course of his career. Although at various points in his testimony [he] indicated that the support for these propositions could be found in the relevant medical literature, he was unable to reference a particular journal, article or author in support of his statements.

Maher v. Quest Diagnostics, Inc., 269 Conn. at 165-66, emphasis added.

Consequently, the Connecticut Supreme Court concluded that the trial court erred by improperly admitting the expert's testimony because there was an insufficient evidentiary basis for the trial court to properly assess the reliability and admissibility of the expert's testimony. Maher v. Quest Diagnostics, Inc., 269 Conn. at 179.

Just as in Maher v. Quest Diagnostics, Inc., the plaintiff's expert in the present matter cannot cite any particular journal, article, or author in support of his opinions. Numerous aspects of Dr. Catanese's testimony indicate that his "opinion" is nothing more than speculation and conjecture. However, in order to be admissible, evidence must be something more than subjective belief or unsupported speculation. Daubert v. Merrell Dow Pharmaceuticals, Inc. at 590.

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Dr. Catanese acknowledges that evaluating, quantifying and treating pain are not part of his duties as a medical examiner, or within the realm of his specialty forensic pathology. Still, as part of his work as a private consultant Dr. Catanese has, previously commented on the conscious level of pain and suffering, as in this case, based on reviewing records. (Exh. A, Gerard Catanese, M.D.'s Depo. Tran., October 24, 2005. p 38)

In support of his opinions, Dr. Catanese noted that Mr. Guigliano moved his arm. However, he admitted he could not determine whether the arm movement was conscious or unconscious. (Exh. A, p 37).   Dr. Catanese relied on notes in which caregivers reported "grimacing" in response to noxious stimuli.  Dr. Catanese characterized this as "a response."  In forming his opinions, Dr. Catanese also relied on the notes the people taking care of Mr. Guigliano at the nursing home who "felt" he was experiencing pain and because he was grimacing at points.  Dr. Catanese could not say whether people also grimaced when they were not in pain.  Nor did he cite any study or authority indicating that grimacing was a reliable sign of pain in patients with anoxic brain injuries (Exh. A, pp. 32-33).   Dr. Catanese noted at his deposition that they the staff at the nursing home had observed Mr. Guigliano over a period of time and knew how he reacted, "so it would be a matter of interpreting what they've written." (Exh. A, p. 33)  Interestingly, although Dr. Catanese concluded that Mr. Guigliano had some level

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

of conscious pain and suffering he admitted that he could not quantify or measure the severity of Mr. Guigliano's alleged pain.

Dr. Catanese's opinions, as stated during his deposition on October 24, 2005, were created by his own speculation, conjecture, and his own assumptions that the subjective findings of selected of caregivers were correct. He never examined Mr. Guigliano. His opinions are not founded in science or supported by any medical or other specialized knowledge. He did not perform any investigation whatsoever to determine or verify that any of his opinions are based in fact or reality. Dr. Catanese's opinion does nothing more than provide his interpretation of what Mr. Guigliano's caregiver's had written in the progress notes. Moreover, his interpretation is no way based on his medical training as a pathologist or expertise as a medical examiner. (Exh. A, p. 38)

The defendant, Joseph J. Catania, M.D asserts that Dr. Catanese has no basis for his opinions and that they are not grounded in either scientific or medical evidence. At his deposition, Dr. Catanese conceded that he did not rely on any objective criteria such as an elevated heart rate or respiratory rate in formulating his opinions. Dr. Catanese opinions are entirely derivative of the subjective interpretations and opinions of a select group of Mr. Guigliano's caregivers.

The trial court has the responsibility to ensure that the scientific evidence satisfies the relevance standard for admissibility. If medical evidence has no grounding

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

in medical fact, then it cannot in any meaningful way be relevant to resolving a disputed issue. The application of the factors set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., Kuhmo Tire Co. Ltd. v. Carmichael, and State v. Porter requires an analysis of the evidence to determine the extent to which the medical theory in question relies on the experts' own interpretations, which are subjective rather than on objectively verifiable medical criteria. The reasonable conclusion is that Dr. Catanese's opinions are wholly comprised of his subjective interpretations, speculation, and conjecture about other peoples subjective interpretations speculation, and conjecture. He never examined Mr. Guigliano. He performed no medical research whatsoever and he offers no specific reference to any particular authority that will support his opinion. Therefore, just as the Connecticut Supreme Court determined in Maher v. Quest Diagnostics, Inc., the plaintiff should be precluded from offering the testimony of Gerard Catanese, M.D. at trial.

WHEREFORE, the defendant, Joseph J. Catania, hereby moves this court to preclude the testimony of Gerard Catanese, M.D., and to issue an order that the plaintiff is not permitted to have him testify, reference his opinions, or seek to have any of his opinions or conclusions admitted in any way during trial.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THIRD-PARTY/APPORTIONMENT
PLAINTIFF
JOSEPH J. CATANIA, M.D.

By_____
Timothy J. Grady
HALLORAN & SAGE LLP
Fed. Bar #ct26730
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103
His Attorneys

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 24th day of August 2006, I hereby mailed a copy of the foregoing to:

Joseph Lanni, Esq.
138 Chatsworth Avenue, Suites 6-8
Larchmont, NY 10538
**For the Plaintiff**

Scott F. Morgan, Esq.
Weiner Millo & Morgan, LLC
220 Fifth Avenue, 7th Floor
New York, NY 10001
**For the Plaintiff**

Eric J. Stockman, Esq.
Maureen Sullivan Dinnan, Esq.
Nancy A. Meehan, Esq.
Michael D. Neubert, Esq.
Neubert Pepe & Montieth, P.C.
195 Church Street
New Haven, CT 06510
**For the Defendant Danbury Hosp.**

Kevin Tepas, Esq.
Beverly J. Hunt, Esq.
Ryan Ryan Johnson & Deluca, LLP
80 Fourth Street
Stamford, CT 06905
**For the Defendants Danbury Surgical Associates, P.C. and Borruso**

Andrew Neubardt, Esq.
Rende, Ryan & Downes, LLP
202 Mamaroneck Road
White Plains, NY 10601
**For the Third-Party/Apport.-Defendant Kessler**

877209_1.DOC

_____
Timothy J. Grady

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105