# EXHIBIT A

# An Estimate of the Economic Loss Sustained by Michael Guigliano's Family on Account of His Accident and Subsequent Death

*Prepared by:*
*Harriet Zellner, Ph.D.*

November 8, 2004

Integral Research Inc.

## An Estimate of the Economic Loss Sustained by Michael Guigliano's Family on Account of His Accident and Subsequent Death

### I. Introduction

I have been requested by The Law Firm of Joseph Lanni, P.C., counsel to Mrs. Laura Guigliano, to estimate the net economic loss sustained by Mr. Guigliano's family on account of his accident on February 7, 2001 and subsequent death on July 14, 2003.

I am fully qualified to prepare such an estimate. I received my Master's Degree and Doctorate in Economics from Columbia University in the Spring of 1975. I have taught Economics at both the undergraduate and graduate levels at Rutgers University. I have published in the field and have served as referee for several of the most respected economic journals. I have served as expert economist and statistician in connection with a wide range of cases over the last two decades. I am currently President of Integral Research Inc., a consulting firm providing analytical expertise to private firms and government agencies. My curriculum vitae is attached (as Appendix A to this report) along with a list of the cases in which I have testified at deposition or trial over the past five years.

### II. Methodology

#### A. Projecting the "But-For" Earnings Stream

In order to calculate the earnings loss sustained by Mr. Guigliano's wife and children on account of his accident and subsequent death, we must first estimate what his earnings would have been had he continued in his position as Director of School Facilities and Operations with the Brewster Central School District for the duration of his work life expectancy. We refer to these lost earnings as "but-for" earnings.

Labor economists have been studying the way in which earnings vary over the work life since the early sixties. Their work shows that real earnings increase most rapidly in the early years of the work life. While earnings continue to increase thereafter, the rate of growth falls as individuals move into the middle years of their work life. Finally, earnings "flatten out" and may ultimately decrease towards the end of the work life. Labor economists term this relationship an "age-earnings profile" and our general procedure is to estimate such a profile to use in projecting the deceased's "but-for" earnings stream. However, when an individual's earnings are governed by a collective bargaining agreement, it is more appropriate to base the "but-for" earnings projection on the specific terms of that agreement.

Mr. Guigliano's salary increases were governed by Agreements between the Brewster

Integral
Research
Inc.

Central School District Board of Education and the Administrators Association of Brewster. We therefore base our estimate of his "but-for" earnings stream through 2005 on the rates given in the most recently-negotiated contract. To project his "but-for" earnings in the later years of his work life, we combine information on the wage increases negotiated in earlier union contracts with the increases provided for in the current contract so as to obtain a long-run average to use in our projection.[1]

### B. Accounting for Work Life Expectancy

To estimate Mr. Guigliano's "but-for" earnings stream accurately, we must specify the number of years he would – but for his death – have remained in employment. We rely generally on "work life expectancy" estimates to do so. Until recently, the work life expectancy estimates most commonly utilized were those which the U.S. Bureau of Labor Statistics ("BLS") had issued in 1980 and updated in 1986,[2] but since then new work life expectancies — obtained by applying the basic BLS estimation methodology to more recent data — have become available.[3]

These expectancies are given – for each age – by gender, educational level and current labor force status. Mr. Guigliano was 51.8 years of age at the time of his accident, was fully employed and had earned a high school diploma. According to the data, similarly-educated men of this age who were active in the labor force had a work life expectancy of 11 years. My loss estimates assume therefore that Mr. Guigliano would – but for his accident and subsequent death – have remained in his position at the Brewster Central School District until February 6, 2012.

### C. Valuing the Loss of Mr. Guigliano's Household Services

People engage in many productive activities at home, from preparing meals and washing clothes to mowing the lawn, painting the house, doing repairs and managing the household's finances. The economics of this "non-market production" – that is, of production at home for household consumption -- has become an important sub-field in economics, and we can utilize the theoretical and empirical work in the area to value the household services Mr. Guigliano would – had he lived through his life expectancy – have supplied to his family. Estimates of the value of such services – by employment status of the individual and by age, gender, type of household and presence of children younger than 18 in the home are available and I have utilized them in my

---

[1] Since only the current Agreement was available to me, I used the earlier (1997 to 2001) rate of increase in Mr. Guigliano's own salary as a proxy for the rates increases specified in the earlier Agreement.

