**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAURA GUIGLIANO, as Administrator | ) | |
| Of the Estate of MICHAEL GUIGLIANO, | ) | |
| Deceased, and LAURA GUIGLIANO, | ) | |
| Individually | ) | Civil No.: 302CV718 (RNC) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANBURY HOSPITAL, J. BORRUSSO, M.D., | ) | |
| JOSEPH CATANIA, M.D. and | ) | |
| DANBURY SURGICAL ASSOCIATES, P.C. | ) | |
| | ) | |
| Defendants | ) | AUGUST 29, 2006 |

## DEFENDANTS' REQUESTS TO CHARGE

Defendants hereby submit a preliminary request to charge.  Defendants reserve the

right to submit amended charges in accordance with the evidence.

## MULTIPLE DEFENDANTS

Let me first caution you about an issue central to your deliberations.  In this case, there are multiple separate defendants, Danbury Hospital, John Borusso, M.D., Joseph Catania, M.D., and Danbury Surgical Associates and an apportionment defendant, Frank Kessler, M.D.  Each of the elements on which I will be instructing you applies equally to each defendant and the apportionment defendant.  As between the three defendants and the apportionment defendant, you may not allow a finding as to one to affect your required, independent finding as to the other.  Each element must be analyzed separately as to each defendant, and the apportionment defendant, although in the final analysis your conclusion as to them may differ or it may be the same.

## CORPORATION AS A PARTY

Some of the parties in this lawsuit are individuals, while others are corporations. A corporation is an entity created by the law.  All parties are equal before the law.

The mere fact that some of the parties are individuals and others are corporations should not play any part in your deliberations. Rather, you must assess the claims and defenses of all parties without regard to their status and treat all parties in an equal and unbiased fashion.

## BURDEN OF PROOF

A.     The plaintiff, Laura Guigliano, Administratrix for the Estate of Michael Guigliano, has alleged that agents or employees of defendant, Danbury Hospital, were negligent and that John Borusso, M.D. and Joseph Catania were negligent.

The plaintiff has the burden of proving all of her allegations by a fair preponderance of the evidence. By "fair preponderance of the evidence", I mean this: she must prove the allegations by the better and the weightier evidence. You will take all the evidence that is offered here, and consider the various circumstances which are involved, you will weigh it and them; and then if you find that the evidence fairly weighs in favor of the plaintiff, she will have proved the particular issue you have before you. If on the other hand, it does not fairly weigh in her favor, if the better and weightier evidence does not seem to you to prove her position, then she has failed in her duty to prove to you the facts upon which she relies; and in case it happens that as to any issue the evidence is evenly balanced, so that you cannot say that it inclines one way or the other, then upon that issue your decision must be against the plaintiff, because in such a situation she has not proved it by a fair preponderance of the evidence.

No burden rests upon the defendants to disprove such allegations. It is not the responsibility or duty of Danbury Hospital, Dr. Borusso or Dr. Catania to disprove any of the plaintiff's allegations. Now, certainly the defendants have presented evidence in the case, which you may choose to accept or reject as rebuttal evidence on the claims made by plaintiff, but in the first instance you must decide if, on the whole, plaintiff has met her burden of proof. If you find that a fact or issue alleged by the plaintiff has not been proven by a fair preponderance of all the evidence heard at trial, you may not find it to have been proven at all, and you are not to consider this fact or issue as proven in reaching your

verdict.  The burden of proof imposed by law upon the plaintiff requires that you remove

from your consideration all matters which are merely guesses or speculation.  You are not

permitted to surmise or speculate or guess as to any of the material facts in this case.  They

must be proven to you by the plaintiff by a fair preponderance of the evidence.  If it happens

that the evidence of any fact or issue is evenly balanced so that you cannot say that it

inclines either one way or the other, there is no fair preponderance of the evidence of the

fact or issue, and you cannot find that the plaintiff has carried her burden of proving that fact

or issue.

       B.     Let me caution you also that whether or not you find a fact proven is not to be

determined by the number of witnesses testifying for or against it; or the amount of words

spoken or the time that it took to present the evidence; it is the quality, not the quantity of

testimony which should be controlling.