[2] Shirley J. Smith, "*Worklife Estimates: the Effects of Race and Education*", Bulletin 2254 (February 1986), Washington D.C.: U.S. Department of Labor, Bureau of Labor Statistics.

[3] See "*A Markov Process Model of Work-Life Expectancies Based on Labor Market Activity in 1997-98*", Journal of Legal Economics, Volume 9, Number 3, Winter 1999-00.

2

Integral Research Inc.

analysis.[4]

### D. Estimating the Personal Consumption Deduction

It is necessary to account for the fact that — had the deceased in fact survived through his life expectancy — he would have himself consumed some portion of the household income stream. To find the family's net income loss, we must estimate, and then deduct, his personal expenses from the "but-for" income stream.

Data from the U.S. Bureau of Labor Statistics' "Consumer Expenditure Survey" allow us to do so. Estimates of the percent of total household income separately consumed by each family member — by gender, by total family size and by total household income — are available and are utilized in my analysis.[5]

### E. Estimating the Loss in Retirement Benefits

Mr. Guigliano participated in a pension plan at Brewster Central School Distirct. Under this plan, the size of the annual retirement benefit depends upon years of service at retirement and upon "final average salary"[6] on that date. To estimate the net loss in retirement benefits Mr. Guigliano's family has sustained on account of his accident and death, we must estimate the "but-for" retirement; that is, the benefit for which he would have qualified had he remained with Brewster Central School Distirct through his work life expectancy. Since the "but-for" retirement benefit depends upon the employee's "final average salary", I defer more detailed discussion of the lost-retirement benefits calculation until we have discussed the "but-for" salary projections.

### F. Identifying Offsets to the Estimated Losses

Finally, we must identify any "offset" to this loss such as Workman's Compensation payments or disability retirement benefits. I am informed by counsel that, in this case, such receipts will be reimbursed out of any settlement or award made to the Guigliano family. I have not therefore reduced the lost-income estimate I present below by the value of these offsets.

---

[4] *The Dollar Value of a Day: 1996 Dollar Valuation*, Shawnee Mission, Kansas, 1998.

[5] "Patton-Nelson Personal Consumption Tables Updated", Lierman, Patton and Nelson, *Journal of Forensic Economics*, 11(1)1998, page 3 to 7.

[6] "Final Average Salary" is calculated in one of two ways. Either it is found as "your average salary for the three years immediately preceding your retirement" or, for people whose last three years of salary are not, in fact, their highest years of salary, as: "your three highest fiscal (July 1 to June 30) years of salary." (See description of PERS plan).

Integral Research Inc.

### G. Present Valuing the Estimated Loss Stream

Since the various losses incurred and offsets received extend over time (often over many years), and since the value of a dollar received at one point in time differs from its value when received at another point in time ($10,000 today is worth more in real terms than $10,000 receive a year from today), we must adjust our projections of but-for and offset receipts before they can be added and subtracted sensibly.

We do so by "present-valuing" all losses and offsets to the same point in time. Since the definition of a present value and the technique by which present values are obtained is not a matter of common knowledge, some brief non-technical discussion and illustrative calculations will prove useful.

The present value of, say, $5,000 to be received in one year is equal to the amount of money which, if invested today at the going interest rate would mount to $5,000 in a year. If the annual rate of interest is equal to ten percent, this amount of money is equal to $4,545. That is, at ten percent interest, $4,545 will mount to $5,000 by year's end and is, therefore, the present value of a $5,000 payment one year's hence. Similarly, the present value of a $5,000 payment to be receive in two year's time is equal (given an interest rate of ten percent) to $4,132; this amount of money, if invested today at ten percent rate of interest will mount to $5,000 two years from today.