## HEALTH CARE PROFESSIONAL'S STANDARD OF CARE

       A health care professional does not impliedly promise to perform his or her medical

craft free from any and all complications.  A health care professional does not guarantee,

and is not required by law to guarantee, a successful result.  Medical science has not been so

perfected that health care professionals can assure that every treatment or procedure can be

completed to the satisfaction of the patient or her family.  The only thing the law requires

the health care professional to do, in a case such as this, is to use the care, skill and diligence

that health care professionals ordinarily have and exercise under the same or similar

circumstances.  Katsetos v. Nolan, 170 Conn. 637, 644-45 (1976); Britton v. Hartsborn, 113

Conn. 484, 488 (1932).  The fact that the result has not been as favorable as hoped for by the patient or the doctor or that an injury or condition results does not raise a presumption of lack of proper care or skill, because medical science has not been so perfected that a health care professional can assure a cure.  Britton, 113 Conn. at 490; Geraty v. Kaufman, 115 Conn. 553, 572 (1932).  Thus, in this case, the fact that Mr. Guigliano suffered a cardiopulmonary arrest on February 17, 2001 does not by itself raise any presumption that any health care professional failed to meet the standard of reasonable care applicable to professionals in their field.  See Britton v. Hartsborn, 113 Conn. at 488. Indeed, the law does not require or expect that a health care professional exercise the utmost degree or skill possibly known or obtainable by the medical profession, but instead requires the due care of the ordinary health care professional in the same or similar circumstances.  Levett v. Etkind, 158 Conn. 567, 576 (1969).

A health care professional is not liable for a bad result if he or she has used due care and skill.  Chubb v. Holmes, 111 Conn. 482, 486 (1930).

If you determine that plaintiff has not proved by a preponderance of the evidence that Nurse MaryAnn Milleville, CT tech Vanessa Saipher and CT technologist aid Joseph Roth violated the standard of care, you must end your deliberation as to Danbury Hospital and go no further.  You must then return a verdict in favor of the defendant Danbury Hospital whom you find met the standard of care by marking the appropriate line on the jury verdict form that will be provided for your use.

## CAUSAL CONNECTION

The rule that the burden of proof is upon the plaintiff to satisfy you as to injuries and damage implies not merely that the plaintiff shall prove to you that the plaintiff has suffered damages she claims, but also that she shall prove to you that such damages were caused by those allegations which we are investigating.  There are two levels of inquiry that you must make with regard to determining whether the plaintiff has met her burden of proof on damages.  First, you must find that the conduct of the defendants was a "cause in fact" of the injury; that is, that the injury would not have occurred "but for" the conduct of the defendant. If anything else has caused Michael Guigliano's damage, if his condition was solely due to any cause other than the claimed allegations, you will dismiss the claims in this case from your minds. If and only if you are satisfied by a fair preponderance of the evidence that the elements of damage claimed were caused in fact by the defendant's alleged conduct, then you will move to the second level of inquiry.  See Mourison v. Hansen, 128 Conn. 62, 66 (1941).

## PROXIMATE CAUSE

The plaintiff must also prove that the defendant's negligence was a substantial factor or proximate cause of the plaintiff's injuries.  Therefore, if you should find that the medical, nursing or other health care professional care fell below the standard of care for physicians, nurses or other health care professional, that alone would not necessarily afford the basis of recovery for the plaintiff.  The plaintiff must go further:  she must prove to you by a fair preponderance of the evidence that the negligence caused the alleged injuries.  I would

caution you at this point not to use a "cart before the horse" process of reasoning.
Remember, you must first find that each health care professional's conduct was negligence
by a fair preponderance of the evidence before the issue of proximate cause may be
considered.  Krause v. Bridgeport Hospital, 169 Conn. 1, 9 (1975).  The plaintiff can only
recover for those injuries proximately caused by the negligent act or acts of each defendant.
Much learning has been expended by courts of law in attempting to arrive at a correct and
reasonably understandable test for determining whether the negligence of a party was the
cause of the injuries which resulted from a happening and our Supreme Court has
formulated a test in a brief statement which it felt could be understood and applied by the
average juror.  Mahoney v. Beatman, 110 Conn. 184, 192 (1929).  It is this: was the
negligence a substantial factor in producing those injuries?

       In order to properly consider the issue of causation, you will need to know how
proximate cause is determined.  When an event produces a result which follows in natural
sequence, it may be said that the event is the cause of the result.  Monroe v. Hartford Street
Ry. Co., 76 Conn. 201, 207 (1903); Santini v. Lenin, 110 Conn. 248, 252 (1929).  By natural
sequence, I mean a sequence which proceeds in accordance with the common experiences of
life.  Lombardi v. Wallad, 98 Conn. 510, 517 (1923); Corey v. Phillips, 126 Conn. 246, 255
(1939).  Not only must the plaintiff prove that the defendants were negligent, but she must
also prove that such negligence was a substantial factor in bringing about the injuries
Michael Guigliano suffered.  Thus, if the injury would have happened even though the
defendant had not been negligent, the defendant's negligence cannot be held to be a cause of

7

the injury.  1 Wright, <u>Connecticut Jury Instructions</u>, Section 110.  Proximate cause must ordinarily be shown by expert testimony.  If there is no credible expert testimony that the plaintiff's injuries were caused by malpractice on the part of the defendant, then your verdict must be for the defendant.  1 Wright, <u>Connecticut Jury Instructions</u>, Section 120 ee.  Keep in mind, in a medical malpractice case there is a tendency to argue that every injury is the result of somebody's negligence.  But in many cases injuries are mere casualties or acts of God for which, humanly speaking, no one is to blame.  <u>Richards v. Grace New Haven Community Hospital</u>, 137 Conn. 508, 510 (1951).