The usual task we face in preparing a damage estimate is to find the present value of a *stream* of payments — say one extending ten or twenty years into the future — rather than of a single payment. Doing so requires, however, no new present-valuation techniques. All we must do to find the present value of say a ten-payment future stream is to sum the ten individually calculated present values.

## III. The Results of the Estimation

### A. Pre-Retirement Losses: Table 1

My estimate of the pre-retirement loss in income is shown in Table 1. In column (3), I report my projection of Mr. Guigliano's "but-for" earnings stream. The projection begins on June 30, 2002 when Mr. Guigliano was taken off the Brewster Central School District payroll and is taken out through the end his work life expectancy on February 6, 2012. The values for 2002 through 2005 were obtained by growing out his earnings in 2001 (equal to $89,607) at the rates specified in the July 1, 2001 to June 30, 2005 Agreement between the Brewster Central School District Board of Education and the Administrators Association of Brewster.[7] To obtain the growth rate at which

---

[7] The salary-rate increases specified in that document depend upon whether the individual's performance was rated as "Superior", "Commendable" or "Good", with the highest rates going to the best performers. To determine which rates to utilize for the projection of Mr. Guigliano's "but-for" salary increases I consulted his most recent rates of salary increase. Between the first half of 2000 and the first half of 2001, his salary rate increased by 7.45% and between the first half of 2001 and the first half of 2002, his salary rate increased by 9%. As these rates

4

to project the 2006-2012 "but-for" earnings stream, we averaged these rates with those Mr. Guigliano had enjoyed in the previous three years.[8]

As can be seen in the last row of column (3), our estimate of the "but-for" earnings stream sums to $1,408,823. Adding to this our valuation of Mr. Guigliano's "but-for" household services – $83,992 in total, as shown in column (4) – yields a total pre-retirement income loss of $1,492,815. Finally, subtracting our estimate of the appropriate allowance for Mr. Guigliano's "but-for" personal expenses – $148,286, in total as shown in column (6) – yields our estimate of his family's net loss in pre-retirement income: $1,344,530 in current-year dollars and $1,173,251 after present valuation.

### B. The Loss in Retirement Income: Table 2

Under Mr. Guigliano's retirement plan, the size of the annual benefit depends upon several factors. First, the type of election made – "Single Life Allowance" vs. "Joint Allowance-Full" – is important.[9] Under the former, the maximum annual benefit can be obtained, but all benefits cease upon the retiree's death. Under a "Joint Allowance-Full" election, the annual benefit provided, while lower, continues unchanged after the retiree's death ceasing only when his spouse dies.

Under both elections, the annual benefit will depend upon the retiree's years of service at retirement and average salary in the 3 years preceding retirement ("final average salary"). If the "Single Life Allowance" is elected it is easy – with these two facts alone – to determine the size of the annual retirement benefit. The New York State and Local Retirement System maintains a web site that enables members to do just that on-line.[10] Had Mr. Guigliano remained in his position with the Brewster Central School Distirct until the end of his work life expectancy, he would have accumulated approximately 31.3 years of service and, according to our "but-for" earnings projection, his final average salary in the 3 years prior to his retirement would have been equal to $182,445. With these years-of-service and final-average-salary values, his pension benefit under a "Single Life Allowance" election would have been $112,933.

However, Mr. Guigliano took a "Joint Allowance-Full" election and no formula or facility for calculating the annual benefit under this option is provided either on-line or in the retirement-

---

were in line with those specified in the latest Agreement for "Superior" performers. I used the "Superior-Performers" rates to project his future salary. These were equal to: 8.5% for year 2001 to 2002; 10% for year 2002 to 2003; 9% for 2003 to 2004; and 9% for 2004 to 2005.

[8] This average was equal to 7.45%.

[9] There is actually a 3rd possible election – "Joint Allowance-Partial" – but as Mr. Guigliano elected the "Joint Allowance-Full" – benefit stream, we will not be concerned with it here.