Now, there has been a difference of opinion as to the issue of causation in this case. You have also heard that the cause of Michael Guigliano's arrest is unknown.  You must decide which opinion or opinions you accept, and if you find that causation was not proven, then you must find for the defendants.

**<u>PROOF BY EXPERT TESTIMONY</u>**

To recover, the plaintiff must prove that a health care professional failed to exercise the degree of care, skill and diligence which health care professionals in the same general line of practice ordinarily possess and exercise in like cases.  Before the plaintiff can recover a verdict against the defendant, she must establish by expert testimony:  first, that the agents or employees of the hospital failed to exercise the care, skill and diligence ordinarily had and exercised by comparable health care professionals, and, second, that the failure was the proximate cause of Michael Guigliano's injuries.  Under Connecticut law, the plaintiff cannot prevail unless there was positive evidence of an expert nature from which you can

reasonably and logically conclude that the defendants were negligent and that the negligence was the cause of the injury.  Mather v. Griffin Hosp., 207 Conn. 125, 130-31 (1988); Levett v. Etkind, 158 Conn. 567, 573-74 (1969).

The rule admitting opinion or expert evidence is founded upon necessity, because the law recognizes that a jury is composed of laymen who cannot be presumed to be as familiar with complex issues and facts such as those which must be determined in a medical malpractice case as experts on the subject would be.  Thus expert testimony is presented to inform the jury, not to decide the case for the jury.  No matter how certain a particular witness may be in his opinion concerning a fact in the case, such opinion is subject to your review.  It is in no way binding upon you.  Johnson v. Fuller, 190 Conn. 552, 556 (1983). The weight to be accorded the testimony of an expert witness depends upon your conclusion as to the proof and completeness of the facts considered by him in drawing his conclusions and your conclusions as to his qualifications as an expert and credibility as a witness.  If you do not feel that the facts underlying an expert's conclusions have been proven, you must reject his or her opinion.  State v. One 1977 Buick Auto, 196 Conn. 471, 484 (1985); Nash v. Hunt, 166 Conn. 418, 425-26 (1974).  1 Wright, Connecticut Jury Instructions, Sections 324, 325.

Also, in weighing and considering the testimony of medical experts, you are to apply to them the same rules that you would apply to any other witnesses regarding the witness' interests and bias, prejudice, appearance and demeanor, frankness, and candor upon the witness stand.  Expert witnesses have appeared in this trial because of the expertise, their

possession of peculiar and exclusive knowledge and experience in a specialized field.  The

value that you attach to their testimony and the weight to be accorded it would, of course,

depend upon many other things:  upon the expert's actual skill; the experience he or she has

had; the training he or she has had; whether this experience and training has been long or

brief; and whether he or she has acquired a skill greater than that of others.  1 Wright,

Connecticut Jury Instructions, Sections 324, 325.  The weight to be accorded to the

testimony of an expert witness also depends upon your conclusions on the truth and

completeness of the information and facts considered by him in reaching his conclusion.

You will determine whether the facts upon which he based his conclusion were the true and

complete facts as you find them and also whether all the facts you find were reviewed by

him or were made available to him in the history or records given to him.  1 Wright,

Connecticut Jury Instructions, Section 324.

So, your first considerations must be:  were those facts proven, and were all of the

facts material in arriving at a sound conclusion included in the question?  If any facts were

included which you do not find to be proven, or if any material facts were omitted, the value

of their opinions may be entirely destroyed or seriously affected.  Experts' statements are,

after all, just statements of opinion.  You must decide whether to accept or reject each

person's opinion, depending on whether you agree or disagree with them, in whole or in

part.  You are the ones who must ultimately decide the question.  Expert witnesses cannot

decide for you.  Ask yourself whether the witness has produced before you a rational and

reasonable basis in support of the opinion given.  You may conclude that you should

partially or entirely disregard an expert's opinion.

1 Wright, <u>Connecticut Jury Instructions</u>, Section 120.
<u>Burke v. Fancher</u>, 151 Conn. 640, 641 (1964).
<u>Katsetos v. Nolan</u>, 170 Conn. 637, 644-45 (1976)
<u>Ardoline v. Keegan</u>, 140 Conn. 552, 556 (1954)
<u>Green v. Stone</u>, 119 Conn. 300 (1934).