[10] A formula is also available in the retirement plan description, entitled, "Coordinated Retirement Plan", which counsel made available to me.

plan documents supplied to me. It was necessary therefore to derive an estimation routine for the "Joint Allowance-Full" benefit" that would yield a reasonably accurate result. To do so, I assumed that plan administrators would require that the "Joint Allowance-Full" benefit stream paid to any retiree be equal in present-value terms to the "Single Life Allowance" stream available to that particular retiree. Starting with this assumption -- and working with the "Single Life Allowance" stream I *was* able to estimate -- I obtained the "but-for" pension stream reported in Table 2.[11]

As can be seen there, we estimate the "but-for" pension stream to equal $2,267,745 in current-year dollars. Adding projected "but-for" household services and then subtracting the projected personal-consumption deduction, we obtain an estimate of the net loss in retirement income equal to $2,281,093 in current-year dollars and $666,726 in present-value terms.

### C. The Total Loss

Summing the Table-1 and Table-2 estimates, we find a net loss in pre- and post-retirement income equal to $3,625,622 in current-year dollars and to $1,839,977 in present-value terms.

Signed: _Dr. Harriet Zellner_    Date: 11/08/04

---

[11] First I projected the "Single Life Allowance" benefit out to Mr. Guigliano's life expectancy and then projected it out to *Mrs.* Guigliano's life-expectancy, in each case applying the appropriate cost-of-living increases. (As the "Coordinated Retirement Plan", page 19, states: cost-of-living increases -- "at 50% of the previous year's annual rate of inflation" -- begin when the retiree is "age 62 or older and retired for five or more years".) Let's call the former stream the "A" stream and the latter stream the "B" stream. Naturally, the B stream summed to a much larger amount than the A stream because it ran for more than 7 additional years. Next I found the present value of each stream: PV(A) and PV(B) and took the ratio of one to the other: PV(A) over PV(B). I then obtained my estimate of the (nominal) "Joint Allowance-Full" benefit in each year by multiplying the (nominal) B-stream benefit in each year by this ratio. One can see that the present value of the "but-for" pension stream estimated in this fashion is equal, as required, to the present value of the "Single Life Allowance" stream out to Mr. Guigliano's life expectancy.

Integral Research Inc.

Table 1

Estimating the Loss in Income Sustained by Michael Guigliano's
Family on Account of His Accident and Subsequent Death

| Age (12/31) | Year | "But-For" Earnings | "But-For" Household Services | "But-For" Earnings Plus "But-For" Services | Personal Consumption Deduction | Net Loss in Income Current-Year Dollars | Net Loss in Income Present Value Terms * |
|---|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| 53.7 | 2002 7/1--> | $48,612 | $3,900 | $52,512 | | $52,512 | $52,512 |
| 54.7 | 2003 | $106,946 | $7,978 | $114,924 | $6,232 | $108,692 | $108,692 |
| 55.7 | 2004 | $116,571 | $8,163 | $124,734 | $13,836 | $110,898 | $110,898 |
| 56.7 | 2005 | $127,063 | $8,361 | $135,423 | $14,404 | $121,020 | $116,182 |
| 57.7 | 2006 | $136,550 | $8,563 | $145,113 | $14,896 | $130,217 | $120,014 |
| 58.7 | 2007 | $146,745 | $8,770 | $155,515 | $18,102 | $137,413 | $121,583 |
| 59.7 | 2008 | $157,702 | $8,983 | $166,684 | $18,655 | $148,029 | $125,740 |
| 60.7 | 2009 | $169,477 | $9,200 | $178,676 | $19,225 | $159,452 | $130,028 |
| 61.7 | 2010 | $182,130 | $9,423 | $191,553 | $19,812 | $171,741 | $134,451 |
| 62.7 | 2011 | $195,729 | $9,651 | $205,380 | $20,417 | $184,963 | $139,013 |
| 63.7 | 2012 | $210,343 | $9,884 | $220,227 | $26,745 | $193,482 | $139,603 |
| 62.8 | to 2⁶ | $21,299 | $1,001 | $22,300 | $2,708 | $19,592 | $14,136 |
| Totals | | $1,408,823 | $83,992 | $1,492,815 | $148,286 | $1,344,530 | $1,173,251 |

(*) Only future years are reduced to present value.