## <u>LAY INFERENCES LIMITED IN ACTIONS INVOLVING PROFESSIONAL NEGLIGENCE</u>

While the law generally allows jurors to reach conclusions of fact based upon

circumstantial evidence and based upon inferences properly drawn from the evidence

presented to them, in an action alleging medical malpractice there is an important limitation

that you must bear in mind.  Medicine is a complex science and you, as jurors, are not

trained in medicine.  Accordingly, you may not use medical evidence to draw your own

medical conclusions about the issues in this matter.

For example, you have heard testimony from several medical witnesses regarding the

defendants' responses to the patient's clinical signs and symptoms in February 2001.  You

may accept or reject the testimony of any or all of those witnesses as you see fit based on the

charge I have given you regarding expert witnesses.  You may not, however, reach your own

medical conclusions regarding what the doctors' and hospitals' responsibility was in

February 2001.  The extent of a physician's responsibilities in caring for a patient following

surgery is a matter requiring medical training and experience.  Since you do not have that

training it would be wrong for you to reach your own medical opinions based on the evidence presented.

In short, you are not obligated to accept the ultimate medical opinion of any expert witness but may accept or reject such opinions as you see fit. You may not, however, make your own medical diagnosis nor reach your own medical conclusions on the basis of the medical information presented to you.

Auth:          *Van Detti v. Parsons Brothers, Inc*., 146 Conn. 282 (1959).

## HYPOTHETICAL QUESTIONS

There were several hypothetical questions, which were propounded to the expert witnesses who testified. These hypothetical questions were often quite detailed and lengthy and repeatedly used the words "Assume, Doctor", "Further assume, Doctor", "Assume this factual statement to be so", or "Assume that these facts differ from the hypothetical which you will take and apply". These are facts that the parties claim to have proven. At the conclusion of the factual statements and the hypothetical, the doctor was asked a question very similar to this: "Now, Doctor, do you have an opinion based upon reasonable medical probability as to whether or not" a specific defendant "exercised that degree of care, skill and diligence ordinarily and customarily exercised by a physician practicing internal medicine in the year 2001."

Please remember, as you recall that testimony that the expert can base his opinion only on facts he is told about in that question and other items before you in evidence which he may have been asked to review. The opinion elicited in response to such questions has a

value to you only if you find that the "assumed facts" were proven.  That is, if you find that

all the facts which were assumed in that question or questions are or were proven, then you

will find that that opinion of the doctor, as to those facts of the case, is well founded.  In

other words, it had a firm foundation.  If, on the other hand, you find none of those facts

were proven, you would then say that the opinion had no foundation.  Between these two

extremes, you may find that the opinion is well-founded or partly well-founded or perhaps

very little well-founded, depending on whether you find that facts included in the question

have been truly established by the evidence.

Therefore, you must try to recall the facts as they were given to the expert witness in

the assumption part of each of the hypothetical questions, and then you must make a

decision as to whether the opinion or the conclusion of the doctor was factually well-

founded, partly well-founded or not well-founded at all.

Auth:  Moraghan Charge, 14, 15, 16; Charge of Moraghan, J., in Kiniry v. Danbury
       Hospital, affirmed, 183 Conn. 448 (1981).
       Drier v. Upjohn, 196 Conn. 242, 245-47 (1985);
       Belanger v. Village Pub I, Inc., 26 Conn. App. 509, 518 (1992).

## WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses and the

exhibits received in evidence.

It is the witnesses' answers that are evidence. At times, a lawyer on cross-

examination may have incorporated into a question a statement which assumed certain facts

to be true, and asked the witness if the statement was true.  If the witness agreed with it,

you may find those facts to be true, but you may not consider it to be true simply because it was in the lawyer's question.

Testimony that has been excluded by the court is also not evidence and may not be considered by you in rendering your verdict.

Arguments by lawyers are not evidence because the lawyers are not witnesses. What they will say to you in their closing statements is intended to help you understand the evidence from their viewpoint in reaching your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

Moreover, what I may have said during the trial or what I may convey in these instructions is not evidence and my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

## RULING ON OBJECTIONS

A trial is governed by rules of evidence. It is my duty to apply these rules to the testimony and exhibits offered by the parties to determine if that evidence should be admitted for you to consider.  Lawyers have the right and sometimes the obligation to object to evidence that is offered and seek a ruling as to the admissibility of that evidence under the rules.  You should not hold it against a lawyer, or the party he or she represents, if the lawyer objects to evidence or moves to strike evidence, regardless of the judge's ruling. Just because evidence is admitted after an objection, you are not required to treat that evidence as

true, but you should weigh and consider it in the same way as other evidence. You should

not infer from my rulings on evidence that I favor or disfavor any party or lawyer; the Court

is neutral and is merely enforcing the rules of evidence so as to assure a fair trial.  Do not

speculate as to what the answer would have been had I not sustained an objection and do not

place any emphasis on a piece of evidence merely because I overruled an objection as to it.