Table 2

Estimating the Loss in Post-Retirement Income Sustained by Michael Guigliano's Family on Account of His Accident and Subsequent Death

| Year (2) | Age as of 12/31 Michael Guigliano (1) | Age as of 12/31 Laura Guigliano (2) | "But-For" Pension (3) | "But-For" Household Services (4) | "But-For" Pension Plus "But-For" Services (5) | Personal Consumption Deduction (6) | Net Loss in Retirement Income Current-Year Dollars (7) | Net Loss in Retirement Income Present Value Terms * (8) |
|---|---|---|---|---|---|---|---|---|
| 2012 to 2/6 | 63.7 / 62.8 | 61.6 | | | | | | |
| 2013 | 64.7 | 62.6 | $81,167 | $9,891 | $91,058 | $10,320 | $80,737 | $44,767 |
| 2014 | 65.7 | 63.6 | $90,312 | $11,337 | $101,649 | $11,483 | $90,166 | $46,824 |
| 2015 | 66.7 | 64.6 | $90,312 | $11,679 | $101,991 | $12,284 | $89,708 | $43,632 |
| 2016 | 67.7 | 65.6 | $90,312 | $12,032 | $102,344 | $12,284 | $90,060 | $41,025 |
| 2017 | 68.7 | 66.6 | $90,312 | $12,395 | $102,707 | $12,284 | $90,423 | $38,578 |
| 2018 | 69.7 | 67.6 | $90,312 | $12,769 | $103,081 | $12,284 | $90,797 | $36,281 |
| 2019 | 70.7 | 68.6 | $92,374 | $13,154 | $105,528 | $12,414 | $93,115 | $34,847 |
| 2020 | 71.7 | 69.6 | $94,484 | $13,551 | $108,035 | $12,545 | $95,490 | $33,469 |
| 2021 | 72.7 | 70.6 | $96,641 | $13,960 | $110,601 | $12,678 | $97,923 | $32,145 |
| 2022 | 73.7 | 71.6 | $98,848 | $14,381 | $113,229 | $12,812 | $100,417 | $30,873 |
| 2023 | 74.7 | 72.6 | $101,106 | $14,815 | $115,921 | $12,948 | $102,973 | $29,651 |
| 2024 | 75.7 | 73.6 | $103,414 | $15,262 | $118,676 | $13,085 | $105,592 | $28,477 |
| 2025 | 76.7 | 74.6 | $105,776 | $15,723 | $121,499 | $13,223 | $108,275 | $27,348 |
| 2026 | 77.7 | 75.6 | $108,191 | $16,197 | $124,388 | $13,363 | $111,025 | $26,264 |
| to 2/7 | | | $110,562 | $16,686 | $127,248 | $13,505 | $113,843 | $25,223 |
| 2027 | | 76.6 | $113,189 | $1,557 | $112,218 | $1,349 | $110,870 | $24,564 |
| 2028 | | 77.6 | $115,774 | | $113,189 | | $113,189 | $26,776 |
| 2029 | | 78.6 | $118,417 | | $115,774 | | $115,774 | $25,651 |
| 2030 | | 79.6 | $121,122 | | $118,417 | | $118,417 | $21,554 |
| 2031 | | 80.6 | $123,887 | | $121,122 | | $121,122 | $20,648 |
| 2032 | | 81.6 | $126,716 | | $123,887 | | $123,887 | $19,780 |
| 2033 | | 82.6 | $129,610 | | $126,716 | | $126,716 | $18,949 |
| to 10/22 | | 82.4 | $104,416 | | $129,610 | | $129,610 | $18,152 |
| | | | | | $104,416 | | $104,416 | $14,624 |
| Totals: | | | $2,267,745 | $188,701 | $2,456,446 | $175,354 | $2,281,093 | $666,726 |

(*) Only future years are reduced to present value.