Authority:       Connecticut Superior Court Judicial website jury instruction § 1-33

In addition, where I have sustained an objection to a certain piece of evidence, you

must disregard that evidence and give it no consideration in your deliberations.  You must

not draw any inferences from the fact that one side or the other objected to it.

## WITNESS CREDIBILITY - GENERAL

You have had the opportunity to observe all the witnesses.  It is now your job to

decide how believable each witness was in his or her testimony.  You are the sole judges of

the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of

each witness, the circumstances under which each witness testified, and any other matter in

evidence which may help you decide the truth and the importance of each witness's

testimony.

How do you determine truthfulness? You watched the witness testify. Everything a

witness said or did on the witness stand counts in your determination. How did the witness

impress you?  Did he or she appear to be frank, forthright and candid, or evasive and edgy as

if hiding something?  How did the witness appear; what was his or her demeanor - that is,

his or her carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your every day life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.   All of the parties have testified, and their obvious interest in the outcome of the case should be considered by you. You should also consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of his or her testimony, its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Always remember that in assessing a witness's testimony you should use your common sense, your good judgment and your own life experience. You may properly apply to the testing of any witness your own knowledge of human nature and the motives which influence and control human action.  To sum up, you have the right to bear upon testimony in court the same tests of truthfulness which you would use everyday.  You are at liberty, within your own sound judgment, to choose what testimony you will believe and to discard in whole or in part the testimony of any others.  2 Wright, Connecticut Jury Instructions, Section 641.

## CREDIBILITY OF EXPERT WITNESSES

In this particular case, there was testimony from expert witnesses.

No matter what may be the expertise of a particular witness who states to you an opinion upon a fact in a case, it is still subject to your review. His or her opinion need not be binding upon you. It is for you to consider in the light of all other evidence and using your best judgment, determine what weight you will give to it.

In weighing the testimony, you should apply to this person the same general rules that you apply to all witnesses, insofar as it relates to interest in the case, motive, bias and so forth.

In addition, you will determine whether this witness is possessed of specialized knowledge and experience in the field on which his opinion is founded. You may ask yourself the following questions among others that may occur to you:

1.      What specialized skill and knowledge does he possess?

2.      What training and experience has he had in his field?

3.      What opportunity and how much time has he had to analyze and study the matters about which he is testifying?

4.      Has he produced a rational and reasonable basis in support of his opinion?

5.      Is the basis in support of his opinion reasonable and logical?

These are the considerations among others that may occur to you to which you will address yourself in arriving at the weight, if any, to be given to expert opinions.

## IMPEACHMENT OF WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. You may find an apparent inconsistency justified or unjustified. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If a witness testified untruthfully in some respect, you may consider that fact in deciding what credence you will attach to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testified about something he or she knows by virtue of his or her own senses - something he or she has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence that tends to prove a disputed fact through proof of other facts.

You infer a fact from other facts using your reason and experience and common sense. Circumstantial evidence is of no less value than direct evidence. It is a general rule

18

that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**<u>INFERENCE DEFINED</u>**

Attorneys use the term "Inference" and in their arguments they may ask you to infer, on the basis of your reason, experience and common sense, from established facts, that some other fact exists.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts. The plaintiffs ask you to draw one set of inferences, while the defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw - but not required to draw - from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

However, no inference may be drawn from the mere fact that the plaintiffs have filed this lawsuit.

**WEIGHING EVIDENCE**

A juror should use all his or her experience, knowledge of human nature, past and present, and his or her own knowledge of the motives which influence and control human action, and test the evidence in the case in accordance with his or her knowledge and render a verdict accordingly.  A juror who did not do this would be remiss in his or her duty.  Howe v. Raymond, 74 Conn. 72 (1901).

If you believe the testimony of a single witness, you are entitled to found your verdict upon such testimony, even though the witness stands alone and his testimony is opposed to that of others.  It is the quality, not the quantity, of testimony that is important. The weight of the evidence is not determined by the number of witnesses for or against any one proposition.  Cooke v. United Aircraft Corporation, 152 Conn. 214, 218 (1964); Dunbar v. Jones, 87 Conn. 253, 259 (1913); Fenger v. Brown, 57 Conn. 60, 65 (1889).

**MEDICAL RECORDS**

In the State of Connecticut, there is a statute that allows the introduction of medical and hospital records instead of compelling a physician to come to court.  You may draw no adverse inferences from the fact that the evidence is from medical or hospital records rather than from a witness appearing in court; but subject each piece of evidence or testimony to the inquiry I have outlined for you.

**SYMPATHY**

In determining whether the defendant was negligent and whether such negligence was the cause of the injury alleged, you are not to consider the positions of the parties.  That

20

is, you must determine whether the defendant was negligent and whether such negligence caused the plaintiff's injuries based on the negligence and causation standards I have explained to you.  You may not allow sympathy for Michael or Laura Guigliano or their family to affect your decision in determining whether any defendant was negligent.  <u>See</u> Wright, <u>Connecticut Jury Instructions</u>, Section 231e.

## **APPORTIONMENT OF LIABILITY**

In this matter Dr. Borruso, Dr. Catania and Danbury Surgical Associates have asserted a claim for apportionment against Dr. Kessler.  This means that if you conclude that any defendant was negligent you must also consider whether Dr. Kessler was also negligent and if so, whether Dr. Kessler's negligence was also a cause of the injuries and losses claimed by the plaintiff.   The burden is on the defendants to prove that Dr. Kessler was negligent by a fair preponderance of the evidence.

Accordingly if you determine that Dr. Kessler acted below that standard and that his negligence was a legal cause of plaintiffs' injuries, then you must find that Dr. Kessler is responsible for some portion of any damages you award to plaintiff.

In determining the proportion of negligence attributable to Dr. Kessler, you should determine the percentage of negligence that proximately caused the injury, in relation to one hundred per cent, which is attributable to Dr. Kessler.  In other words, if you have found the defendant's negligence legally caused the plaintiffs' damages you should assign a relative percentage to each of the defendants.  The total of these respective percentages must equal 100%.

## **DAMAGES**

Since the plaintiff is claiming damages in this case, I must discuss the law of damages with you. However, you must not take this discussion to mean that the plaintiff is entitled to money damages simply because I discuss the law of damages with you.

If you determine under the rules that I have given you that the plaintiff is entitled to recover damages, and only if you so determine, then the plaintiff is entitled to recover only fair, just and reasonable compensation for all injuries and losses which are proximately caused by the defendant's proven negligence. It is not proper for a jury in considering the question of damages to attempt to be generous, rather than fair and reasonable. Also, you must keep in mind that it is not the jury's function to punish the defendants or to reward the plaintiff. You must attempt to put the plaintiff in the same position, as far as money can do it, that he/she would have been in had the defendants not been negligent. The sole object and purpose is to award the plaintiff that sum of money, and only that sum of money, that is fair, just, and reasonable compensation for any injuries found to have been proximately caused by the defendants' negligence.

Auth:   See, Rosa v. American Oil Co., 129 Conn. 585, 590 (1943);

Wright and Ankerman, Connecticut Jury Instructions (Civil) (4th ed.) § 240a.

Our laws impose certain rules to govern the award of damages in any case where liability is proven. Just as the plaintiff has the burden of proving liability by a fair preponderance of the evidence, she also has the burden of proving his entitlement to recover damages by a fair preponderance of the evidence.

The plaintiff must prove both the nature and extent of each particular loss or injury for which she seeks to recover damages and that the loss or injury in question was proximately caused by the defendant's negligence. You may not guess or speculate as to the nature or extent of the plaintiff's losses or injuries. Likewise, you cannot award damages for any items which may only possibly have resulted from this event. Damages can only be awarded for those injuries or losses which the plaintiff has proved, by a fair preponderance of the evidence and with reasonably probability, did result from any deviation from the standard of care that you find the plaintiff proved.

Auth:  *Adapted from* Wright and Ankerman, <u>Connecticut Jury Instructions (Civil)</u> (4th ed.) § 222(d), (g); § 240a.

If you feel that any item of damage or loss claimed by the plaintiff is not a result of any negligence on the part of the defendant, then you should disregard that item of damage in reaching your decision.

Auth:  Adapted from Wright and Ackerman, <u>Connecticut Jury Instruction (Civil)</u> (4th ed.) § 257(g).

## ARGUMENT REGARDING SPECIFIED SUM

In the event you reach the issue of damages, you must keep in mind that any amount suggested or argued by the plaintiff's attorney as an amount you should award as damages is not evidence, but only the argument of counsel, and is not binding on you and need not be awarded even if you find in favor of the plaintiff. Likewise, any amount suggested or

argued by the defendant's counsel is only argument, and not evidence, and is not binding upon you.

The determination of the amount of damages to be awarded, if any, is solely the jury's function.

Auth:  Connecticut General Statute, § 52-216(b);
       Bartholomew v. Schweizer, 217 Conn. 671, 685 (1991);
       Rosa v. American Oil Co., 129 Conn. 585, 590 (1943).


## DAMAGES FOR WRONGFUL DEATH

The problem of estimating damages in a case of this sort is not easy.  You are not at liberty to guess or infer what the damages were.  You must use your best judgment, remembering always that it is incumbent upon the plaintiff, even if you find that she is entitled to recover, to prove, by a fair preponderance of the evidence, the amount of the damages to which she is entitled.  It must be fairly proved that the verdict, if you come to a verdict for he, is one that in your sound judgment represents the damages to which she is entitled on behalf of the Estate of Michael Guigliano under the rules applicable in this situation.

As I have cautioned you already, you must not let sympathy guide your determination of damages.  Damages for death are not to be measured by the loss, sentimental or financial, to the decedent's family.  Lengel v. New Haven Gas Light Company, 142 Conn. 70, 78 (1955); Floyd v. Fruit Industries, Inc., 144 Conn. 569, 676 (1957); Wright and FitzGerald, Connecticut Law of Torts (2nd Ed.), Section 171e.  Damages

in a case of this sort are not based upon the suffering or the sentimental loss that has come to his family.  They are not based upon any loss caused to the family or relatives to whom any damages that may be recovered may be distributed, because the right of recovery in a death case arises from the wrong inflicted upon the deceased and comes to his legal representative only by survivorship.  Nor can the damages be based upon the value that the plaintiff would put upon his own life.  The rule for measuring damages may be briefly summarized as follows:  It is that sum which would have compensated the deceased, so far as money could do, for the destruction of his capacity to carry on life's activities as he would have done had he not been killed, including the destruction of his earning capacity, for such time as he would probably have lived, but with due allowance for the effect which the ordinary vicissitudes of life might have had upon his continued enjoyment of those capacities and, as far as destruction of earning capacity is concerned, for the fact that a present payment will be made in lieu of sums which, had he lived, would have been received at periodic times in the future.  Chase v. Fitzgerald, 132 Conn. 461, 470 (1946).

In measuring damages based upon the destruction of the deceased's earning capacity, it is proper for you to consider the salary or wages he had been earning before the injury that caused his death.  These are not conclusive, however, but only evidence of the value of his earning capacity.  In the case of one gainfully employed, the destruction of earning capacity may well be the principal element of recovery.  It is likewise proper for you to consider his general experience as a wage earner and his qualifications for conducting a gainful occupation.  In measuring the compensation for the destruction of earning capacity over the

probable lifetime, any savings in income tax liability should be considered, as well as savings of the personal living expenses that the deceased would have incurred during the probable duration of his life, under his particular standard of living.  Floyd v. Fruit Industries, Inc., 144 Conn. 659 (1957).

Necessarily the damages would be limited to that period of time that you may find would have been the length of life of the deceased had he not passed away.  Consequently, you must consider how long you believe the decedent might fairly have expected to live. You must also consider the health and physical condition of the deceased, his strength or his weakness, any physical impairment which has come to him, and all the evidence offered which you find reasonably to indicate his probable length of life.

You must take into account all of the natural incidents of life which in the normal process of existence might be expected to affect the deceased's capacity to carry on life's activities.  Accident, sickness, disability, old age and the like, are common incidents of life. You have heard that Michael Guigliano was suffering from c difficile colitis and bowel obstruction. You may consider these elements when you are assessing his damages.

Having found the length of time he might reasonably be expected to have lived and what his earning capacity might reasonably be expected to have been, remembering that his earning capacity would probably not be constant, might be affected by the vicissitudes of life I have mentioned, his increasing age, his physical and mental condition, changes in the economy and the like, you will then make the allowance for the immediate payment of the sum which you find to be due at this time.  You must make allowance for the fact that you

will be awarding a lump sum of damages to compensate for money that would have been earned over the course of ten or twenty years. In that way, money that is received in lump sum now is not the same as money that would have been earned in the future. You can see that $500 dollars paid now, if invested, would actually be worth more than $500 dollars paid annually at $100 dollars a year, because of the interest that can be made on the initial investment.  You should make your calculation, if you so choose, with the knowledge of the fact that you will be awarding such a lump sum.  In that way you will compute the amount which fairly represents the damage arising from the destruction of the deceased's capacity to carry on life's activities as he would have done had he not died.  What will be "just damages" must be left to your own sound judgment, taking into account all the evidence in the case and rules I have given you.

## LOSS OF CONSORTIUM

The plaintiff, Laura Guigliano, has brought a claim of loss of consortium as a result of plaintiff's decedent's injuries.  The term "consortium" is usually defined as encompassing a variety of intangible relations which exist between spouses living together in marriage. These intangible elements are generally described in terms of affection, society, companionship and sexual relations arising out of the civil contract of marriage, and as such, does not extend to the parent-child relationship.  Any damage award for loss of consortium should reflect your evaluation of how these intangible elements were affected by the subject incident.  A loss of consortium is a derivative claim, meaning that defendant(s) are only

liable for Laura Guigliano's loss of consortium if defendant(s) are found liable for the

claimed injuries of plaintiff's decedent, Michael Guigliano. Therefore, to recover damages

for loss of consortium, you must first find that plaintiffs have met their burden of proving

must demonstrate that defendant(s) are liable for plaintiff's decedent MichaelGuigliano's

claimed injuries. Then you may consider whether Laura Guigliano has suffered loss of her

husband's consortium.

In determining your findings do not duplicate any element of loss you have already

taken into account. That is, do not make two or more awards for one item of loss. For

example, since you are to consider physical injury to MichaelGuigliano and any loss of his

earning capacity, you are not to include that element in your award to Laura Guigliano.

Rather, your award to Laura Guigliano must be based on and limited to any loss of

consortium as to her.

_____

Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 556 (1989).

Mahoney v. Lensink, 17 Conn. App. 130, 141, 550 A.2d 1088 (1988) rev'd. on other
grounds, 213 Conn. 548 (1990);

Hopson v. St. Mary's Hospital, 176 Conn. 485, 487, 408 A.2d 260 (1979);

## VERDICT FORMS AND UNANIMITY OF VERDICT

When you retire to the jury room to deliberate, you will have with you all of the

exhibits as well as a set of forms that the clerk will be handing to you. Once you are in the

jury room, you should first elect a foreperson, and then briefly review the verdict forms that

have been prepared for your use.  You are to make no inference from these forms, they are for the purpose of reporting your verdict to the Court, they are not meant to affect your determination.

Keep in mind that your determination must be unanimous.

The forms you will have are titled Plaintiff's Verdict Form and Defendant's Verdict Form.

If you find the plaintiff failed to prove her case against Danbury Hospital then you must return Defendant's Verdict Form indicating that the defendant was not liable.  If and only if you find the plaintiff proved the required elements of her case against the Hospital should you utilize the Plaintiff's Verdict Form.  If you find for the plaintiff, you must also determine the amount of damages to award, and report this amount on the Plaintiff's Verdict Form.  This is separated into economic and non-economic damages, as I explained earlier in my instruction on Damages.  I caution you that you should not consider any issues of damages until you have made the determinations required on the Jury Interrogatories, and then only if your responses lead to instructions calling for the assessment of damages.

Respectfully Submitted,


Defendants' Counsel:


_____/s/_____

Eric Stockman   (CT 14981)
Neubert, Pepe & Monteith (Danbury Hospital)
195 Church Street
New Haven, CT 23067
Tel.: (203) 821-2000


Paul Williams (CT 05244)
Day, Berry & Howard, LLP
185 Asylum Street
Hartford, CT  06103-349
(860) 275-0100


Defendants' / Third Party Apportionment Plaintiff's
Counsel:


Kevin Tepas (CT 05552)
Ryan, Ryan, Johnson & Deluca, LLP (Borrusso &
Danbury Surg. Assoc., P.C.)
80 Fourth Street
Stamford, CT 06905
Tel.: (203) 357-9200


Richard Tynan (CT     )
Halloran & Sage, LLP (Catania)
One Goodwin Square Hartford,
CT 06103
Tel.: (860) 522-6103


Third Party Apportionment Defendants' Counsel:

                        (CT     )
Rende, Ryan & Downes, LLP (Kessler)
202 Mamaroneck Avenue
White Plains, New York 10601
(914) 681-0444

## **CERTIFICATION**

I hereby certify that on August 29, 2006, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.


Joseph Lanni, Esq.
The Law Firm of Joseph Lanni, P.C. 138
Chatsworth Avenue, Suites 6-8
Larchmont, NY 10538

Scott F. Morgan, Esq.
Weiner, Millo & Morgan, LLC 220
Fifth Avenue – 7 th Floor New
York, New York 10001

Kevin Tepas, Esq.
Ryan, Ryan, Johnson & Deluca, LLP 80
Fourth Street, P.O. Box 3057 Stamford,
CT 06905

Andrew Neubardt, Esq.
Rende, Ryan & Downs 202
Mamaroneck Avenue White
Plains, NY

Richard C. Tynan, Esq.
Halloran & Sage, LLP One
Goodwin Square Hartford,
CT 06103

 /s/ Eric J. Stockman
Eric J. Stockman
Neubert, Pepe & Monteith